UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BRANDON SALUS, ALAN FELIX
IPANAQUE CORDOVA, and BRANDON          Index No. 07cv03142-GBD-DCF
RUCKDASHEL on behalf of themselves and
others similarly situated,


                  Plaintiffs,


        v.


TSE GROUP LLC d/b/a B.B. KING BLUES
CLUB AND GRILL and TSION
BENSUSAN

                Defendants.
-------------------------------------------------------x


PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR CONDITIONAL COLLECTIVE CERTIFICATION, COURT
FACILITATION OF NOTICE PURSUANT TO 29 U.S.C. § 216(b), AND A
PROTECTIVE ORDER

D. Maimon Kirschenbaum (DK-2338)
Charles E. Joseph (CJ-9442)
JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Plaintiffs and proposed
collective action and class action members*

## TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT...................................................…......…..........1

II.  SUMMARY OF ARGUMENT...................................................................2

III. STATEMENT OF FACTS...................................................................…..4

    A.  The Parties...............…...................................................................…....4

    B.  Plaintiffs And Others B.B. King Hourly Employees Are Similarly
       Situated With Regard To Defendants' Violations Of The FLSA.................4

        1.   B.B. King does not pay employees for all time worked...........5

        2.   B.B. King pays employees less than the federal
            minimum wage...................................................................5

        3.   B.B. King does not pay servers properly for overtime
            compensation...................................................................…...6

    C.  Defendants' Solicitation Of Purported Releases From Current Employees.....7

IV.  ARGUMENT...................................................................…...7

    A.  The Collective Action Procedure and Court-Supervised Notice Serve
       Important Purposes...............................................................…...7

    B.  District Courts Typically Order Notice And Employ A Two-Step
       Procedure To Manage The Collective Action...................…..................8

        1.   The First Step.......................................................9

        2.   The Second Step.......................................................12

    C.  District Courts' Role In Class/Collective Actions Involve Regulating
       Parties' Communications With Putative Class Members.......................…....13

    D.  Plaintiffs Have Met And Exceeded The Minimal Burden Of Establishing
       That Other Potential Opt-In Plaintiffs Are Similarly Situated..................15

    E.  Corrective Notice And Injunctive Relief Is Necessary To Remedy The
       Effects Of Defendants' Inappropriate Communications With Putative
       Plaintiffs.......................................................…..17

F.  Expedient Notice Is Proper In These Circumstance............................19

V.  CONCLUSION...................................................................................20

## I.    **PRELIMINARY STATEMENT**

Plaintiff Brandon Salus brought this lawsuit against Defendants on April 19, 2007.  On May 2, 2007, Plaintiff filed an Amended Complaint, and on May 30, 2007, Plaintiffs Brandon Salus, Brandon Ruckdashel and Alan Felix Ipanaque Cordova (hereinafter "Named Plaintiffs") filed a Second Amended Complaint[1] on behalf of themselves and others similarly situated alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law, including minimum wage and overtime violations and illegal deductions from servers' wages.  There are currently eight "party plaintiffs" to this lawsuit.  Since the commencement of this lawsuit, Defendants have engaged inappropriate communications with potential class members regarding this lawsuit, including but not limited to soliciting documents purporting to release Defendants from any liability in exchange for an amount of money equal to a small fraction of what is claimed in this lawsuit.   Plaintiffs make this motion at an early stage in this litigation, because expedient relief is needed to remedy Defendants' inappropriate behavior.

By this motion, Plaintiffs seek the following:

(1)    Conditional certification of this action as a representative collective action pursuant to the FLSA, 29 U.S.C. § 216(b) on behalf of all servers employed by Defendants within the last three years ("Covered Employees").[2]

(2)    Court facilitated notice (Exhibit A) of this FLSA action to the Covered Employees that includes language correcting Defendants' misrepresentations to potential plaintiffs and a consent form (opt-in form) as authorized by the FLSA (Exhibit B).

---

[1] A copy of the Second Amended Complaint is attached hereto as Exhibit C.
[2] Certification pursuant to § 216(b) is vastly different from class certification under Fed. Rule of Civ. Proced., Rule 23.  Rule 23 is inapplicable to FLSA collective actions.  Plaintiffs do not at this stage seek Rule 23 class certification for their state law claims

(3)    Production of names, last known mailing addresses, alternate addresses, all telephone numbers, Social Security numbers, work locations, and dates of employment of all Covered Employees.

(4)    Posting of the Notice, along with the consent forms, in a place where putative plaintiffs are likely to view it.

(5)    A protective order prohibiting Defendants from further communications with putative plaintiffs pertaining to matters covered by this lawsuit.

## II.    SUMMARY OF ARGUMENT

The FLSA requires employers to pay employees a minimum wage of $5.15 per hour for all hours worked. 29 U.S.C. § 206(a)(1). While the FLSA allows a "tip-credit" against the employer's minimum wage obligations for employees that are customarily tipped, an employer cannot avail itself of this tip credit if it retains any portion of its employees' tips. 29 U.S.C. § 203(m). The FLSA also requires that, subject to exceptions which are inapplicable in this case, employees to be paid at one and a half times their regular rate of pay for hours worked in excess of 40 in a week.  29 U.S.C. § 207(a)(1).

"Any employer who violates the provisions of section 6 [minimum wage (29 U.S.C. § 206)] or section 7 [overtime (29 U.S.C. § 207)] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  "An action to recover the liability prescribed ... may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and *other employees similarly situated*." 29 U.S.C. § 216(b) (emphasis added).

2

Courts in the Second Circuit have adopted a lenient standard for conditionally certifying a collective action and authorizing notice, especially at an early stage in the case. If based upon the pleadings and affidavits, a court finds that proposed class members "appear to be" similarly situated, "the court 'conditionally certifies' the class" and authorizes notice to the potential class members." *Masson v. Ecolab, Inc.,* No. 04 Civ. 4488, 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005); *See also Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (citation omitted) ("A court first determines whether class members are similarly situated, based on pleadings and affidavits, and if the plaintiff meets the minimal burden of showing that the similarly situated requirement is met, a court certifies the class as a collective action. Potential class members are then notified and provided with the opportunity to opt in to the action.")

On a motion for conditional certification and notice, the Court does not evaluate the merits of the claims or defenses. *Gjurovich v. Emamanuel's Marketplace, Inc.*, 282 F.Supp.2d 91, 96 (S.D.N.Y. 2003); *Masson*, 2005 WL 2000133, at *13 (same); *Hoffman v. Sbarro, Inc.*, 982 F.Supp. 249, 262 (S.D.N.Y. 1997) (same).

The attached declarations, the detailed allegations in Plaintiffs' Second Amended Complaint, and other evidence submitted together with this Motion, demonstrate that Defendants' wage-related violations are systematic and that countless similarly situated employees will benefit from court authorized notice. Plaintiffs have more than met the lenient standard for conditional FLSA certification.

In addition, the attached declarations and evidence establish that Defendants have engaged in inappropriate communications with putative class members that were coercive, misleading, and intended to discourage employees from participating in this

3

lawsuit. Accordingly, the proper remedy is for corrective notice to be sent to all putative

plaintiffs and for Defendants to be restricted from further inappropriate communications.

*See Tedesco v. Mishkin*, 629 F.Supp. 1474 (S.D.N.Y. 1986) (restraining defendant from

further communication discouraging participation in the lawsuit and allowing plaintiffs to

send an explanatory letter to potential class members to remedy misleading

communications by defendant).

### III.    STATEMENT OF FACTS

#### A.    THE PARTIES

Defendants operate B.B. King Blues Club and Grill ("B.B. King") in Times

Square.[3] B.B. King is subject to the direct supervision of Tsion Bensusan.[4]

Named Plaintiffs worked as servers at B.B. King within the last three years. In

addition to Named Plaintiffs, five other B.B. King (former) employees have joined this

action by filing written consents in accordance with the FLSA's opt-in procedure. As set

forth below, the record demonstrates that all servers at B.B. King are subject to B.B.

King's illegal failure to pay wages and illegal deductions from their tips.

#### B.    PLAINTIFFS AND OTHER B.B. KING HOURLY EMPLOYEES ARE SIMILARLY SITUATED WITH REGARD TO DEFENDANTS' VIOLATIONS OF THE FLSA.

B.B. King systematically violates the FLSA's minimum wage and overtime

provisions. B.B. King's violations are rampant, and all servers suffer from B.B. King's

illegal practices.

---

[3] Sec. Amend. Complaint ¶ ¶ 4-5.
[4] Sec. Amend. Complaint ¶ 5.

1.    **B.B. King does not pay employees for all time worked**

B.B. King's stated policy is not to pay servers for their first several shifts on the job. Declarants Owens, Ganzero, Cordova, Carpenter and Czyzyk each testify that they were not compensated for their first several shifts.[5]

Even after servers' first several shifts, B.B. King does not pay employees for all time worked. Plaintiffs Pierce, Carpenter, and Cordova all testify that despite the fact that their time was easily traceable by B.B. King though its "clock-in/clock-out" system, B.B. King consistently paid them for less than the amount of hours that they worked.[6]

2.    **B.B. King pays employees less than the federal minimum wage**

When B.B. King does pay servers for time worked, it pays them less than the federal minimum wage of $5.15 per hour.[7] Although the FLSA permits employers to take a credit against the minimum wage for tips received by certain tipped employees, B.B. King is not entitled to this credit because it retains portions of employees' tips. 29 U.S.C. § 203(m). Specifically, B.B. King retains portions of servers' tips to cover for customers that leave B.B. King without paying for their meal ("walk-outs").[8] Plaintiff Salus was informed by B.B. King's management of B.B. King's policy to charge employees walk-outs, and the deduction is reflected on his paystubs issued by B.B. King.[9] Declarants Czyzyk, Ganzero, Owens, Cordova and Carpenter were also informed by management of the practice, and they were each required to pay for walk-outs. Even with the tip-credit, servers were often paid less than federal minimum wage ($2.13 after

---

[5] Declaration of Eric Owens ("Owens Dec.") ¶ 10; Declaration of Laura Ganzero ("Ganzero Dec.") ¶ 10; Declaration of Alan Felix Ipanaque Cordova ("Cordova Dec.") ¶ 4; Declaration of Nina Carpenter ("Carpenter Dec.") ¶ 4; Declaration of David Czyzyk ("Czyzyk Dec.") ¶ 4.
[6] Cordova Dec. ¶ 6; Carpenter Dec. ¶ 4; Pierce Dec. ¶ 4.
[7] See Salus Dec. at attachment (showing that Mr. Salus was paid less $5.15 per hour); Cordova Dec. at attachment (same); Czyzyk Dec. at attachment (same)
[8] Salus Dec ¶ 4 and attachments.
[9] *Id.*

5

the tip-credit) after B.B. King's deductions for walk-outs. For example, Plaintiff Salus' total pay for pay period 2/18/07 was $24.38 for 22.75 hours of work, approximately $1 per hour.[10]  (Copies of Plaintiff Salus' paystubs are attached to his declaration).

In addition, when B.B. King charges mandatory gratuities to customers for private parties, servers do not receive any portion of those gratuities.[11]  This tip retention as well deprives B.B. King of its ability to claim a tip credit against the federal minimum wage. *Chan v. Sung Yue Tung Corp.,* No. 03 Civ. 6048 (GEL), 2007 WL 313483, *26 (S.D.N.Y. Feb 01, 2007).

### 3.    B.B. King does not pay servers properly for overtime compensation

B.B. King does not pay servers one and one half times their regular rate for hours worked in excess of 40 hours per week. Plaintiffs Pierce, Carpenter, Cordova and Czyzyk testify that they were not compensated properly for overtime.[12]  Plaintiff Czyzyk's and Plaintiff Cordova's paystubs reflect that when they were in fact paid for overtime, it was consistently paid at their regular rate, instead of an overtime rate.[13]  Plaintiff Czyzyk and Plaintiff Cordova's paystubs indicate that B.B. King's standard method of paying for time in excess of forty hours per week (when it actually paid for the time) was at employees' regular rate. (Copies of the paystubs are attached to their respective declarations).

---

[10] Declaration of Brandon Salus ("Salus Dec.) ¶ 4 and attachment.
[11] Owens Dec. ¶ 7; Cordova Dec. ¶ 7; Ganzero Dec. ¶ 7;
[12] Declaration of Adam Pierce ("Pierce Dec.") ¶ 4; Carpenter Dec. ¶ 4; Czyzyk Dec. ¶ 3; Cordova Dec. ¶ 3.
[13] Czyzyk Dec. ¶ 3 and attachment; Cordova Dec. ¶ 3 and attachment. For example, for the pay period of 2/19/06, B.B. King paid Mr. Czyzyk $4.35 for all 44.25 of his hours. Similarly, the rest of Mr. Czyzyk's attached paystubs reflect that the hours over 40 were paid at the rate of $4.35. For the week of January 28, 2007, Mr. Cordova's paystubs showed that he worked 41.50 hours, and 6 of those hours were spent doing work for which his rate was $20.00. Though the rates for the first 35.50 hours and the second 6 hours differed, Mr. Cordova was paid his regular rates for all of the 41.50 hours.

### C.  DEFENDANTS' SOLICITATION OF PURPORTED RELEASES FROM CURRENT EMPLOYEES

Since the commencement of this lawsuit, Defendants have approached current employees offering to pay them an amount of money representing the $5 per week that was illegally deducted from servers' salaries to compensate porters.  This offer was in exchange for a release of "any and all claims arising out of [their] employment at the Restaurant ... [including] but not limited to any claims arising under the Fair Labor Standards Act of 1938" and New York Labor Law.[14] (A copy of the release is attached to Czyzyk Dec. as Exhibit B.)

### IV.    ARGUMENT

### A.    THE COLLECTIVE ACTION PROCEDURE AND COURT-SUPERVISED NOTICE SERVE IMPORTANT PURPOSES.

The FLSA authorizes private parties to sue in federal court to recover damages. 29 U.S.C. § 201 *et seq.*  In addition to bringing individual suits, aggrieved employees may bring a collective action "on behalf of themselves and other employees similarly situated." 29 U.S.C. § 216(b).

Allowing FLSA suits to proceed as collective actions furthers the goal of judicial economy. Collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact ...." *Hoffman-La Roche, Inc. v. Sterling,* 493 U.S. 165, 170 (1989). With several employees having already joined this case, and many more expected to join, "judicial economy" weighs heavily in favor of collective certification in this instance. The alternative, a multitude of virtually identical individual suits, would burden courts across the country.

---

[14] Cordova Dec. ¶ 8; Czyzyk Dec. ¶ 9 and attachment.

Collective actions also provide plaintiffs the opportunity to "lower individual costs to vindicate rights by pooling resources." *Id.* Many B.B. King employees do not have the resources to pursue their lost wages on an individual basis. If their claims are not pooled in a collective action, many claims will go unheard and B.B. King's unlawful practices unchallenged.

Court-supervised notice is a preferred method of managing collective actions for several reasons: it avoids multiplicity of duplicative suits, it allows the court to set deadlines to advance the disposition of an action, and it protects plaintiffs' claims from expiring under the statute of limitations. *Hoffman-La Roche*, 493 U.S. at 172. Furthermore, by involving itself at this early stage, the Court can avoid later disputes between the parties regarding the content of the notice. *Id.* ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed.").

**B.    DISTRICT COURTS TYPICALLY ORDER NOTICE AND EMPLOY A TWO-STEP PROCEDURE TO MANAGE THE COLLECTIVE ACTION.**

To participate in this case, current and former employees must affirmatively join the action ("opt-in") by filing a written consent. In order to decide whether to opt-in, these employees must be apprised of the pendency of this case in a timely manner. Otherwise, their claims may be barred or diminished by the FLSA statute of limitations. *See 29 U.S.C.* § 216(b); *Hoffman-La Roche*, 493 U.S. at 170; *Hoffman v. Sbarro, Inc.* 982 F. Supp. 249, 260 (S.D.N.Y.1997). To serve the "broad remedial purpose" of the FLSA, courts have the authority to give early notice to potential opt-in plaintiffs that they may join a filed case. *See Hoffman-La Roche*, 493 U.S. at 169; *Braunstein v. E. Photographic Labs, Inc.,* 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied,* 441 U.S. 944 (1979).

8

Following *Hoffman-LaRoche*, a host of district courts have ordered early notice to potential opt-in members in FLSA actions. *See, e.g. Cuzco v. Orion Builders, Inc.* 477 F.Supp.2d 628 (S.D.N.Y. 2007) (ordering defendants to provide plaintiff with names and addresses of potential FLSA collective action members and authorizing notice to the potential plaintiffs); *Iglesias-Mendoza v. La Belle Farm, Inc*, 239 F.R.D. 363 (S.D.N.Y. 2007) (same); *Lynch v. United Services Auto. Ass'n*, No. 07-CV-562 (CM), 2007 WL 1288582, at **13-14 (S.D.N.Y. April 26, 2007) (same); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006) (same); *Masson,* 2005 WL 2000133, at *13 (same); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F.Supp.2d 234, 241 (N.D.N.Y. 2002) (same).

Courts typically employ a two-step procedure in managing FLSA collective actions. *See Iglesias-Mendoza,*239 F.R.D. at 367 (S.D.N.Y. 2007); *Mazur v. Olek Lejbzon & Co.,* No. 05 Civ. 2194, 2005 WL 3240472 at *4-5 (S.D.N.Y. Nov. 3, 2005), *Masson v. Ecolab, Inc.,* 2005 WL 2000133, at *13; *Scholtisek v. The Eldre Corp.,* 229 F.R.D. 381,387 (W.D.N.Y. 2005). The first step is the notice stage where the court determines, on the basis of pleadings and any affidavits, whether to issue notice to potential opt-ins and allow the case to proceed as a collective action through discovery. *See also Lee,* 236 F.R.D. at 197. At the second step, typically on a motion for decertification, the court makes a more searching factual determination whether members of the collective are, in fact similarly situated. *Id.* At 1214.

### 1.     The First Step

Before issuing notice, the court determines whether there are other employees who may be "similarly situated." In other words, the court simply considers whether others may be victims of the same challenged conduct. *Gjurovich,* 282 F. Supp. 2D at 104.

9

The burden for demonstrating that potential plaintiffs are similarly situated is very low at this stage; plaintiffs need make only a "modest factual showing" that plaintiffs and potential collective action members were victims of "a common policy or plan that violated the law." *Gjurovich,* 282 F. Supp. 2d at 104; *see also Iglesias-Mendoza,* 239 F.R.D. at 368 ("plaintiffs have satisfied their minimal burden of showing that they are "similarly situated" to the proposed class members"); *Mazur,* 2005 WL 3240472 at *5 (stating that plaintiffs "face only a very limited burden" and noting the "minimal nature" of the burden); *Masson,* 2005 WL 2000133 at *13 ("courts employ a relatively lenient evidentiary standard in determining whether a collective action is appropriate"); *Hoffmann,* 982 F. Supp. At 261 (requiring only a "modest factual showing").

Plaintiffs' initial burden is "minimal," in part, because the court's decision to direct notice at this stage is a "preliminary" one that may be modified or reversed once discovery is completed. *Mazur*, 2005 WL 3240472, at *5; *Gjurovich*, 282 F. Supp. 2d at 105 (authorizing notice, "at this very preliminary stage in the litigation," to those who "might be potential plaintiffs"); *Realite v. Ark Rests., Corp.,* 7 F.Supp.2d 303, 308 (S.D.N.Y. 1998) (allowing notice, but noting that collective action may be decertified or divided into subgroups "should discovery reveal that plaintiffs in fact are not similarly situated").

The standard for authorizing notice to similarly-situated workers is much lower than the standard for class certification under Federal Rule of Civil Procedure 23. Unlike Rule 23, section 216(b) requires no showing of numerosity, typicality, commonality, or adequate representation. *See Mazur*, 2005 WL 3240472 at *4; *Patton v. Thomson Corp.,* 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005) (plaintiffs' burden under section 216(b) "is significantly less exacting than the matters that must be demonstrated to sustain

10

certification of a class under Rule 23"); *Masson*, 2005 WL 2000133 at *13. The burden

under 216(b) is more lenient than under Rule 23, in part, because a collective action is not

a representative action and does not raise the same due process concerns that Rule 23

raises.

> [The] FLSA's opt-in provision simply provides an opportunity for
> potential plaintiffs to join the action but does not bind those who do not;
> by contrast, the 'opt-out' regime under Rule 23 does bind absent class
> members who nevertheless are deemed to have had adequate opportunities
> to participate in the action brought on their behalf.

*Patton*, 364 F.Supp.2d at 267 (citations omitted).

Courts do not weigh the merits of the underlying claims in determining whether

potential opt-in plaintiffs may be similarly situated. *Mazur*, 2005 WL 3240472 at *4 ("A

Plaintiff need not show an actual violation of the law."); *Hoffman*, 982 F. Supp. at 262

("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a

definable group of 'similarly situated' plaintiffs can exist here"); *Krueger v. N.Y. Tele.

Co.*, Nos. 93 CIV. 0178-79, 1993 WL 276058, *2 (S.D.N.Y. July 21, 1993) ("even if

plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out *not* to be

similarly situated, notification at this stage, rather than after further discovery, may

enable more efficient resolution of the underlying issues in this case.") (emphasis in

original).

Courts also agree that extensive discovery is not necessary at the notice stage. *See

Iglesias-Mendoza*, 239 F.R.D. at 368 ("[t]he court is not obliged to wait for the

conclusion of discovery before it certifies the collective action and authorizes notice.");

*Patton*, 364 F. Supp. 2d at 268 (ordering notice before full discovery in order to

"facilitate[e] the [FLSA]'s broad remedial purpose . . . promot[e] efficient case

management . . [and] preserve and effectuate the rights of potential plaintiffs whose

11

claims might otherwise become time-barred during the discovery phase of the case")
(citations omitted); *Zhao v. Benihana* No. 01 Civ. 1297 (KMW), 2001 WL 845000, **2-3
(S.D.N.Y. July 5, 2001) (ordering notice based on "scant evidence"); *Hoffman*, 982 F.
Supp. at 262 ("Nor must this Court wait for defendant to complete its discovery before
authorizing class notice.") (citing *Braunstein*, 600 F.2d at 336). In lieu of discovery,
courts rely upon detailed allegations in a complaint supported by employee declarations
to determine whether plaintiffs and potential opt-ins are "similarly situated." *See
Gjurovich*, 282 F. Supp. 2d at 104. In relying on employee declarations, "the court does
not resolve factual disputes, decide substantive issues going to the ultimate merits, or
make credibility determinations." *Lynch*, 2007 WL 1288582, at *11 (*citing Barrus v.
Dick's Sporting Goods, Inc.* 465 F.Supp.2d 224, 230 (W.D.N.Y. 2006)).

Once the court determines that potential opt-in plaintiffs may be similarly situated
for the purposes of authorizing notice, the court "conditionally certifies" the collective
action. Plaintiffs then send court-approved notice to potential members who may elect to
"opt-in" pursuant to section 216(b) by filing recent consents. The action proceeds as a
collective action throughout the discovery process. *Masson*, 2005 WL 2000133 at *13
(citation omitted).

### 2.    The Second Step

As discussed above, the initial 216(b) determination is merely a preliminary
finding. If, after discovery, it is apparent that plaintiffs and others are not similarly
situated, the court may "decertify" the collective and dismiss the claims of the opt-in
plaintiffs without prejudice. *See Gjurovich*, 282 F. Supp. 2d at 104 n. 1; *Masson*, 005 WL
2000133 at *13, 14; *Jackson v. N.Y. Tele. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995).

12

### C.    DISTRICT COURTS' ROLE IN CLASS/COLLECTIVE ACTIONS INVOLVE REGULATING PARTIES' COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS

"It is the responsibility of the court to direct the 'best notice practicable' to class members, Rule 23(c)(2), and to safeguard them from unauthorized, misleading communications from the parties or their counsel. Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice." *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d. Cir. 1980).

As in Rule 23 class actions, courts have authority to manage counsel's conduct in FLSA collective actions. *Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 668 (E.D.Tex. 2003). "Moreover, a court's authority to control counsels' conduct in a § 216(b) collective action includes the authority to 'manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.'" *Id. (citing Hoffman,* 483 U.S. 171).

Solicitations of exclusions from a pending class or collective action constitute a serious affront to courts' authority in managing class actions and from putative plaintiffs' rights to be part of the litigation. *In re Currency Conversion Fee Antitrust Litigation*, 361 F.Supp.2d 237, 252 (S.D.N.Y. 2005) ("Indeed, when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization."). Further, when an ongoing business relationship, such as an employer/employee relationship, exists between potential class members and a defendant, there is a heightened threat of coercion by defendants. *Belt,* 299 F.Supp.2d at 668 ("[a]s a letter sent from an employer to its employees, any statements in EmCare's letter have heightened potential for coercion because where the absent class member and the defendant are involved in an ongoing

13

business relationship, such as employer-employee, any communications are more likely

to be coercive.") (*citing Kleiner, v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (5th Cir.

1985)). *See also In re Currency Conversion Fee Antitrust Litigation* 361 F.Supp.2d at

252 ("in light of the cardholders' dependence on defendants for their future credit needs

and information, this Court finds that Chase's and Citibank's actions are potentially

coercive and improper.").

Inappropriate communications between defendants and potential class members

regarding pending litigation are regulated even before class certification. *In re Currency*

*Conversion Fee Antitrust Litigation,* 361 F.Supp.2d at 252 (*citing Ralph Oldsmobile Inc.*

*v. Gen. Motors Corp.,* No. 99 Civ. 4567(AGS), 2001 WL 1035132, at *2 (S.D.N.Y.

Sept.7, 2001)).

When defendants engage in inappropriate communications and/or solicitations

from putative class members, courts have rectified defendants' conduct in several ways,

including but not limited to restricting future communications, invalidating exclusions

received by defendants as a result of the improper communications, and requiring

corrective notice to be sent to putative class members informing them of their rights

under the law. *Kleiner,* 751 F.2d 1193 (upholding district court's power to void opt-outs

and place ban on future opt-out solicitations by defendant and sanctioning defense

counsel); *In re Currency Conversion Fee Antitrust Litigation,* 361 F.Supp.2d at 252

(invalidating arbitration agreements obtained by defendants through improper

communications with putative class members);[15] *Tedesco,* 629 F.Supp. at 1487

(restraining defendant from further communication discouraging participation in the

_____

[15] In *In re Currency Conversion Fee Antitrust Litigation,* this Court rejected defendants' argument that communication with class members was protected under *Gulf Oil,* because *Gulf Oil* involved an attempt to restrict communication that were beneficial to class members, as opposed to communications that were "*against* the best interests of the putative class members." 361 F.Supp.2d at 254 (emphasis in original).

lawsuit and allowing plaintiffs to send an explanatory letter to potential class members to

remedy misleading communications by defendant); *O'Brien v. Encotech Const. Services,*

*Inc.,* 183 F.Supp.2d 1047, 1052 (N.D. Ill. 2002) (allowing corrective notices to be sent to

putative class members notifying them that their releases were invalid); *Belt,* 299

F.Supp.2d 664, 669-670 (requiring corrective notice on defendants' stationary and

enjoining future *ex parte* communications between defendants and potential class

members).

### D. PLAINTIFFS HAVE MET AND EXCEEDED THE MINIMAL BURDEN OF ESTABLISHING THAT OTHER POTENTIAL OPT-IN PLAINTIFFS ARE SIMILARLY SITUATED.

Far exceeding a "modest factual showing," Plaintiffs have submitted substantial

evidence of B.B. King's unlawful common policy and practice of failing to pay their

minimum and overtime wages. At this early stage, a total of eight people have already

asserted the allegations in the Complaint against defendants by opting into the lawsuit.

Plaintiffs have submitted declarations from seven employees who suffered from the wage

and hour violations that are rampant at B.B. King. Six declarants testify that they were

charged significant sums of money for walk-outs out of their tips.[16] Mr. Salus paystubs

for 2/18/07 reflect a deduction $200 for a walk-out, thus depriving him of most of his tips

for that week and his minimum wage.[17] Because Ms. Salus' pay for that week was

insufficient to cover the full $244.90 of the customer's bill, B.B King deducted the

remaining $44.90 from his 2/25/07 check.[18] Three declarants testify that their time was

consistently shaved,[19] four declarants testify that they were not paid for their first week

---

[16] Owens Dec. ¶ 9; Pierce Dec. ¶ 5-7; Ganzero Dec. ¶ 3-4; Salus Dec. ¶ 3-4; Czyzyk Dec. ¶ 5-6; Carpenter Dec. ¶ 5-6.
[17] Salus Dec ¶ 4 and attachments.
[18] *Id.*
[19] Cordova Dec. ¶ 6; Carpenter Dec. ¶ 4; Pierce Dec. ¶ 4.

working as servers,[20] and four declarants testify that they were not properly compensated for overtime.[21] The illegal practices that the declarants and opt-ins were victim to would, on their own, clearly indicate a pattern of illegal behavior that affects all B.B. King servers. As explained below, the information provided by the declarants make it unnecessary to rely on this inference.

The declarants testify that a significant portion of the wage and hour violations were stated by B.B. King's management to be B.B. King's *policy*. For example, Declarants Owens, Pierce, Ganzero, Salus, Czyzyk, and Carpenter were told by management that B.B. King's practice was to charge employees for walk-outs, thus cutting into their tips and minimum wages.[22] Specifically, Gabby Brechner, General Manager informed Mr. Czyzyk, Ms. Ganzero and Mr. Owens of the practice.[23] B.B. King's management also informed employees that B.B. King does not pay servers for their first several shifts on the job.[24] With regard to overtime, countless checks issued by B.B. King to Plaintiff Czyzyk and Plaintiff Cordova reflect that B.B. King did not factor an overtime premium for servers that worked in excess of 40 per week.[25]

The allegations in the Complaint and the declarations, if proven, demonstrate that B.B. King maintains illegal policies and practices which affect all servers at B.B. King. While courts routinely authorize notice on thinner records,[26] Plaintiffs' robust showing

---

[20] Cordova Dec. ¶ 4; Carpenter Dec. ¶ 7; Ganzero Dec. ¶ 10; Czyzyk Dec. ¶ 4.

[21] Pierce Dec. ¶ 4; Carpenter Dec. ¶ 4; Czyzyk Dec. ¶ 3. Cordova Dec. ¶ 3.

[22] Owens Dec. ¶ 9; Pierce Dec. ¶ 5; Ganzero Dec. ¶ 3; Salus Dec. ¶ 3; Czyzyk Dec. ¶ 5; Carpenter Dec. ¶ 5.

[23] Czyzyk Dec. ¶ 5; Owens Dec. ¶ 9; Ganzero Dec. ¶ 3;

[24] Czyzyk Dec. ¶ 4; Carpenter Dec. ¶ 7.

[25] Czyzyk Dec. ¶ 3 and attachment; Cordova Dec. ¶ 3 and attachment.

[26] *See, e.g., Masson,* 2005 WL 2000133 at *14 (three opt-ins); *Sipas v. Sammy's Fishbox, Inc.,* No. 05-CV-10319, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (three affidavits); *Legrand v. Educ. Mgmt. Corp.,* No. 03-9798, 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004) (three named plaintiffs); *Roebuck v. Hudson Valley Farms, Inc.,* 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002) (three affidavits); *Zhao,* 2001 WL 845000, **2-3 (one affidavit based on Plaintiff's "best knowledge"); *Schwed v. Gen. Elec. Co.,* 159 F.R.D.

clearly warrants the issuance of collective action notice at this lenient stage of the proceedings.

### E.    CORRECTIVE NOTICE AND INJUNCTIVE RELIEF IS NECESSARY TO REMEDY THE EFFECTS OF DEFENDANTS' INAPPROPRIATE COMMUNICATIONS WITH PUTATIVE PLAINTIFFS

Defendants' solicitation of the purported release from current servers was inappropriate. Defendants exploited their advantageous business relationship with the servers, as the servers depend on Defendants for their income and are therefore more likely to concede to Defendants' requests, regardless of how unfair such requests may be. *See Belt,* 299 F.Supp.2d at 668 (finding a strong likelihood of coercion in communications between an employer and employees that are putative plaintiffs); *In re Currency Conversion Fee Antitrust Litigation* 361 F.Supp.2d at 252 (likelihood of coercion in pre-existing business relationship that is advantageous to one party). The coercion is particularly egregious considering that, in at least one case, Tsion Bensusan himself solicited the release.[27] Defendants' reliance on this unfair advantage is illustrated by the patent absurdity of the consideration stated in the release: in exchange for a purported release of "any and all claims" an employee has against B.B. King, B.B. King will pay the employee for the illegal deduction B.B. King took to pay porters, a tiny fraction of the claims set forth in this lawsuit.[28]

The solicitation also misleads putative plaintiffs to believe that by signing the release that they are no longer entitled to claim wages owed them under the FLSA. However, with the exception of settlements reached through the Secretary of Labor or

---

373, 376 (N.D.N.Y. 1995) (two affidavits in ADEA case), *Carter v. Indianapolis Power and Light Co.*, No. IP 102 CV 01812, 2003 WL 23142183, at *1 (S.D. Ind. Dec. 23, 2003) (three affidavits and one opt-in).

[27] Czyzyk Dec. ¶ 9.
[28] Czyzyk Dec. at attachment.

judicially approved settlements, "employees cannot waive FLSA claims for unpaid wages or overtime for less than full statutory damages." *Manning v. New York University,* No. 98 CIV. 3300, 2001 WL 963982, at *12, (S.D.N.Y. Aug. 22, 2001).    As a result of this misleading communication, current servers, believing that they have already waived the claims set forth in the lawsuit, will likely not join this lawsuit unless otherwise informed. The timing of Defendants' solicitations of the purported releases (shortly following the commencement of this lawsuit) lead strongly to the inference that this was precisely the effect for which Defendants were hoping.

The only realistic and efficient way to rectify Defendants' inappropriate communications is to notify potential class members that, contrary to Defendants' misrepresentations, the FLSA protects the employees from Defendants' unfair behavior, and they are still entitled to recover wages owed them by joining this lawsuit.  In addition, potential class members are more likely to believe such corrective notice if it involves an affirmative statement by Defendants.  This can be achieved by a requirement that Defendants post prominently the FLSA notice with its corrective language in their place of business.

In *Belt,* the defendants exploited the employer/employee relationship by sending misleading statements to potential class members with the specific goal of encouraging members not to join the FLSA lawsuit.  *Belt, 299* F.Supp.2d at 666-667.  Among other misleading statements in that communication, defendants misrepresented to putative plaintiffs the amount of damages available to plaintiffs.  *Id.*    The court found that the "letter [met] three independent standards for restriction as an improper communication with absent class members because it is misleading, coercive, and an attempt to undermine the purposes of a collective action." *Id.* at 668.    The court then prohibited

18

defendants' *ex parte* communications with class members and required corrective notice on one defendant's letterhead together with a copy of the court's decision to be sent to all people with whom defendants improperly communicated. *Id.*

As explained above and similar to the facts in *Belt,* Defendants' solicitations were coercive, misleading, and an attempt to undermine this lawsuit. Accordingly, Defendants should be prohibited from further improper communications with potential class members and required to affirmatively notify potential class members that they have been misled. *See also Tedesco v. Mishkin,* 629 F.Supp. at 1487 (enjoining defendants from future communications discouraging class members from joining class and allowing corrective notice).

## F.    EXPEDIENT NOTICE IS PROPER IN THESE CIRCUMSTANCES

In order to participate in a collective action, an employee must "opt-in," meaning the employee must consent in writing to join the suit and that consent must be filed with the court. The statute of limitations runs on each employee's claims until the opt-in is filed.[29] *Hoffmann,* 982 F. Supp. at 260. Therefore, Plaintiffs respectfully request that the Court authorize them to provide notice to all servers employed by B.B. King within the last three years[30] at the earliest possible date. Further, early notice is necessary to dispel putative plaintiffs' incorrect belief that they have waived their opportunity to join this suit.

---

[29] Under the FLSA, the applicable statute of limitations either two years or, as Plaintiffs allege herein, three years due to Defendants' willful violations of the FLSA. 29 U.S.C. §255(a).

[30] "Where wilfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action." *Iglesias-Mendoza,* 239 F.R.D. at 369.

19

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court (i) conditionally certify this action as a representative collective action pursuant to the FLSA, 29 U.S.C. § 216(b); (ii) facilitate and authorize notice of this FLSA action to the Covered Employees; (iii) approve the proposed FLSA notice of this action with corrective language and the consent form;  (iv)order the identification of the Covered Employees in a computer readable data file containing their names, last known mailing addresses, telephone numbers, Social Security numbers, work locations, and dates of employment; (v) order Defendants to post the Notice and the consent forms in a place where Covered Employees will view it; and (vi) restrict further communications by Defendants to putative plaintiffs pertaining to pertaining to matters covered by this lawsuit.

Dated:  New York, New York
        June 26, 2007                  Respectfully submitted,

                                       JOSEPH & HERZFELD LLP


                                       By: /s/ D. Maimon Kirschenbaum
                                           D. Maimon Kirschenbaum (DK-2338)

                                       Charles E. Joseph (CJ-9442)
                                       757 Third Avenue
                                       25th Floor
                                       New York, NY 10017
                                       Tel: (212) 688-5640
                                       Fax: (212) 688-2548


                                       *Attorneys for Plaintiff, proposed collective
                                       action members and proposed class*