D. Maimon Kirschenbaum (DK-2338)
Charles E. Joseph (CJ-9442)
JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Plaintiffs and proposed
collective action and class action members*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**BRANDON SALUS, and ALAN FELIX IPANAQUE CORDOVA, on behalf of themselves and others similarly situated,**

INDEX NO: 07cv03142-GBD-DCF

**Plaintiffs,**

FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION

v.

**TSE GROUP LLC d/b/a B.B. KING BLUES CLUB AND GRILL and TSION BENSUSAN**

**Defendants.**
-----------------------------------------------------------x

### DECLARATION OF ERIC OWENS

I, Eric Owens, under penalty of perjury, swear/affirm as follows:

1. My name is Eric Owens.

2. I was employed by TSE Group as a server at B.B. King Blues Club ("B.B. King") from the May of 2004 until July of 2005.

3. I was informed by B.B. King's management, specifically Gabby Brechner, that its practice is to charge an employee for a customer's bill when that customer does not pay the bill. For example, when a customer walks out without paying his bill (a "walk-out"), the restaurant forces the waiter to pay for the customer's bill.

4. I was several times forced to pay for walk-outs out of my nightly tips. On one occasion I paid over $400 to cover a walk-out, and on two other occasions I paid over $100 for walk-outs.

5. My paychecks consistently reflected unexplainable $5 deductions. Upon inquiry, I was told by Ms. Brechner that the deductions went to cover porters' salaries.

6. When I worked in excess of 10 hours in a day, B.B. King did not pay me New York's "spread of hours" premium.

7. B.B. King often charges mandatory gratuities to customers for private parties. When I worked at such private parties, I did not receive any portion of those gratuities.

8. From the beginning of 2005 until the end of my employment with B.B. King, I was paid an hourly wage of $3.30, instead of the New York minimum wage at the time, $3.85.

9. B.B. King's practice was to require servers to tip out to expediters, busboys, and bartenders from their own cash. As a result, B.B. King deducted too much money for our withholding taxes. For example, if on a given night, my tips were $300, and my required tip-out was $100, I was required to pay the tip-outs in cash from my own pocket. However, when reporting my income, B.B. King would not have factored out the tip-outs, and I would have been taxed as though my gross income was $300, when it was in fact $200.

10. I was not paid at all for my first five days working at B.B. King.

I swear/affirm, under penalty of perjury, that the above and foregoing information is true and correct.

Dated: June 21, 2007

*Eric Owens*