UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
                                            :

| | |
|---|---|
| BRANDON SALUS, ALAN FELIX IPANAQUE CORDOVA, and BRANDON RUCKDASHEL, on behalf of themselves and others similarly situated, | : : : : : | Civil Action No.: 07 Civ. 03142 (GBD)(DCF) |

                                   Plaintiffs,      :
                                             :

- against -                                   :
                                             :

TSE GROUP LLC d/b/a B.B. KING BLUES CLUB AND GRILL and TSION BENSUSAN,                                :
                                             :

                                   Defendants.     :
                                             :
----------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION, COURT FACILITATION OF NOTICE PURSUANT TO 29 U.S.C. §216(b) AND A PROTECTIVE ORDER

Of Counsel:

Jonathan Stoler
Kenneth Kirschner
Eric Raphan

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS ..........................................................................................................3

     A.     The Parties ...................................................................................................3

     B.     Background ...................................................................................................4

     C.     The Servers ...................................................................................................4

     D.     Servers' Request That Porters Assume Responsibility For Setting Up The Showcase Room ...................................................................................................6

     E.     Procedural History ...................................................................................................8

ARGUMENT ...................................................................................................8

I.     PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THEY ARE SIMILARLY SITUATED TO THE PROPOSED CLASS MEMBERS ...................................................................................................8

II.     PLAINTIFFS' REQUEST FOR A PROTECTIVE ORDER SHOULD BE DENIED .....13

III.     PLAINTIFFS' PROPOSED FORM NOTICE AND PROPOSED FORM CONSENT TO SUE SHOULD BE REVISED AND DEFENDANTS SHOULD NOT BE REQUIRED TO POST THE NOTICE ON ITS PREMISES. ...................................................................19

     A.     Plaintiffs' Proposed Notice and Proposed Consent to Sue Should Be Revised ....19

     B.     The Notice Should Not Contain Any Corrective Language and Defendants Should Not Be Required to Post The Notice on Their Premises ..........................21

CONCLUSION ...................................................................................................23

# TABLE OF AUTHORITIES

**Page**

Anglada v. Linens N Things, Inc., No. 06 Civ. 12091 (CM)(LMS), 2007 U.S. Dist.
      LEXIS 39105 (S.D.N.Y. Apr. 26, 2007), adopted by, 2007 U.S. Dist. LEXIS
      39105 (S.D.N.Y. May 29, 2007).................................................................................20, 21

Belt v. Emcare Inc., 299 F. Supp. 2d 664 (E.D. Tex. 2003)....................................................16, 17

Burrell v. Crown Central Petroleum, Inc., 176 F.R.D. 236 (E.D. Tex. 1997)........................13, 15

Cohen v. Apache Corp., No. 89 Civ. 0076 (PNL), 1991 U.S. Dist. LEXIS 1 (S.D.N.Y.
      Jan. 2, 1991)......................................................................................................................13

Diaz v. Electronics Boutique of Am., Inc., 04-CV-0840E (Sr), 2005 U.S. Dist. LEXIS
      30382 (W.D.N.Y. Oct. 17, 2005)........................................................................................9

Erhardt v. Prudential Group, Inc., 629 F.2d 843 (2d Cir. 1980)..................................................18

Flores v. Osaka Health Spa, Inc., 05 Civ. 962 (VM) (KNF), 2006 U.S. Dist. LEXIS
      11378 (S.D.N.Y. Mar. 16, 2006) .....................................................................................9, 10

Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101
      (S.D.N.Y. 2003)........................................................................................................19, 20, 21

Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981).................................................................................13

Hall v. Burk, Civil No. 3:01-CV-2487-H, 2002 U.S. Dist. LEXIS 4163 (N.D. Tex. 2002) .........15

Kleiner v. The First National Bank of Atlanta, 751 F.2d 1193 (11th Cir. 1985)...........................17

Levinson v. Primedia Inc., No. 02 CIV. 2222 (CBM), 2003 U.S. Dist. LEXIS 20010
      (S.D.N.Y. Nov. 6, 2003) ......................................................................................................9

Masson v. Ecolab, Inc., No. 04 Civ. 4488 (MBM), 2005 WL 2000133 (S.D.N.Y. Aug.
      17, 2005) .........................................................................................................................20, 21

Matarazzo v. Friendly Ice Cream Corp., 62 F.R.D. 65 (E.D.N.Y. 1974)......................................15

Mazur v. Olek Jejbzon & Co., 05 Civ. 2194 (RMB) (DF), 2005 U.S. Dist. LEXIS 30321
      (S.D.N.Y. Nov. 30, 2005) .................................................................................................19, 20

Morales v. Plantworks, Inc.,
      05 Civ. 2349  2006 U.S. Dist. LEXIS 4267 (S.D.N.Y. Feb. 1, 2006) ...........................9, 10

Prizmic v. Armour, Inc., 05-CV-2503 (DLI) (MDG), 2006 U.S. Dist. LEXIS 42627
  (E.D.N.Y. June 12, 2006) ............................................................................8, 9

Tedesco v. Mishkin, 629 F. Supp. 1474 (S.D.N.Y. 1986)......................................17, 18

## PRELIMINARY STATEMENT

Defendants TSE Group LLC d/b/a B.B. King's Blues Club and Grill ("B.B. King" or the "Restaurant") and Tsion Bensusan ("Mr. Bensusan") (collectively, "Defendants") submit this Memorandum of Law, along with the accompanying Declarations of Tsion Bensusan, dated July 16, 2007 ("Bensusan Decl."), and Jonathan Stoler, Esq., dated July 16, 2007, ("Stoler Decl.") in opposition to plaintiffs' Motion for Conditional Collective Certification, Court Facilitation of Notice Pursuant to 29 U.S.C. §216(b) and a Protective Order (the "Motion").[1]  As set forth more fully herein, the Court should deny the Motion in its entirety.

In their Motion, plaintiffs assert that this case should be conditionally certified as a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), on behalf of all individuals who worked as Servers at the Restaurant within the last three years.  In an effort to establish that those in the proposed class are similarly situated, plaintiffs submit declarations from two of the three named plaintiffs and from five individuals who have filed "Consent to Sue Under Federal Fair Labor Standards Act" forms ("Consent to Sue") with the Court.  However, plaintiffs fail to show that they are similarly situated to each other or to members of the proposed class since they cannot set forth a common unlawful policy to which they were each subject or a factual nexus between themselves and the putative class members. Instead, plaintiffs' declarations are rife with inconsistencies and conclusory allegations, offering nothing of evidentiary value.  For example, while some of the declarants allege that Defendants failed to pay them an overtime premium for hours worked in excess of forty hours per week, others make no mention of such alleged unlawful practice.  Similarly, while some of the

---

[1] As plaintiffs assert in their Motion, they are not seeking class certification under Federal Rule of Civil Procedure 23 for their state law claims at this time.  (Pl. Mem. at p. 1, fn. 2).  References to "Pl. Mem." are to Plaintiffs' Memorandum of Law in support of their Motion.

declarants allege that they were forced to pay the bill for customers who left the Restaurant without paying, other declarations are devoid of such allegations. Indeed, one of the named plaintiffs – Brandon Ruckdashel – did not even submit a declaration in support of the Motion. Therefore, because plaintiffs failed to establish that they are similarly situated to each other or to the other members of the proposed class, the Court should deny their Motion to conditionally certify the collective action.

Plaintiffs' Motion also seeks a protective order "prohibiting Defendants from further communications with putative plaintiffs pertaining to matters covered by this lawsuit." Plaintiffs allege that a protective order is necessary because B.B. King offered its Servers certain payments after the commencement of this action and requested that the Servers execute a form acknowledging their receipt of such payments and releasing Defendants from potential claims stemming from their employment ("Acknowledgement"). Stated simply, plaintiffs' Motion for a protective order should be denied. As an initial matter, the Restaurant did not force the Servers into signing the Acknowledgement or otherwise take any improper advantage of its relationship with the Servers. Rather, the Servers chose to sign the Acknowledgement in exchange for payments to which they would not otherwise be legally entitled. Moreover, at the time that the Restaurant initially offered the payments to the Servers, plaintiffs had not moved for certification of the collective action and Defendants were entitled to communicate with the Servers about repayment of voluntary deductions.

Finally, assuming *arguendo* that the Court decides to conditionally certify the collective action, plaintiffs' proposed "Notice of Pendency of FLSA Lawsuit" (the "Notice") and proposed Consent to Sue should be revised. Plaintiffs failed to include a variety of information that is necessary in order for the putative class members to be able to make a fully informed decision

2

regarding whether to opt-in to this case.  For example, neither the Notice nor the Consent to Sue inform the putative plaintiffs that they are free to choose their own counsel if they decide to join the lawsuit or how plaintiffs' counsel is being paid.  Moreover, plaintiffs' proposed Notice does not set forth Defendants' position regarding plaintiffs' allegations and fails to include a deadline by which the putative plaintiffs must decide whether to opt-in to this case.

The Court should also remove from the Notice the "corrective" language proposed by plaintiffs regarding the Acknowledgement.  Plaintiffs' claim that such language is necessary in order to clarify any confusion regarding the Acknowledgement is baseless.  Plaintiffs have failed to submit any evidence that the putative class members are confused regarding their rights in this case.  Moreover, Defendants' proposed Notice clearly informs the putative class members of their rights and obviates the need for any "corrective" language.  Finally, the Court should deny plaintiffs' request that Defendants be required to post the Notice on its premises as such posting is unnecessary and, indeed, will only serve to confuse the putative plaintiffs.

## STATEMENT OF FACTS

### A.    The Parties

Defendant TSE Group LLC is a New York limited liability corporation and is the sole owner of B.B. King.  (Bensusan Decl. ¶2).  B.B. King is located at 237 West 42nd Street, New York, New York.  (Id.).  Mr. Bensusan is the Director of Operations for the Restaurant. (Bensusan Decl. ¶1).

The three named plaintiffs in this case – Brandon Salus ("Mr. Salus"), Alan Felix Ipanaque Cordova ("Mr. Ipanaque Cordova") and Brandon Ruckdashel ("Mr. Ruckdashel") (collectively, the "Named Plaintiffs") – are former Servers at B.B. King.  (Bensusan Decl. ¶3). Similarly, the five other individuals who have filed a Consent to Sue with the Court and submitted declarations in support of the instant Motion, Eric Owens ("Mr. Owens"), Laura

Ganzero ("Ms. Ganzero"), David Czyzyk ("Mr. Czyzyk"), Nina Carpenter ("Ms. Carpenter") and Adam Pierce ("Mr. Pierce") (collectively, the "Opt-In Plaintiffs"), are also former Servers at B.B. King (the Named Plaintiffs and the Opt-In Plaintiffs are collectively referred to herein as "Plaintiffs"). (Bensusan Decl. ¶4).

**B.**    **Background**

B.B. King is comprised of two distinct spaces – a Showcase Room and Lucille's Grill. The Showcase Room is a venue that presents one or two world-class music acts on a nightly basis. (Bensusan Decl. ¶5). Guests must purchase tickets in order to gain admission to the musical acts that are featured in the Showcase Room. (Bensusan Decl. ¶6). Lucille's Grill offers its guests free live music on a nightly basis. (Bensusan Decl. ¶7). Table service is available for guests in both the Showcase Room and in Lucille's Grill. (Bensusan Decl. ¶8). Both the Showcase Room and Lucille's Grill can also be rented for private parties. (Id.).

**C.**    **The Servers**

B.B. King employs a number of individuals in a variety of different titles including "Servers." (Bensusan Decl. ¶9). The Servers are assigned to work in either the Showcase Room or Lucille's Grill on a particular day. (Bensusan Decl. ¶10). Before the Restaurant is opened to the public, the Servers are responsible for setting up the tables by placing items such as silverware, napkins and votives on the tables. (Id.). Once the customers arrive, the Servers are responsible for escorting the customers to their seats, answering customers' questions, addressing such customers' concerns, if any, taking food and drink orders and delivering the bill to the customers. (Id.). Once the customers leave, the Servers are responsible for, among other things, wiping down the tables and putting away the votives, silverware and condiments. (Id.).

4

The Servers are compensated through an hourly wage and tips.  (Bensusan Decl. ¶11).
The Servers' hourly wage is based upon the applicable minimum wage allowed for tipped
waiters.  (Id.).  Each bill that a B.B. King customer receives includes a fifteen percent service
charge and sets forth a separate section on the bill for the customer to leave a tip for the Server.
(Id.).  If the customer pays his/her bill in cash, the Restaurant does not retain any portion of the
15% service charge or any tips that the customer agrees to pay.  (Bensusan Decl. ¶12).[2]

If a Server is assigned to work a private party, his or her compensation varies depending
on the size of the party.  (Bensusan Decl. ¶13).  Regardless of the size of the party, the Servers'
hourly wage is equal to or above the applicable minimum wage allowed for tipped waiters. (Id.).
At such parties, the Restaurant includes a service charge on the bill ranging from 18% to 20%
depending on the size.  (Bensusan Decl. ¶14).  If the party is for under 100 guests, the Restaurant
does not retain any portion of the service charge or any tips that the customer agrees to pay.
(Id.).  If the party is for 100 guests or more, B.B. King retains the service charge.  (Bensusan
Decl. ¶15).  Prior to such parties, B.B. King specifically explains to the customer who is paying
for such party that the service charge is retained by the Restaurant and not distributed among the
Servers.  (Id.).  B.B. King further explains to the customer that the Restaurant will not retain any
tips that the customer chooses to give the Servers.  (Id.).  The Servers are paid above the
minimum wage under these circumstances.  (Id.).

B.B. King has never maintained a formal policy or practice of requiring Servers to pay
for a customer's bill when a customer left the Restaurant without paying his/her bill ("a walk-
out") or when a customer otherwise refused to pay his/her bill.  (Bensusan Decl. ¶16).  To the

---

[2] If a customer pays his/her bill by credit card, the Restaurant deducts a 3% fee that the Restaurant is charged by the credit card companies for liquidating credit card tips.  (Bensusan Decl. ¶12). The Restaurant does not retain any other portion of the service charge or tips.  (Id.).

contrary, B.B. King has specifically advised its managers not to deduct money from the Servers' pay to cover walk-outs.  (Bensusan Decl. ¶17, Ex. A).  However, in one instance to the best of B.B. King's knowledge, Brandon Salus had a deduction made for a walk-out.  (Bensusan Decl. ¶17).  The fact that this has happened so rarely is further evidence that the Servers are not similarly situated.  Similarly, B.B. King has never maintained a formal policy or practice of requiring Servers to reimburse B.B. King for spills or for breaking B.B. King's property (*i.e.,* a plate or glass).  (Bensusan Decl. ¶18).  To the best of B.B. King's knowledge, no Server has ever been required to reimburse the Restaurant for spills or breakage.  (Id.).

**D.    Servers' Request That Porters Assume
Responsibility For Setting Up The Showcase Room**

Prior to December 2003, the Servers were also responsible for arriving at the Restaurant before it opened for business and setting up the Showcase Room.  (Bensusan Decl. ¶19).  Certain shows were designed as "standing room" shows while others were designed as "seated shows." (Id.).  Thus, the Servers were required to either remove tables and chairs from the Showcase Room or move tables and chairs into the Showcase Room depending upon the type of event that was scheduled in the Showcase Room on a given night.  (Id.).

In or around December 2003, Gabrielle Brechner ("Ms. Brechner"), a former manager at B.B. King, approached Mr. Bensusan and informed him of her recent conversation with the Restaurant's Servers.  (Bensusan Decl. ¶20).  Specifically, Ms. Brechner explained to Mr. Bensusan that the Servers informed her that they did not want to be responsible for setting up the Showcase Room before the first show of each night.  (Id.).  The Servers then suggested that B.B. King's Porters[3] should have such responsibility and offered to each pay $5.00 per week to the

---

[3] The Porters are responsible for making sure that the Showcase Room and Lucille's Grill are clean before they are opened to the public.  (Bensusan Decl. ¶21, fn. 1).

6

Porters for taking on these responsibilities. (Bensusan Decl. ¶21). Mr. Bensusan agreed to the Servers' request and, beginning in or around December 2003, B.B. King transferred $5.00 a week to the Porters.[4] (Bensusan Decl. ¶22). B.B. King did not retain any portion of these payments. (Id.). No Server, including Plaintiffs, ever complained to the Restaurant about such process nor did any Server, including Plaintiffs, ever decline to participate in such process. (Bensusan Decl. ¶23).

In or around May 2007, B.B. King announced that it was no longer going to transfer $5.00 a week to the Porters. (Bensusan Decl. ¶24). In connection therewith, B.B. King paid current and former Servers for each $5.00 transfer that B.B. King had previously made to the Porters on their behalf. (Bensusan Decl. ¶25). B.B. King also provided its Servers with an additional payment representing a minimum of 18% of the total amount that B.B. King had previously transferred on behalf of that Server to the Porters. (Id.). In exchange for such payments, the Servers were asked to sign the Acknowledgement, wherein the Servers confirmed that B.B. King had transferred $5.00 a week to the Porters at their request and that B.B. King is no longer making such deductions. (Bensusan Decl. ¶¶25-26; Czyzyk Decl. Ex. B).[5] The Servers further agreed to release B.B. King from any and all claims arising out of their employment at the Restaurant.[6] (Bensusan Decl. ¶26; Czyzyk Decl. Ex. B). B.B. King did not require the Servers to sign the Acknowledgement nor did B.B. King threaten to terminate the employment of any current Server who refused to sign the Acknowledgement. (Bensusan Decl.

---

[4] From time to time, the $5.00 transfer was not applied to certain Servers due to administrative errors. (Bensusan Decl. ¶22, fn. 2).

[5] References to "Czyzyk Decl." are to the Declaration of David Czyzyk, dated June 25, 2007.

[6] The Acknowledgement does not contain any specific statement restricting the Servers from joining a collective action or class action. (Czyzyk Decl. Ex. B).

¶27).  Moreover, B.B. King did not withhold any Server's payment on the grounds that he/she refused to sign the Acknowledgement.  (Id.).

**E.     Procedural History**

On or about April 19, 2007, Mr. Salus commenced the instant action by filing a Complaint with this Court.  On or about May 1, 2007, Mr. Salus and Mr. Ipanaque Cordova filed an Amended Complaint.  On or about May 30, 2007, the Named Plaintiffs filed a Second Amended Complaint.  (Stoler Decl. Ex. A).  The Second Amended Complaint sets forth the following six claims for relief: (1) failure to pay minimum wage and keep appropriate records under the FLSA; (2) failure to pay overtime under the FLSA; (3) failure to pay minimum wage under the New York State Minimum Wage Act ("NYSMWA"); (4) failure to pay overtime under the NYSMWA; (5) illegal deductions from gratuities under the New York Labor Law; and (6) failure to pay spread of hours under the New York Labor Law and the New York Codes, Rules and Regulations.  (Id.).  On or about June 26, 2007, Plaintiffs filed the instant Motion. Defendants filed their Answer to the Second Amended Complaint on June 29, 2007.  (Stoler Decl. Ex. B).

**ARGUMENT**

**I.     PLAINTIFFS' MOTION FOR CONDITIONAL
COLLECTIVE CERTIFICATION SHOULD BE DENIED
BECAUSE PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THEY
ARE SIMILARLY SITUATED TO THE PROPOSED CLASS MEMBERS**

When a collective action is brought pursuant to §216(b) of the FLSA, it is within the discretion of the District Courts to decide whether to authorize the sending of notice to potential class members and direct a defendant to disclose the names and addresses of similarly situated potential plaintiffs.  See Prizmic v. Armour, Inc., 05-CV-2503 (DLI) (MDG), 2006 U.S. Dist.

LEXIS 42627, *4 (E.D.N.Y. June 12, 2006);[7] Morales v. Plantworks, Inc., 05 Civ. 2349 (DC), 2006 U.S. Dist. LEXIS 4267, *3-4 (S.D.N.Y. Feb. 1, 2006); Diaz v. Electronics Boutique of Am., Inc., 04-CV-0840E (Sr), 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17, 2005); Levinson v. Primedia Inc., No. 02 CIV. 2222 (CBM), 2003 U.S. Dist. LEXIS 20010, *3 (S.D.N.Y. Nov. 6, 2003).

At this stage of the litigation, the burden is on the plaintiff to demonstrate that potential class members are "similarly situated."  The plaintiff satisfies this burden by demonstrating a factual nexus between his or her situation and the situation of other potential plaintiffs.  Flores v. Osaka Health Spa, Inc., 05 Civ. 962 (VM) (KNF), 2006 U.S. Dist. LEXIS 11378, *4-5 (S.D.N.Y. Mar. 16, 2006); Morales, 2006 U.S. Dist. LEXIS 4267, at *4; Prizmic, 2006 U.S. Dist. LEXIS at *5.  If the Court finds that they are similarly situated, it may conditionally certify the collective action.  Although the plaintiff's burden at this stage is not onerous, the plaintiff must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated rather than mere conclusory allegations.  Flores, 2006 U.S. Dist. LEXIS 11378, at *9; Morales, 2006 U.S. Dist. LEXIS 4267, at *6-7.  In this case, Plaintiffs allege that they are similarly situated to each other and to all other individuals who worked as Servers at B.B. King's within the last three years.  However, a careful review of the Second Amended Complaint and the declarations that Plaintiffs submitted in support of their Motion belies such claim.

The declarations submitted by the Named Plaintiffs fail to meet even the basic evidentiary requirements for collective action certification because they do not establish that Plaintiffs and potential plaintiffs were victims of a common policy or plan that violates the law or any other sufficient factual similarities.  For example, while the Second Amended Complaint

---

[7] Copies of unreported decisions are attached hereto in alphabetical order in the Appendix.

alleges that B.B. King failed to pay its Servers the proper minimum wage, overtime or a spread of hours premium, Mr. Salus's declaration is devoid of any such allegations. Mr. Salus's declaration also makes no mention of B.B. King's alleged practice of forcing Servers to pay for spills or breakage and also does not allege that the Restaurant illegally deducted $5.00 from his pay or the pay of any other Servers. Rather, Mr. Salus merely alleges that he was forced to pay for a walk-out on one occasion and further states, in conclusory fashion, that he "also noticed other servers being charged for walk-outs as well." (Salus Decl. ¶4).[8] Significantly, Mr. Salus does not provide any specifics in support of his conclusory allegation that other Servers were charged for walk-outs, such as, the names of the Servers charged, the dates of the alleged deductions or the amounts deducted. Such conclusory allegations cannot be used to support a motion to conditionally certify a collective action. Flores, 2006 U.S. Dist. LEXIS 11378, at *5 (declining to conditionally certify collective action and stating that the conclusory allegations set forth in the plaintiff's affidavit are "nothing of evidentiary value to support a finding that a factual nexus exists between the way the defendants allegedly compensated [the plaintiff] and the way they may have compensated other employees during the relevant time period"); Morales, 2006 U.S. Dist. LEXIS 4267, at *6-7 (conclusory allegations insufficient to support motion for conditional certification of collective action).

Likewise, Mr. Ipanaque Cordova's declaration fails to show that Plaintiffs are similarly situated to each other, to the Opt-In Plaintiffs and/or to the putative class. Specifically, Mr. Ipanaque Cordova does not claim in his declaration that he or any other Servers were forced to pay for walk-outs, spills or breakage. Mr. Ipanaque Cordova also does not allege that $5.00 was illegally deducted from his pay. Moreover, while Mr. Ipanaque Cordova alleges that the

---

[8] References to "Salus Decl." are to the Declaration of Brandon Salus, dated June 21, 2007.

10

Restaurant failed to provide him with certain payments (e.g., overtime and spread of hours), Mr. Ipanaque Cordova fails to allege that any other Servers were subjected to similar treatment. (Ipanaque Cordova Decl. ¶¶3-7).[9]  Finally, Mr. Ruckdashel does not even submit a declaration in support of the Motion.

In sum, the Named Plaintiffs have failed to show that there is even one unlawful practice or policy to which each of them was collectively subjected by the Restaurant.  To the extent that the Named Plaintiffs allege that they were subjected to certain unlawful practices (i.e., having to pay for walk-outs), such claims are too individualized to maintain a collective action.  Based upon the Named Plaintiffs' failure to establish that they are similarly situated to each other, the Opt-In Plaintiffs and/or any other Servers, Plaintiffs' Motion for conditional certification should be denied.

Similar inconsistencies exist in the Opt-In Plaintiffs' declarations.  Examples of such inconsistencies include:

- Neither Mr. Owens, Ms. Ganzero, Ms. Carpenter nor Mr. Czyzyk allege that they were forced to pay for spills or breakage;

- Neither Ms. Carpenter, Mr. Czyzyk nor Mr. Pierce allege that they were paid at the incorrect minimum wage rate;

- Neither Ms. Ganzero nor Mr. Owens allege that B.B. King failed to pay them an overtime premium for hours worked in excess of 40 hours per week;

- Neither Ms. Carpenter nor Mr. Pierce allege that B.B. King illegally deducted $5.00 per week from their pay or that B.B. King failed to pay them a spread of hours premium; and

- Mr. Pierce does not allege that he was forced to pay for walk-outs.

---

[9] References to "Ipanaque Cordova Decl." are to the Declaration of Alan Felix Ipanaque Cordova, dated June 25, 2007.

Like the declarations of Mr. Salus and Mr. Ipanaque Cordova, the declarations of some of the Opt-In Plaintiffs also contain conclusory allegations, which are insufficient to support the Motion.  For example, Mr. Pierce alleges in conclusory fashion that "I noticed several employees forced by B.B. King to pay for walk-out customers' bills."  (Pierce Decl.¶6).[10]  However, Mr. Pierce offers no details in support of his claim.

Further belying Plaintiffs' claim that they are similarly situated is the fact that some of the declarations highlight the differences among Servers and the Restaurant's alleged policies. For example, Mr. Owens, Mr. Ipanaque Cordova, Mr. Czyzyk, Ms. Ganzero and Ms. Carpenter each allege that they were not paid for their first four or five shifts.  (Owens Decl. ¶10; Ipanaque Cordova Decl. ¶4; Czyzyk Decl. ¶4; Ganzero Decl. ¶10; Carpenter Decl. ¶7).[11]  Similarly, Mr. Owens, Mr. Ipanaque Cordova and Ms. Ganzero are the only Plaintiffs who allege that they were not paid mandatory gratuities that B.B. King charged guests at private parties.[12]  (Owens Decl. ¶7; Ipanaque Cordova Decl. ¶7; Ganzero Decl. ¶7).  Finally, Mr. Owens and Ms. Ganzero are the only Plaintiffs who allege that B.B. King deducted too much money for withholding taxes. (Owens Decl. ¶9; Ganzero Decl. ¶9).

In light of the numerous inconsistencies, individualized claims and conclusory allegations among Plaintiffs' declarations, it is evident that Plaintiffs failed to establish that they are

---

[10] References to "Pierce Decl." are to the Declaration of Adam Pierce, dated May 21, 2007.

[11] References to "Owens Decl." are to the Declaration of Eric Owens, dated June 21, 2007.  References to "Ganzero Decl." are to the Declaration of Laura Ganzero, dated June 21, 2007.  References to "Carpenter Decl." are to the Declaration of Nina Carpenter, dated June 25, 2007.

[12] With the exception of this allegation regarding private parties, none of the Plaintiffs' declarations specify whether they worked at private parties, whether they worked in the Showcase Room or Lucille's Grill and whether they performed any non-Server duties, because such specifics would further show that Plaintiffs are not similarly situated to each other or the putative class.

similarly situated to each other or to other putative class members. Accordingly, Plaintiffs'
motion for conditional collective certification should be denied.

## II.    PLAINTIFFS' REQUEST FOR A PROTECTIVE ORDER SHOULD BE DENIED

In addition to conditional collective certification, Plaintiffs also seek a protective order
"prohibiting Defendants from further communications with putative plaintiffs pertaining to
matters covered by this lawsuit." (Pl. Mem. at p. 2). Plaintiffs seek such protective order
because B.B. King stopped transferring $5.00 per week to the Porters and paid its Servers for
each $5.00 transfer that B.B. King had previously made to the Porters on their behalf in
exchange for an Acknowledgement. As set forth below, the protective order that Plaintiffs seek
is wholly inappropriate under the circumstances of this case.

District Courts have discretion to supervise a class action and to issue orders regarding
the conduct of parties and counsel. See Gulf Oil Co. v. Bernard, 452 U.S. 89, 99-100 (1981);
Cohen v. Apache Corp., No. 89 Civ. 0076 (PNL), 1991 U.S. Dist. LEXIS 1, *4 (S.D.N.Y. Jan. 2,
1991). However, such discretion is not unlimited. Indeed, "an order limiting communication
between parties and class members may issue only on the basis of a clear record and specific
findings that establish the need for such an order." Cohen, 1991 U.S. Dist. LEXIS 1, at *4; see
also Gulf Oil, 452 U.S. at 101-102. "Absent a clear record and specific findings of realized or
threatened abuses, an order cannot be justified under the relevant standard." Burrell v. Crown
Central Petroleum, Inc., 176 F.R.D. 236, 244 (E.D. Tex. 1997).

Plaintiffs argue that this Court should issue a protective order because Defendants
"exploited their advantageous business relationship with the [S]ervers" by asking the current
Servers to sign the Acknowledgement. (Pl. Mem. at p. 17). They further claim that the current
Servers were coerced into signing the same because they "depend on Defendants for their

13

income." (Pl. Mem. at p. 17). Such allegations are utterly baseless and Plaintiffs have failed to submit any evidence in support of the same.

Indeed, a number of factors clearly undermine Plaintiffs' coercion claim. As an initial matter, while the Restaurant requested that the Servers sign the Acknowledgement, there is no claim or any evidence to show that it threatened retaliation against any Server who refused to sign the Acknowledgement or withheld any Server's payment on the grounds that he/she refused to sign the Acknowledgement. Accordingly, Plaintiffs' coercion claim must be disregarded as speculative and conclusory.

In further support of their coercion claim, Plaintiffs assert that Defendants did not provide the Servers with valid consideration for their execution of the Acknowledgement. Specifically, Plaintiffs argue that the weekly transfers of $5.00 to the Porters constituted an unlawful deduction from the Servers' wages. Thus, Plaintiffs conclude, the Servers were essentially forced to sign an Acknowledgement so that they could receive payments to which they were already entitled as a matter of law. (Pl. Mem. at p. 17).

Simply put, Plaintiffs are wrong. The consideration that B.B. King offered the Servers in exchange for the Acknowledgement – payment of each $5.00 transfer plus a minimum of 18% – is a payment to which the Servers would not have otherwise been entitled to receive under the law. As set forth above, the Restaurant agreed to transfer $5.00 a week to the Porters at the Servers' request because the Servers did not want to be responsible for setting up the Showcase Room by moving tables and/or chairs into or out of the Showcase Room before the first show each night. (Bensusan Decl. ¶¶19-23). The Restaurant did not retain any portion of such payments. (Bensusan Decl. ¶22). The Servers' decision to transfer $5.00 a week to the Porters and the Restaurant's agreement to help facilitate such transfer cannot be considered an illegal

14

deduction of the Servers' wages by B.B. King.  Thus, Plaintiffs' claim that the Servers were forced to sign an Acknowledgement in order to receive payments to which they were already entitled must be disregarded by this Court.

Plaintiffs' claim of coercion is further belied by the fact that former Servers, none of whom currently depend on Defendants for their income, willingly signed an Acknowledgement in exchange for the payment referenced above.  (Bensusan Decl. ¶25).  Clearly, if B.B. King was coercing the Servers into signing the Acknowledgement, the former Servers would not have willingly volunteered to sign the same.

Because Plaintiffs have failed to provide any evidence of coercion or abuse, their request for a protective order should be denied.  See Burrell, 176 F.R.D. at 244 (denying protective order and stating "[t]he court cannot issue an order without evidence that a potential for serious abuse exists"); Hall v. Burk, Civil No. 3:01-CV-2487-H, 2002 U.S. Dist. LEXIS 4163, *11-12 (N.D. Tex. 2002) (denying to issue protective order where defendant offered payments to current and former employees in exchange for a release after the named plaintiff had commenced an action against the defendant alleging that the defendant had violated the FLSA); Matarazzo v. Friendly Ice Cream Corp., 62 F.R.D. 65, 69 (E.D.N.Y. 1974) (finding no evidence of coercion or fraud where defendant-employer requested that all current employees in the class sign a statement stating that they did not wish to participate in the class action and intended to release the defendant-employer from any claims asserted by the plaintiff).[13]

---

[13] To the extent that Plaintiffs are asking this Court to deem the Acknowledgement void, such request must be denied because Plaintiffs lack standing to assert such a claim.  Plaintiffs lack standing because none of them have signed an Acknowledgement and, thus, they cannot establish that they were injured by the fact that other putative plaintiffs may have signed.  See Hall, 2002 U.S. Dist. LEXIS 4163, at *11 (holding that the plaintiff lacked standing to void a release that had been signed by some of the potential class members because the plaintiff had not signed such a release herself).

In further support of their Motion, Plaintiffs cite to various cases in which courts have granted protective orders limiting the communications between a party and putative class members because the party engaged in improper communications with such putative class members. However, the conduct at issue in those cases is clearly distinguishable from the instant matter and, thus, such cases fail to support Plaintiffs' request for a protective order.

For example, Plaintiffs' reliance on <u>Belt v. Emcare Inc.</u>, 299 F. Supp. 2d 664 (E.D. Tex. 2003) is misplaced. In <u>Belt</u>, the court enjoined the defendant from making any ex-parte communications with absent class members regarding the case until the end of trial. <u>Id.</u> at 669. The court imposed such an injunction because the defendant had mailed a letter to potential plaintiffs misrepresenting many issues in the case in an effort to discourage such individuals from opting-in to the case. <u>Id.</u> Among other things, the defendant's letter suggested that the case was an attack on the potential plaintiffs' status as professionals, misrepresented the amount of damages available to potential plaintiffs, incorrectly stated that attorneys' fees would be deducted from any award and suggested that the lawsuit could endanger the potential class members' job stability. <u>Id.</u> at 667-668. Moreover, the defendant mailed the letter even though the court had previously granted the plaintiffs' motion for conditional class certification, had approved a form notice to be mailed to potential class members and had ordered the defendant to provide the plaintiff with the names and addresses of potential class members. <u>Id.</u> at 666. In fact, the defendant sent out the misleading letter only two days before the date upon which the defendant was required to provide the plaintiff with the potential class members' addresses. <u>Id.</u> at 669. Based upon such facts, the court concluded that the defendant's conduct was clearly "intended to subvert the Court's carefully crafted notice and its role in administering the

collective action" and enjoined the defendant from any further ex-parte communications with potential plaintiffs regarding the case. Id. at 669.

The facts in Kleiner v. The First National Bank of Atlanta, 751 F.2d 1193 (11th Cir. 1985) are equally distinguishable from this case. In Kleiner, the defendants began contacting class members and asking them to opt-out of the class action despite the fact that the court had already: (1) certified the class; (2) approved the form notice to be sent to class members; and (3) issued an order prohibiting the defendants from informally contacting class members. Id. at 1196-1198. Indeed, in a further attempt to undermine the court, the defendants began contacting class members two days before the court-approved notices were to be mailed to class members. Id. As a result of the defendants' actions and blatant disregard of a previous court order, the court sanctioned the defendants and their counsel and rendered the opt-outs that the defendants had secured to be voidable. Id. at 1199.

In another case on which Plaintiffs mistakenly rely, Tedesco v. Mishkin, 629 F. Supp. 1474 (S.D.N.Y. 1986), one of the defendants (who was also an attorney) ghostwrote a false and misleading letter to class members regarding the case and asked a friend of his to sign the letter. Tedesco, 629 F. Supp. at 1478-1479. The misrepresentations in the letter included a statement that the law firm representing the plaintiffs was "conducting or supporting a vicious campaign seeking to discredit [the defendant] and destroy his reputation and professional practice" and had "created a massive and complicated lawsuit including a bank and other innocent persons as defendants." Id. The defendant sent out the letter even though the court had already certified the class, approved the form notice to be sent to class members and "repeatedly ordered that there be no further game-playing by any party." Id. Moreover, when the defendant learned that his friend planned to falsely testify at his deposition that he, and not the defendant, had authored the

17

letter, the defendant did nothing to stop his friend from perjuring himself. Id. As a result, the court sanctioned the defendant and restrained him from further communicating with class members so as to discourage participation in the class. Id. at 1484.

Finally, in Erhardt v. Prudential Group, Inc., 629 F.2d 843 (2d Cir. 1980), a defendant sent out a notice to putative class members commenting on the litigation, warning them that a successful defense might make them liable for costs and urging them to disassociate themselves from the case. Erhardt, 629 F.2d at 845. The defendant sent out such notice even though the court had already issued an order granting class certification and approving the form notice to class members. Id. at 844-845. As a result of such conduct, the court enjoined the defendants from further communicating with class members except upon prior approval of the court. Id. at 845.

Defendants' alleged conduct in the instant matter is clearly distinguishable from the conduct at issue in the above-discussed cases. As an initial matter, at the time B.B. King initially offered the Servers the above-discussed payments and requested that they sign the Acknowledgement, Plaintiffs had not even moved for conditional certification, let alone secured such conditional certification and/or court-approved notice. There also were no Court orders in place prohibiting Defendants from communicating with the Servers. In addition, as set forth above, the payments that B.B. King offered in exchange for the Acknowledgement are payments to which the Servers would not otherwise be entitled.

Simply put, Defendants did not coerce the Servers into signing the Acknowledgement and did not engage in any other conduct comparable to the conduct at issue in the cases upon which Plaintiffs rely. Therefore, for the reasons set forth above, Plaintiffs' request for a protective order should be denied.

III.    **PLAINTIFFS' PROPOSED FORM NOTICE AND PROPOSED**
**FORM CONSENT TO SUE SHOULD BE REVISED AND DEFENDANTS**
**SHOULD NOT  BE REQUIRED TO POST THE NOTICE ON ITS PREMISES**

Assuming *arguendo* that this Court grants Plaintiffs' motion for conditional collective certification, Plaintiffs' proposed Notice and proposed Consent to Sue are inappropriate and should be revised.  Moreover, this Court should disregard Plaintiffs' assertion that the Notice should contain "corrective" language regarding the Acknowledgement and that Defendants should be required to post the Notice on their premises.

A.    **Plaintiffs' Proposed Notice and Proposed Consent to Sue Should Be Revised**

"No courts have specifically outlined what form court-authorized notice should take, or what provisions notice issued pursuant to §216(b) should contain."  Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 105-106 (S.D.N.Y. 2003); see also Mazur v. Olek Jejbzon & Co., 05 Civ. 2194 (RMB) (DF), 2005 U.S. Dist. LEXIS 30321, *18 (S.D.N.Y. Nov. 30, 2005).  Thus, the content of such notice is left to the discretion of the trial court.  Gjurovich, 282 F. Supp. 2d at 106.  In connection with their Motion, Plaintiffs seek the Court's approval of their proposed Notice and Consent to Sue.  However, as discussed below, this Court should exercise its discretion and revise the Notice and Consent to Sue because they both fail to include important information that should be conveyed to the putative class members.[14]

To begin, Plaintiffs' proposed Notice fails to include any statement setting forth Defendants' position regarding Plaintiffs' allegations.  Accordingly, the section of the Notice that describes the lawsuit should be revised to include a statement that Defendants deny Plaintiffs' allegations and deny that they have violated the FLSA or any other applicable laws.

_____

[14] Defendants' proposed Notice and proposed Consent to Sue are attached to the Stoler Decl. as Exhibits C and D respectively.  Defendants' proposed Notice contains numerous differences from Plaintiffs' proposed Notice. Accordingly, Defendants only address the most important of its suggested changes to the proposed Notice herein.

(Stoler Decl. Ex. C, ¶1).  See Anglada v. Linens 'N Things, Inc., No. 06 Civ. 12091 (CM)(LMS), 2007 U.S. Dist. LEXIS 39105, *30 (S.D.N.Y. Apr. 26, 2007), adopted by, 2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. May 29, 2007) (including defendant's denial in the section of the form notice that describes the lawsuit).[15]  Similarly, the Notice should also include an affirmative statement to the putative plaintiffs that the fact that they have received such Notice does not mean that they have a valid claim against Defendants or that they are entitled to any monetary recovery.  (Stoler Decl. Ex. C, ¶3).  See Mazur, 2005 U.S. Dist. LEXIS 30321, at *21 (adding to the notice to putative plaintiffs a statement that "[t]his notice does not mean that you have a valid claim or that you are entitled to any monetary recovery.  Any such determination must still be made by the Court.").

Plaintiffs' proposed Notice also fails to inform putative class members that they are free to retain another lawyer of their own choosing and are not required to retain Plaintiffs' counsel.  Such language should be included in the Notice.  (Stoler Decl. Ex. C, ¶¶3, 4, 7).  See Anglada, 2007 U.S. Dist. LEXIS 39105, at *30, 32-33; Gjurovich, 282 F. Supp. 2d at 107; Masson v. Ecolab, Inc., No. 04 Civ. 4488 (MBM), 2005 WL 2000133, *17 (S.D.N.Y. Aug. 17, 2005).  Further, Plaintiffs' form Notice should be revised to include an explanation as to how Plaintiffs' counsel is being paid.  Defendants have included such an explanation in their proposed Notice.  (Stoler Decl. Ex. C, ¶4).  See Anglada, 2007 U.S. Dist. LEXIS 39105, at *32 (including statements in proposed notice informing putative plaintiffs that counsel for the named plaintiff is being paid on a contingency fee basis); Gjurovich, 282 F. Supp. 2d at 107 (same); Mazur, 2005 U.S. Dist. LEXIS 30321, at *18-19 (same).

---

[15] The Notice should also inform the putative plaintiffs that if Plaintiffs lose this case, they may be required to pay Defendants' costs.  (Stoler Decl. Ex. C, ¶1).

In addition, Plaintiffs' proposed Notice is devoid of any deadline by which the putative plaintiffs must opt-in to the instant action. Such a deadline is necessary in order to make certain that the parties and the Court are not subjected to a never-ending discovery period as the result of putative plaintiffs opting-in long after the case has begun. Accordingly, the Notice should inform putative plaintiffs that they must opt-in to the instant matter no later than sixty days from the date of the Notice. (Stoler Decl. Ex. C, ¶¶3-4). Any putative plaintiffs who fail to opt-in by such date would not be prejudiced in any way because they could simply commence their own action against Defendants should they choose to do so. Courts routinely include an opt-in deadline in form notices to putative plaintiffs. See Anglada, 2007 U.S. Dist. LEXIS 39105, at *32-33; Gjurovich, 282 F. Supp. 2d at 107; Masson, 2005 WL 2000133, at *17.

Plaintiffs' proposed Notice should also be revised to include the contact information of Defendants' counsel. (Stoler Decl. Ex. C, ¶8). Such information will accurately convey to the putative plaintiffs that Defendants take the claims set forth in this case seriously and are prepared to vigorously defend themselves against such claims. See Gjurovich, 282 F. Supp. 2d at 107 (including contact information for the defendants' counsel in the form notice).[16]

## B.    The Notice Should Not Contain Any Corrective Language and Defendants Should Not Be Required to Post The Notice on Their Premises

In addition to revising Plaintiffs' proposed Notice as discussed above, the Court should delete the "corrective" language that Plaintiffs seek to include in the Notice (Pl. Notice of

---

[16] Similarly, the Consent to Sue should be revised to: (1) inform the putative plaintiffs that they are free to choose their own counsel; (2) include a certification by the putative plaintiffs that they currently work as a Server at B.B. King or worked as a Server at B.B. King within the past three years; and (3) explain the fee arrangement between the putative plaintiffs and counsel for the Named Plaintiffs. (Stoler Decl. Ex. D). See Anglada, 2007 U.S. Dist. LEXIS 39105, at *35-37; Masson, 2005 WL 2000133, at *18. Plaintiffs' proposed Consent to Sue must also be revised because it seeks to bind putative plaintiffs to a "Professional Services Agreement" that was signed by the Named Plaintiffs without providing the putative plaintiffs with the opportunity to review such agreement. Finally, including a place on the Consent to Sue for the putative plaintiffs to provide their contact information will obviate the need for Plaintiffs' counsel to send a separate "Client Information" form. (Stoler Decl. Ex. D).

Motion Ex. A, ¶2) and should deny Plaintiffs' request that Defendants be required to post the Notice on its premises.   Plaintiffs claim that corrective language is necessary because the Acknowledgement "misleads putative plaintiffs into believing that by signing the release that they are no longer entitled to claim wages owed them under the FLSA."   (Pl. Mem. at p. 17). Plaintiffs further claim that Defendants should be required to post the Notice with the corrective language because "potential class members are more likely to believe such corrective notice if it involves an affirmative statement by Defendants."  (Pl. Mem. at p. 18).

Plaintiffs' requests are without merit for several reasons.   First, Plaintiffs' proposed corrective language is unnecessary because Defendants have not engaged in any conduct that would warrant the inclusion of any such wording.   While Plaintiffs allege in conclusory fashion that the putative plaintiffs who signed the Acknowledgement have been misled, Plaintiffs have failed to submit any credible evidence in support of such position.   In fact, Plaintiffs' Motion is devoid of any evidence that even one putative plaintiff is in any way confused about the remedies that he/she is entitled to seek in court or was coerced into signing the Acknowledgement.   Even assuming that certain of the putative plaintiffs are confused, Defendants' proposed Notice clearly informs them of their right to join this lawsuit and contains the contact information of Plaintiffs' counsel whom the putative plaintiffs can easily contact if they have any questions regarding their rights.   Defendants' proposed Notice further informs the putative plaintiffs of their right to contact their own counsel if they choose to seek a third party's opinion regarding their rights.   Such information is more than sufficient to clearly apprise the putative plaintiffs of their right to join this case and obviates the need for any corrective language to be included in the Notice.

Plaintiffs' request that Defendants be required to post the Notice should also be denied, particularly since such request will serve no logical purpose. Posting such a Notice on the Defendants' premises, where some of the putative plaintiffs work, will undoubtedly lead to discussion of the lawsuit on Defendants' premises. Some putative plaintiffs will likely have questions regarding the lawsuit and may bring such questions to the attention of Mr. Bensusan or some of B.B. King's managers, who will be prohibited from answering if Plaintiffs' Motion for a protective order is granted. In other words, requiring Defendants to post the Notice on their premises, yet prohibiting them from discussing the lawsuit with the putative plaintiffs will, indeed, lead to confusion, which is what Plaintiffs are purportedly trying to avoid. Accordingly, this Court should deny Plaintiffs' request that the Notice be posted on Defendants' premises.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion in its entirety.

DATED:  New York, New York                Respectfully submitted,
        July 16, 2007                       HELLER EHRMAN LLP

                                            By: /s/ Jonathan Stoler_____
                                                 Jonathan Stoler (JS-7494)
                                                 Kenneth Kirschner (KK-0252)
                                                 Eric Raphan (ER-8339)

                                                 7 Times Square
                                                 New York, NY  10036
                                                 Telephone: (212) 832-8300
                                                 Facsimile: (212) 763-7600
                                                 Attorneys for Defendants

23