# Appendix

**DECISIONS PUBLISHED IN UNOFFICIAL REPORTER
SERVICES CITED IN DEFENDANTS' MEMORANDUM OF LAW**

1. <u>Anglada v. Linens N Things, Inc.</u>, No. 06 Civ. 12091 (CM)(LMS), 2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. Apr. 26, 2007), <u>adopted by</u>, 2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. May 29, 2007)

2. <u>Cohen v. Apache Corp.</u>, No. 89 Civ. 0076 (PNL), 1991 U.S. Dist. LEXIS 1 (S.D.N.Y. Jan. 2, 1991)

3. <u>Diaz v. Electronics Boutique of Am., Inc.</u>, 04-CV-0840E (Sr), 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17, 2005)

4. <u>Flores v. Osaka Health Spa, Inc.</u>, 05 Civ. 962 (VM) (KNF), 2006 U.S. Dist. LEXIS 11378 (S.D.N.Y. Mar. 16, 2006)

5. <u>Hall v. Burk</u>, Civil No. 3:01-CV-2487-H, 2002 U.S. Dist. LEXIS 4163 (N.D. Tex. 2002)

6. <u>Levinson v. Primedia Inc.</u>, No. 02 CIV. 2222 (CBM), 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. Nov. 6, 2003)

7. <u>Masson v. Ecolab, Inc.</u>, No. 04 Civ. 4488 (MBM), 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005)

8. <u>Mazur v. Olek Jejbzon & Co.</u>, 05 Civ. 2194 (RMB) (DF), 2005 U.S. Dist. LEXIS 30321 (S.D.N.Y. Nov. 30, 2005)

9. <u>Morales v. Plantowrks, Inc.</u>, 05 Civ. 2349  2006 U.S. Dist. LEXIS 4267 (S.D.N.Y. Feb. 1, 2006)

10. <u>Prizmic v. Armour, Inc.</u>, 05-CV-2503 (DLI) (MDG), 2006 U.S. Dist. LEXIS 42627 (E.D.N.Y. June 12, 2006)

LEXSEE 2007 US DIST LEXIS 39105

**JOSE ANGLADA, individually and on behalf of others similarly situated, Plaintiffs, - against - LINENS 'N THINGS, INC., Defendant.**

**06 Civ. 12901 (CM) (LMS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2007 U.S. Dist. LEXIS 39105**

**April 26, 2007, Decided**
**April 26, 2007, Filed**

**SUBSEQUENT HISTORY:** Adopted by, Without opinion by Anglada v. Linens 'n Things, Inc., 2007 U.S. Dist. LEXIS 38918 (S.D.N.Y., May 22, 2007)

**COUNSEL:** [*1]  For Jose Anglada, Individually and on behalf of others similarly situated, Plaintiff: Michael J.D. Sweeney, LEAD ATTORNEY, Law Office of Dan Getman, New Paltz, NY.

For Linen 'N Things, Inc., Defendant: Carrie Beth Hoffman, Ronald Mark Gaswirth, Gardere Wynne Sewell LLP, Dallas, TX; Paul Patrick Rooney, Reed Smith, LLP, Philadelphia, PA.

**JUDGES:** Lisa Margaret Smith, Chief United States Magistrate Judge.

**OPINION BY:** Lisa Margaret Smith

**OPINION**

**REPORT AND RECOMMENDATION**

**TO: THE HONORABLE COLLEEN MCMAHON, UNITED STATES DISTRICT JUDGE**

Plaintiff Jose Anglada (herein, "Plaintiff") commenced the instant action against his former employer Defendant Linens 'N Things, Inc. (herein, "Defendant" or "LNT") pursuant to the Fair Labor Standards Act (herein, "FLSA"), 29 U.S.C. § 1, et seq., and Articles 6 and 19 of the New York Labor Law, and their accompanying regulations, challenging the Defendant's alleged failure to pay premium overtime wages to him, and to those similarly situated to him, for hours worked in excess of forty hours per week. See Docket # 1, Plaintiff's Complaint (herein, "Comp.") at PP20-24. Presently before this Court is the Plaintiff's [*2]  motion to certify a conditional national

collective action pursuant to 29 U.S.C. § 216(b) in order to notify those employees who may be similarly situated to the Plaintiff that they may "opt-in" to this action challenging the Defendant's alleged failure to pay overtime wages. See Docket # 9, Notice of Plaintiff's Motion to Conditionally Certify an FLSA Collective Action. [1]  In addition, the Plaintiff also moves the Court to direct the Defendant to produce the names and addresses of potential "opt-in" class members to Plaintiff's counsel prior to the issuance of the proposed collective action notice. Id.

> 1   Although the Plaintiff's Complaint asserts parallel state law claims for the alleged failure to provide overtime compensation under the provisions of New York Labor Law, the Plaintiff has not moved this Court for the certification of a class of employees under FED. R. CIV. P. 23. See, e.g., Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 370 (S.D.N.Y. 2007) (analyzing employees' motion to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure for alleged violations of New York Labor Law). As such, only the factors for certifying an FLSA collective action, which differ from the Rule 23 factors the Court would when certifying a class action as to the New York Labor Law claims, will be considered. Id.

[*3]  The Defendant opposes the instant applications on the grounds that the Plaintiff has not submitted sufficient indicia that there exist similarly situated employees who would join a collective action if certified, that the Plaintiff has not established the sufficient basis for the certification of a national collective action under the FLSA, and that the Plaintiff does not qualify for the protections of the FLSA because the Plaintiff's former position of employment falls within the FLSA's executive exemption. See Docket # 14, Defendant's Brief in

Opposition (herein, "Def's Mem."). The Defendant also opposes the Plaintiff's request for the production of putative class members' names and addresses on the grounds that such production would be unduly burdensome. Id.

For the following reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's motion to certify a conditional collective action should be granted with the caveat that the conditional collective action class members should be limited to employees who, within three years of the date of the proposed notice being sent, held or currently hold Department Manager or Assistant Store [*4] Manager of Merchandising positions in either of the two store locations where the Plaintiff worked while employed by the Defendant. Additionally, I conclude, and respectfully recommend that Your Honor should conclude, that the Defendant should be directed to produce the names and addresses of any and all putative collective action members to Plaintiff's counsel.

## BACKGROUND

### A. Facts

The following facts are drawn from the Plaintiff's Complaint, his accompanying declaration in support of the certification of a conditional collective action, and the declarations submitted by the Defendant in opposition to such certification.

The Plaintiff served as an employee of Defendant LNT from January 2003 until October 2006. See Docket # 10, Plaintiff's Memorandum in Support of Motion to Conditionally Certify a Collective Action (herein, "Pl's Mem."), Exhibit 2, Declaration of Jose Anglada (herein, "Anglada Decl.") at P1. The Plaintiff worked as a Department Manager from September 2004 until March 2006, and as an Assistant Store Manager of Merchandising from March 2006 until October 2006. See Comp. at P 13. [2] Pursuant to a personnel restructuring plan effective April [*5] 2006, the Defendant changed the job title of the Plaintiff's employment position and created two new positions of employment into which most employees holding the position of Department Manager were transferred. See Roselli Decl. at PP3-4. As dictated by the Defendant's April 2006 personnel restructuring plan, each LNT store currently has two levels of managers: a General Manager, who is the highest ranking manager for a particular store, and an Assistant Store Manager of Merchandising, as well as an Assistant Store Manager of Operations, both of who report to the General Manager. See Roselli Decl. at P3. Below this level, the Defendant employs Group Selling Managers and Sales Associates who are paid on an hourly basis. See id.

[2] The Defendant, however, contends that the position "Department Manager" did not exist "during the time period relevant to the proposed class as defined by Plaintiff Jose Anglada," and that the position of employment the Plaintiff refers to during the pre-April 2006 time period was entitled Merchandising Manager rather than Department Manager. See Docket # 27, Declaration of Susan Roselli (herein, "Roselli Decl.") at P3. Any confusion in nomenclature is best minimized by including both position titles in the FLSA collective action notice.

[*6] The Plaintiff contends that he did not have the authority "to hire or fire other employees" and that his "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees" were not given weight by the Defendant in either of his employment positions with the Defendant. See Comp. at PP14-15. The Plaintiff maintains that he, along with four other employees who held similar managerial positions of employment with the Defendant, regularly worked more than forty hours per week and were not paid overtime compensation for these hours as required by the FLSA. See Comp. at PP16-17. The Plaintiff avers that he experienced this practice of non-payment of overtime compensation in his position as a Department Manager in two different stores owned and operated by the Defendant. See Anglada Decl. at PP6, 15, 18, 20. The Plaintiff first worked as a Department Manager in the Defendant's Kingston, New York, store from September 2004 until October 2005, and then worked as a Department Manager, and then as an Assistant Store Manager of Merchandising, in the Defendant's Poughkeepsie, New York, store from October 2005 until October [*7] 2006. See Anglada Decl. at PP2, 3, 5.

In contradistinction to the nature of the Plaintiff's position of employment outlined by the Plaintiff in his own declaration, the Defendant advances a different characterization of the Assistant Store Manager of Merchandising position in a series of declarations submitted by employees who work in various LNT stores across the country. See, e.g., Docket ## 18-26, Declarations of LNT Assistant Store Managers of Merchandising (herein, "Assistant Store Manager Declarations"). These Assistant Store Managers of Merchandising contend that their respective job responsibilities include managerial oversight of other employees, hiring new employees, taking over certain managerial responsibilities when other Assistant Managers are unavailable or not present, and offering suggestions as to whether lower level employees should be terminated from their positions of employment. Id. The Defendant also submits three declarations from District Managers who each oversee between eight and twelve LNT stores nationwide. See Docket ## 15-17,

Declarations of LNT District Managers (herein, "District Manager Declarations). In this series of declarations, [*8] the District Managers offer their respective opinions about the roles and functions of Assistant Store Managers of Merchandising and insist that Assistant Store Managers of Merchandising "have significant supervisory authority." See District Manager Declarations at P6.

B. Plaintiff's Proposed Certification of a Collective Action

The Plaintiff seeks this Court's order conditionally certifying an FLSA collective action on a nationwide basis pursuant to 29 U.S.C. § 216(b) for all employees similarly situated to the Plaintiff who did not receive overtime compensation for hours worked in excess of forty hours per week. See Docket # 9, Notice of Motion to Conditionally Certify an FLSA Collective Action. The Plaintiff proposes that the nationwide collective action should be opened to "Department Managers (or employees with the same or substantially similar job duties) and Assistant Store Managers [of] Merchandising (also known as Merchandising Managers) who did not have the authority to hire or fire other employees and whose suggestions or any other change of status of other employees were not given particular weight." See Pl's Mem., Exhibit [*9] 1, Proposed FLSA Collective Action Notice, (herein, "Pl's Proposed Collective Action Notice"). The Plaintiff asserts that this notice should be sent to Department Managers and Assistant Store Managers of Merchandising nationwide who worked for LNT within three years of date of the issuance of the proposed notice because of the willfulness of the Defendant's alleged violation of the FLSA's overtime provisions asserted in the Complaint. Id.

In opposition, the Defendant argues that the Plaintiff has failed to meet the lenient evidentiary standard that the Court uses to assess whether certifying an FLSA collective action under 29 U.S.C. § 216(b) is appropriate. In particular, the Defendant notes that the only declaration in support of certifying the collective action is that of the Plaintiff himself, and that the Plaintiff has not submitted the affidavits or declarations of other employees who have expressed an interest in opting in to the prospective collective action. See Def's Mem. at p. 11-12, 14-15. The Defendant also submits that because individual issues take precedence over more general issues applicable to the proposed class as a whole, certifying [*10] a collective action in this case is improper. See Def's Mem. at pp. 15-16. Specifically, the Defendant argues that the Plaintiff's proposed classification of the collective action itself implies that employees in this position of employment with the Defendant are not similarly situated to one another and that certifying a collective action would be inappropriate because of the absence of commonality among employees in this position of employment in the Defendant's stores. See Def's Mem. at p. 11 ("Anglada's very definition of the class requires an individualized assessment of the actual duties [of the putative class members] performed to determine eligibility."). Finally, the Defendant argues that the grounds for a nationwide certification of the collective action have not been established, and that the names and addresses of potential "opt-in" members should not be provided to Plaintiff's counsel. See Def's Mem. at pp. 17-19.

## DISCUSSION

A. Standards for Conditionally Certifying an FLSA Collective Action

Despite the absence of a textual directive within 29 U.S.C. § 216(b) empowering district courts with the authority to issue [*11] notice to a prospective class of member plaintiffs under the FLSA, "it is 'well settled' that district courts have the power to authorize an FLSA plaintiff to send such notice to other potential plaintiffs." Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 91, 95 (S.D.N.Y. 2003) (citations omitted). Courts in this Circuit follow a two-step process when considering whether an FLSA collective action should be certified conditionally. See Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 367 (S.D.N.Y. 2007). At the first step, known as the notice phase, courts utilize a lenient evidentiary standard in assessing whether the Plaintiff has presented sufficient evidence to demonstrate that a prospective class of member plaintiffs is similarly situated to the named Plaintiff. Id.; see also Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997). "[C]ourts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Sbarro, 982 F. Supp. at 261 (citing [*12] Jackson v. New York Telephone Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995)). A plaintiff can meet this standard by relying on his or her own pleadings, affidavit, or declaration, and the affidavits or declarations of other prospective class members. See, e.g., Iglesias-Mendoza, 239 F.R.D. at 368 (looking to the declarations of the named plaintiffs); Gjurovich, 282 F. Supp. 2d at 96 (relying on specific information presented by the plaintiff, including the names and number of potential class members). The Court need not consider the merit of the potential FLSA claim in assessing whether a collective action should be certified. Sbarro, 982 F. Supp. at 262. [3]

> 3  The second step involved in the FLSA collective action certification process occurs after notice has been sent to the prospective class members and after discovery has been conducted. At

the second stage, the Court entertains, upon proper application, a decertification motion by a defendant challenging the propriety of the presence of one or more of the opt-in plaintiffs in the class. See Iglesias-Mendoza, 239 F.R.D. at 367.

[*13]  **B. Plaintiff's Proposed FLSA Collective Action Class Members**

Plaintiff moves this Court for an order certifying a conditional nationwide collective action for similarly situated employees who served as "Department Managers (or employees with the same or substantially similar job duties) and Assistant Store Managers [of] Merchandising (also known as Merchandising Managers) who did not have the authority to hire or fire other employees and whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were not given particular weight." See Pl's Proposed Collective Action Notice. The definition of the proposed collective action illustrates the Plaintiff's attempt to distinguish between employees who fall within the FLSA's executive employee exemption, and thus do not qualify for protection under the FLSA, and employees who fall outside of the executive employee exemption, and thus potentially qualify for FLSA protection.

A reading of the Plaintiff's Complaint and accompanying declaration in support of conditionally certifying a collective action leads me to conclude, and respectfully recommend that [*14]  Your Honor should conclude, that the Plaintiff has met the lenient evidentiary standard for distributing notice to those employees who are situated similarly to the Plaintiff and who worked in either of the two LNT stores in which the Plaintiff worked during his time of employment with the Defendant. I do conclude, however, that the Plaintiff has not presented sufficient evidence to support sending such notice to a prospective nationwide class of member plaintiffs.

In his Complaint and accompanying declaration, the Plaintiff avers that he, along with four other employees in similar managerial positions, were not compensated for time worked in excess of over forty hours per week. See Comp. at PP17-18; Anglada Decl. at PP6, 15, 18, 20. The Plaintiff declares that he has personal knowledge that he and "other Department and Assistant Store Managers work[ed] [similar] hours," and that neither he nor these similarly situated employees in either the Kingston, New York, or Poughkeepsie, New York, LNT stores were paid overtime compensation for hours worked in excess of forty hours per week. See Anglada Decl. at PP18, 20. These personal declarations referencing similarly situated [*15]  employees, a common plan or policy of not paying overtime to this classification of employees, and the specific number of potential employees who

may wish to join this suit from either the Kingston, New York, or Poughkeepsie, New York, LNT stores, satisfy the minimal standards for conditionally certifying an FLSA collective action at this preliminary stage of the proceedings. See Iglesias-Mendoza, 239 F.R.D. at 368 (plaintiffs' reliance on personal statements as to common plan and policy sufficient to certify conditionally collective action); Gjurovich, 282 F. Supp. 2d at 96 (plaintiff's declaration enumerating common policy and the number of prospective class members sufficient to certify conditional class); Sbarro, 982 F. Supp. at 261 (plaintiffs' complaint and supporting affidavits as to common policy affecting class of potential class members "amply satisfied" initial burden).

A reading of the Plaintiff's Complaint and the Plaintiff's declaration, however, leads me to conclude, and respectfully recommend that Your Honor should conclude, that there exists a "total dearth of factual support" for the Plaintiff's urging that a nationwide [*16]  collective action should be certified conditionally in this case. The Plaintiff offers no supporting declarations or affidavits from other similarly situated employees who are located at any other LNT store, and avers no personal knowledge of the policies or practices of any LNT store other than the two stores in which he worked. See generally Anglada Decl. The only support offered in support of this broad certification is Plaintiff's counsel's declaration that contains printouts of job descriptions and postings for various LNT stores located across the country. See Docket # 11, Declaration of Michael J.D. Sweeney. These job descriptions and postings, however, do not evince whether prospective employees are in fact similarly situated to the Plaintiff or whether such similarly situated employees would opt-in to this FLSA lawsuit. Job vacancy postings suggest that there is an absence, rather than a presence, of employees who may be interested in opting into this action as they are, by definition, postings of unfilled positions of employment with the Defendant.

In Opposition to certification of a nationwide collective action, the Defendant submits counter declarations from three [*17]  District Managers who each attest to the individuality of the management and operation practices of LNT stores nationwide. See District Manager Declarations at P5 (each acknowledging that Assistant Store Managers in their respective stores perform a diversity of managerial and supervisory functions based upon a particular store's volume of sales). The Defendant also offers nine declarations of Assistant Store Managers of Merchandising from a selection of LNT stores nationwide that collectively evince a disparity in the apportionment of job responsibilities among these particular Assistant Store Managers of Merchandising. [4] See generally Assistant Store Managers Declarations (comparing

and contrasting job responsibilities). Last, the Defendant iterates that it "is a foremost retailer of home decor and home accessories, operating stores in 47 of the 50 states," and not only implies that it is a large employer with a large number of stores nationwide, but also implies that the Plaintiff's extrapolation as to the nationwide condition of all LNT stores based only upon his personal experience in two LNT stores in New York, without supporting proof, is insufficient to certify a nationwide [*18] collective action. See Def's Mem. at p. 2.

> 4  Although ten Assistant Store Manager of Merchandising declarations were submitted to Chambers in the form of courtesy copies, only nine of the ten declarations were filed with the Clerk's Office and were docketed in this case. See Docket ## 18-26. The tenth declaration, that of Assistant Store Manager of Merchandising Donald Crawford, does not appear in the official record of this case.

Because the Plaintiff's inductive reasoning as to the nationwide condition of Assistant Store Managers of Merchandising in all LNT stores nationwide is not supported by the Plaintiff's personal knowledge or by the affirmation of one or more putatively similar employees, and because the job vacancy postings submitted by the Plaintiff do not evince the existence of similarly situated employees who would likely "opt-in" to the instant FLSA overtime compensation action, I conclude, and respectfully recommend that Your Honor should conclude, that the standard for certifying a nationwide [*19] collective action has not been met in this case. See Sbarro, 982 F. Supp. at 262 (noting that unsupported assertions by counsel cannot establish FLSA collective action certification) (citing, *inter alia,* Haynes v. Singer Co., Inc., 696 F.2d 884 (11th Cir. 1983)).

C. Application of the FLSA's Executive Employee Exemption

In further Opposition to the Plaintiff's motion for conditional certification of an FLSA collective action, the Defendant also argues that the Plaintiff himself is exempt from the overtime compensation provisions of the FLSA, and that by extension, he should not be able to move for the certification of the instant collective action. See Def's Mem. at pp.11-12. In support of these contentions, the Defendant submits the declaration of Susan Roselli, Executive Director of Human Resources and Operations for the Defendant, which contains copies of documents bearing the Plaintiff's signature that the Defendant argues supports its position that the Plaintiff falls within the executive employee exemption of the FLSA and its accompanying regulations. See 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.100(a)(1) [*20] -(4).

These arguments, rather than addressing the propriety of the proposed class of similarly situated employees, question the underlying merits of the instant action. "Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff: '[T]he Court need not evaluate the merits of [a plaintiff's] claims in order to determine that a definable group of "similarly situated" plaintiffs' exists." Gjurovich, 282 F. Supp. 2d at 96 (quoting Sbarro, 982 F. Supp. at 262). Such merits-based arguments are best considered by the Court after discovery has been conducted upon a motion for decertification or for summary judgment. I conclude, and respectfully recommend that Your Honor should conclude, that this is an improper ground on which to base a denial of a motion to certify conditionally an FLSA collective action at this time.

D. Plaintiff's Motion for Production of Contact Information of Similarly Situated Employees, Temporal Scope of Prospective Class, and Proposed Notice

The Plaintiff has made an accompanying motion to compel the [*21] Defendant to produce the names and addressed of individuals who held, or who currently hold, a Department Manager or Assistant Store Manager of Merchandising position with the Defendant within three years of the issuance of the proposed notice of a collective action to Plaintiff's counsel in electronic format. See Pl's Mem. at 10. In support of this application, the Plaintiff notes that its allegation that the Defendant willfully violated the FLSA's overtime compensation provisions opens the temporality of the prospective class of member plaintiffs to three years from the date of the issuance of the proposed notice. See Pl's Mem. at p. 9 (citing 29 U.S.C. § 255(a)). The Defendant opposes the production of such information on the grounds that it is unduly burdensome because of the way in which the Plaintiff has formulated the class be certified and in light of the breadth of the proposed class of member plaintiffs nationwide. See Def's Mem. at p. 19.

In light of the undersigned's recommendation that a collective action should be certified on a conditional basis only as to the employees in the Defendant's Kingston, New York, and Poughkeepsie, New York, [*22] stores who held or currently hold either of the positions of employment that the Plaintiff held while employed with the Defendant -- which is a much narrower class of prospective member plaintiffs than originally proposed by the Plaintiff -- I conclude, and respectfully recommend that Your Honor should conclude, that the Defendant's objection to the production of the names and addresses of these particular employees in electronic format to Plaintiff's counsel is without merit. Courts within this Circuit routinely grant plaintiffs' motions to compel production of the names and addresses of potentially similarly situ-

ated employees who may wish to "opt-in" to a collective action. See, e.g., Iglesias-Mendoza, 239 F.R.D. at 369-70; Gjurovich, 282 F. Supp. 2d at 100 (citing Hoffmann-La Roche, Inc., v. Sperling, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989); Realite v. Ark Rest. Corp., 7 F. Supp. 2d 303, 309-10 (S.D.N.Y. 1998); Masson v. Ecolab, Inc., 04 Civ. 4488 (MBM), 2005 U.S. Dist. LEXIS 18022, 2005 WL 2000133, at *16 (S.D.N.Y. Aug. 17, 2005).

The Defendant's assertion that the production of such information necessarily incorporates a case-by-case [*23] review on the part of the Defendant to ensure that only the names of the appropriate employees are produced to the Plaintiff is misplaced. The second phase of the collective action process -- that of potential decertification of one or more class members -- is the portion of the process that allows the Defendant to argue why certain collective action class members should be excluded from the class based upon information produced during the course of discovery. See Gjurovich, 282 F. Supp. 2d at 96 (emphasizing that the first phase of the certification process is not a merits-based decision, and that parties who opt-in but do not meet the proposed class criteria can be excluded during the decertification process). The Defendant need not, and should not, undertake this evaluation on its own initiative. Id. Additionally, where there has been no substantive discovery as to the appropriate temporal scope of the prospective class of member plaintiffs, and where the Plaintiff has alleged a willful violation of the FLSA, it is prudent to certify a broader class of plaintiffs that can be limited subsequently, if appropriate, during the second phase of the collective action [*24] certification process. See Gjurovich, 282 F. Supp. 2d at 96; Masson, 2005 U.S. Dist. LEXIS 18022, [WL] at *15 (noting that the class of member plaintiffs can be limited subsequently to only those employees who meet the two year statute of limitations if there has been no evidence propounded by a plaintiff supporting his or her averment of a defendant's willful FLSA violation).

Finally, the Defendant challenges the substance of the Plaintiff's proposed FLSA collective action notice on several grounds, including a failure to explain that prospective "opt-in" members can elect to participate in the suit without hiring Plaintiff's counsel, the usage of conclusory language as to the allegations in the case, and a failure to enumerate all of the accompanying burdens that a prospective plaintiff may have to endure should they opt-in to this suit, including participation in discovery and appearance for trial in this District. See Def's Mem. at pp. 18-19. The Defendant has offered its own proposed notice of a conditionally certified FLSA collective action. See Docket # 31, Defendant's Notice of FLSA Collective Action Proposed Alternative.

The concerns that the Defendant [*25] raises in Opposition to the Plaintiff's proposed notice appear, in part, to be overstated. In particular, and contrary to the Defendant's assertion, the Plaintiff's proposed notice includes language under the "Effect of Joining This Lawsuit" heading that informs prospective class members of their right to retain their own counsel, and the proposed notice also includes language at the end of the notice section that appears in capital letters and in bold informing prospective class members that the Court takes no position on the merits of the Plaintiff's claims or the Defendant's defenses. See Pl's Proposed Collective Action Notice at pp.3, 4. Additionally, in light of the undersigned's recommendation that the proposed class should be limited to employees who worked or currently work in either the Kingston, New York, or Poughkeepsie, New York, LNT stores within three years of the date of the issuance of the notice, the Defendant's concerns about informing prospective plaintiffs about the burden of traveling to, or to appearing for trial in, this Court is moot.

The undersigned has reviewed both of the proposed FLSA collective action notices and agrees in large part that the Plaintiff's [*26] proposed collective action notice is sufficient, save for some minor changes. [5] Attached to this Report and Recommendation as Exhibit A is a copy of the Plaintiff's proposed FLSA collective action notice with the undersigned's recommended changes for Your Honor's consideration. The undersigned's recommended changes to the Plaintiff's proposed FLSA collective action notice appear in bolded and italicized text.

5    I note that there appears to be some subtle disagreement as to the proper statute of limitations in this case. In the Defendant's proposed notice, the Defendant identifies January 19, 2007, as the date on which the Plaintiff commenced suit in this Court and sets this date as the starting date for a two year class of prospective member plaintiffs. See Docket # 31. The Plaintiff, however, filed his Complaint on November 2, 2006, and has argued for the use of a three year time period effective as of the date of the issuance of this collective action notice.

Pursuant to 29 U.S.C. § 256, an action as to an individual plaintiff who is a member of a collective action pursuant to the FLSA "shall be considered to be commenced . . . (a) on the date when the complaint is filed, if he [or she] is specifically named as a party plaintiff . . . or (b) . . . on the subsequent date on which such written consent [on behalf of the individual] is filed in the court . . . ." The Defendant's usage of the errant January 17, 2007, filing date does not apply

to the "opt-in" plaintiffs, and the Plaintiff's usage of the three year date from the issuance of the notice is more in keeping with § 256(b). Accord Gjurovich, 282 F. Supp. 2d at 98 (relying on date on which collective action notice was issued). Specific challenges to the timeliness of the claims of certain "opt-in" plaintiffs or the named Plaintiff can be addressed subsequent to the completion of discovery during the second phase of the collective action certification process. See Masson, 2005 U.S. Dist. LEXIS 18022, [WL] at *15.

[*27] **CONCLUSION**

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's motion to certify conditionally an FLSA collective action should be granted, but that the notice of the proposed collective action should only be sent to employees who held or who currently hold the position of Department Manager or Assistant Store Manager of Merchandising in the Defendant's Kingston, New York, or Poughkeepsie, New York, stores within three years of the date of the issuance of this proposed FLSA collective action notice. Additionally, I conclude, and respectfully recommend that Your Honor should conclude, that the Defendant should be directed to produce the names and addresses of the employees who held or who currently hold either of these positions of employment in the Kingston, New York, or Poughkeepsie, New York, stores to Plaintiff's counsel in electronic format.

**NOTICE**

Pursuant to 28 U.S.C. 636(b)(1), as amended, and FED. R. CIV. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(e) [*28] , or a total of thirteen (13) working days, see FED. R. CIV. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Colleen McMahon at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge McMahon.

Dated: April 26, 2007

White Plains, New York

Respectfully Submitted,

Lisa Margaret Smith

Chief United States Magistrate Judge

Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Colleen McMahon, U.S.D.J.

Enclosure: Exhibit A, Proposed FLSA Collective Action Notice with Changes

***Exhibit A***

**THIS NOTICE HAS BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN [*29] DISTRICT OF NEW YORK**

**THIS IS NOT AN ATTORNEY SOLICITATION**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**JOSE ANGLADA, individually and on behalf of others similarly situated, Plaintiffs, - against - LINENS 'N THINGS, INC., Defendant.**

**06 Civ. 12901 (CM) (LMS)**

**FROM: Michael J.D. Sweeney, Esq.**

**TO: Department Managers (or employees with the same or substantially similar job duties) and Assistant Store Managers for Merchandising (also known as Merchandise Managers) who did not have the authority to hire or fire other employees and whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were not given particular weight *who currently work, or who worked, at the Kingston, New York, or Poughkeepsie, New York, Linens 'N Things stores within three years of the date of this notice.***

**NOTICE OF LAWSUIT WITH OPPORTUNITY TO JOIN**

The purpose of this legal notice is to inform you that a lawsuit has been filed against LINENS 'N THINGS for unpaid overtime wages, and that you may be eligible to join the lawsuit. You may be able to [*30] join the lawsuit because you are potentially similarly situated to the Plaintiff who initially brought the lawsuit.

This notice advises you on how your rights may be affected by this lawsuit and how you may participate in

this lawsuit if you decide that you want to participate in it.

### 1. DESCRIPTION OF THE LAWSUIT

Plaintiff Jose Anglada filed this lawsuit against LINENS 'N THINGS on November 2, 2006. He alleges that LINENS 'N THINGS violated the Federal Fair Labor Standards Act by not paying eligible employees overtime compensation at the rate of time and one-half for all hours worked in excess of 40 hours in a work week. The lawsuit is seeking back pay and liquidated damages (a payment equal to the amount of unpaid wages that may be awarded under certain circumstances under the Federal Fair Labor Standards Act for workers not paid overtime correctly) for eligible employees, as well as costs and attorney's fees. *Defendant LNT denies the Plaintiff's allegations, and denies that it is liable to the Plaintiff for any of the back pay, damages, costs or attorney's fees sought.*

### 2. WHO MAY JOIN THE LAWSUIT

The named plaintiff seeks to sue on behalf of himself [*31] and also on behalf of other employees with whom he is similarly situated. Specifically, the plaintiff seeks to sue on behalf of all current and former Department Managers (or employees with the same or substantially similar job duties) and Assistant Store Managers for Merchandising (also known as Merchandise Managers) who did not have the authority to hire or fire other employees and whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were not given particular weight *who currently work, or who worked, at the Kingston, New York, or Poughkeepsie, New York, Linens and Things stores within three years of the date of this notice.*

### 3. ACTION TO TAKE IF YOU WANT TO PARTICIPATE IN THIS LAWSUIT

If you fit within the definition of the class members described above, you may join this case (that is, you may "opt-in") *either by retaining a lawyer of your own choosing as further described below,* or by completing and mailing the attached "Consent to Sue" form to the plaintiffs' counsel at the following address:

Getman Law Office

9 Paradies Lane

New Paltz, NY 12561

*The form must* [*32] *be sent to plaintiff's counsel in sufficient time to have plaintiff's counsel file it the federal court on or before [insert date that is 60 days from date of notice mailing.] If you fail to return the "Consent to Sue" form to the plaintiff's counsel in*

*time for it to be filed with the federal court on or before the above deadline, you may not be able to participate as a plaintiff in this lawsuit.*

### 4. EFFECT OF JOINING THIS LAWSUIT

If you choose to join in this lawsuit, you will be bound by the Judgment for this lawsuit, whether it is favorable or unfavorable.

The attorneys for the plaintiffs are being paid on a contingency fee basis, which means that if there is no recovery there will be no attorney's fee. If there is a recovery, the attorney for the class will receive a part of any settlement obtained or money judgment entered in favor of all members of the class.

If you sign and return the Consent to Sue form attached to this Notice, you are agreeing to enter an agreement with plaintiffs' counsel concerning attorney's fees and costs, and all other matters pertaining to this lawsuit.

The Court will retain jurisdiction to determine the reasonableness of any contingency [*33] attorney's fee agreement entered into by the plaintiffs with counsel, and to determine the adequacy of the plaintiffs' counsel.

You may also join this lawsuit by retaining another lawyer of your own choosing. If you do so, your attorney must file an "opt-in" consent form *with the Court on or before [insert date that is 60 days from date of notice mailing].* The address of the Court is: U.S. District Court for the Southern District of New York, U.S. District Court, 300 Quarropas St., White Plains, NY 10601. The Clerk cannot give legal advice about this case.

### 5. ACTION TO TAKE TO STAY OUT OF THE LAWSUIT

If you do not wish to be part of the lawsuit, you do not need to do anything. If you do not join the lawsuit, you will not be part of the lawsuit in any way and will not be bound by or affected by the result of the lawsuit (whether favorable or unfavorable). Your decision not to join this lawsuit will not affect your right to bring a similar lawsuit on your own at a future time. However, claims under the Fair Labor Standards Act must be brought within 2 years of the date the claim accrues, unless the employer's violation of the law was "willful," in which case [*34] the claim must be brought within 3 years.

### 6. NO RETALIATION PERMITTED

Federal law prohibits the defendant from discharging *you from your position of employment* or in any other manner discriminating against you because you "opt-in" to this case, or *because you* in any other way exercise your rights under the Fair Labor Standards Act.

## 7. YOUR LEGAL REPRESENTATION IF YOU JOIN

***You may choose to join this lawsuit and be represented by an attorney of your own choosing. However,*** if you choose to join this lawsuit, and ***if you also*** agree to be represented by plaintiffs' attorneys, your counsel in this action will be:

Michael J.D. Sweeney, Esq.

Getman Law Office

9 Paradies Lane

New Paltz, NY 12561

(845) 255-9370 (voice) -- (845) 255-8649 (fax)

Website: http://getmanlaw.com

## 8. FURTHER INFORMATION

If you have questions or would like more information about this notice or lawsuit, or if you want to know more about the deadline for filing a Consent to Sue, please contact plaintiffs' attorney at the telephone number and address stated in Paragraph 7 above.

***Dated:  , 2007***

**THIS NOTICE AND  [\*35]  ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK. THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF THE PLAINTIFFS' CLAIMS OR OF THE DEFENDANT'S DEFENSES.**

## CONSENT TO SUE

I hereby consent to be a plaintiff in the Fair Labor Standards Act case named *Jose Anglada v. Linens 'N Things, Inc., 06-cv-12901* (Judge Colleen McMahon). I hereby consent to the bringing of any claims I may have under the Fair Labor Standards Act (for unpaid overtime, liquidated damages, attorney's fees, costs and other relief) against the defendant. I authorize the Getman Law Office, its successors and assigns, to represent me in this case. ***I understand that I may choose, instead, to retain an attorney of my own choosing to represent me, but***

***that if I do so, my attorney must file an "opt-in" consent form with the Court.***

By signing and returning this consent to sue, I certify that I worked for the Defendant as a Department Manager (or a title with the same or substantially similar job duties) and/or an Assistant Store Manager for Merchandising (also known as Merchandise Manager) and in that capacity I did [\*36] not have the authority to hire or fire other employees and my suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were not given particular weight, ***and that I currently work, or I worked, at the Kingston, New York, or Poughkeepsie, New York, Linens 'N Things stores within three years of the date of the issuance of this notice.***

By signing and returning this consent to sue, I authorize Getman Law Office, their successors and assigns, to represent me in this case. By signing and returning this consent to sue, I understand that, if accepted for representation, I will be represented by the Getman Law Office without prepayment of costs or attorneys' fees. I understand that if plaintiff is successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment. I understand that the attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendant or 1/3 of my gross settlement or judgment amount, whichever is greater.

Dated: [\*37]

Signature:

Name:

Address:

e-mail:

Phone:

**Mail this form to: Getman Law Office, 9 Paradies Lane, New Paltz, NY 12561 no later than [60 days from date of notice].**

LEXSEE 1991 U.S. DIST. LEXIS 1

**BERNARD COHEN, Plaintiff, v. APACHE CORPORATION, KEY PRODUCTION COMPANY, INC., RAYMOND PLANK, JOHN A. KOCUR, GARY T. ALKIRE, FREDERICK M. BOHEN, VIRGIL B. DAY, W. BROOKS FIELDS, WILLIAM F. FOSS, RANDOLPH M. FERLIC, ROBERT V. GISSELBECK, STANLEY K. HATHAWAY, CURTIS W. MEWBOURNE, WAYNE W. MURDY, MARK A. JACKSON, FRANCIS H. MERELLI, SMITH BARNEY, HARRIS UPHAM & CO., PAINE WEBBER, INCORPORATED, DEAN WINNTER REYNOLDS, INC., and PIPER, JAFFRAY & HOPWOOD, Defendants**

**No. 89 Civ. 0076(PNL)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**1991 U.S. Dist. LEXIS 1**

**January 2, 1991, Filed**

**JUDGES:** [*1] Pierre N. Leval, United States District Judge.

**OPINION BY:** LEVAL

**OPINION**

*MEMORANDUM AND ORDER*

Plaintiffs in this class action move for an order limiting defendants' communications with class members, directing a curative notice, and for sanctions for unauthorized communications.

*Background*

This action alleges federal and state law causes of action in connection with the offer of exchange of shares of Apache Corporation common stock for units of Apache Petroleum Company Master Limited Partnership. The present motion is based on statements by Raymond Planck, the Chairman and Chief Executive Officer of Apache, in a letter to shareholder printed in the Second Quarter 1990 Report of Apache Corporation. In the letter, dated July 24, 1990, Planck stated:

On a different matter, we noted in last year's annual report that an action had been filed against Apache and others concerning our restructuring of the former master limited partnership, Apache Petroleum Company (APC). While we don't intend to discuss our defense here, you should be aware that we believe the suit is entirely without merit. Formal notice of the class action will be

mailed to former unitholders shortly but a few facts are worth noting. [*2] In the first half of 1988, APC unitholders were notified of the possibility of a restructuring, including a possible exchange of Apache Securities for APC units. In July 1988, one Bernard Cohen purchased 100 APC units for a total of $ 275. In September 1988, Mr. Cohen exchanged his units for 40 shares of Apache common stock. At this writing, these 40 shares have a market value double that of the purchase price two years ago. The suit was filed in January 1989 by Mr. Cohen's nephew who acts as his lawyer.

Management takes pride in an exchange offer designed to be fair to both APC unitholders and Apache shareholders. We find no legitimate basis for yielding to the pressure of litigation of this sort to pay out substantial sums to settle groundless claims. We intend to defend our position vigorously.

Plaintiffs claim that this description of the litigation was false and misleading. In specific, plaintiffs cite ten material omissions:

These statements were false and misleading in that Mr. Plank failed to disclose (a) that he is a defendant in the action; (b) that the action alleges violation of the federal securities laws; (c) that this court certified a class; (d) that there are thousands [*3] of class members other than Mr. Cohen; (e) that the court found Sirota & Sirota to be competent and experienced counsel and Mr. Cohen to be an adequate representative despite his relationship with class counsel; (f) that defendants moved to dismiss the action and for summary judgment and the motion was denied by this court (g) that defendants' made a sub-

stantial offer of settlement which offer was rejected by plaintiff; (h) that plaintiffs' damages are in the tens of millions of dollars; (i) that the court rejected defendants' challenge to the timing and amount of Mr. Cohen's purchase; and (j) that the subsequent price of the stock is irrelevant as a matter of law because the appropriate measure of damages is the difference between what the class received and what it should have received.

Plaintiffs' Amended Memorandum of Law at 3-4. Plaintiffs claim that defendants published these statements with the purpose of encouraging class members to opt out of the class action and that this improper solicitation warrants a curative notice, a ban on further communications, and sanctions. [1]

> 1    Notice has not been sent to class members, since plaintiffs have wanted to delay notice, pending a decision on this motion.

[*4] *Analysis*

The district court has broad authority to supervise a class action and to issue orders governing the conduct of parties and counsel. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99-100, 101 S. Ct. 2193, 2200 (1981); *see* Fed. R. Civ. P. 23(d). However, an order limiting communication between parties and class members may issue only on the basis of a clear record and specific findings that establish the need for such an order. *See Gulf Oil,* 452 U.S. at 101-102, 101 S. Ct. at 2200-01. In drafting such an order, the court must be attentive to whether "the restraint is justified by the likelihood of serious abuses." *Id.* at 104, 101 S. Ct. at 2202; *see Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 601-02 (2d Cir. 1986); *Tedesco v. Mishkin,* 629 F. Supp. 1474, 1484 (S.D.N.Y. 1986).

Plaintiffs cite various cases in which courts have limited communications between parties and class members based on improper communications. *E.g., Rossini,* 798 F.2d at 601-02; *Erhardt v. Prudential Group, Inc.,* 629 F.2d 843 (2d Cir. 1980); *Kleiner v. First Nat'l Bank,* 751 F.2d 1193 (11th Cir. 1985); *Tedesco v. Mishkin,* 629 F. Supp. 1474, 1484 (S.D.N.Y. 1986); [*5] *Impervious Paint Indus., Inc. v. Ashland Oil,* 508 F. Supp. 720 (W.D. Ky.), *appeal dismissed,* 659 F.2d 1081 (6th Cir. 1981); *Haffer v. Temple University of the Commonwealth Sys. of Higher Educ.,* 115 F.R.D. 506 (E.D. Pa. 1987). In some instances, improper communications have led courts to order sanctions and curative notices. *See, e.g., Kleiner,* 751 F.2d 1193 (defendant organized telephone solicitation to encourage class members to opt out); *Tedesco,* 629 F. Supp. 1474 (defendant sent misleading letter, in someone else's name, to class members); *Haffer,* 115 F.R.D. 506 (at direction of defense counsel, representative of defendant distributed memo to members of class discouraging them from communicating with class counsel).

In this case, however, I find that Planck's statements in the quarterly report do not provide a sufficient foundation for an order limiting communication with class members, or for a curative notice or sanctions. This finding is based on all the circumstances surrounding the Planck statements.

First, the statements were addressed to shareholders. Although plaintiffs point out that an estimated one half of the shareholders are class members, plaintiffs [*6] do not contest that a corporation may comment on pending litigation in its reports to shareholders. Moreover, while the omissions cited by plaintiffs might arguably render the statements misleading, the statements did not contain factual inaccuracies likely to confuse class members. Nor did the statements specifically mention opting out. I conclude that Planck's statements were not improper communications likely to impair the proper functioning of the class action process.

*Conclusion*

Plaintiffs' motion to limit defendants' communications with class members, for a curative notice and sanctions is denied.

SO ORDERED:

LEXSEE 2005 U.S. DIST. LEXIS 30382

**MILTON DIAZ, TIM OSTRANDER, ANTHONY CAPIZZI, ANDREW SECOR and JEFFREY HOCHMUTH, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, -vs- ELECTRONICS BOUTIQUE OF AMERICA, INC. and ELECTRONIC BOUTIQUE HOLDING CORP., Defendants.**

**04-CV-0840E(Sr)**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK**

**2005 U.S. Dist. LEXIS 30382**

**October 13, 2005, Decided
October 17, 2005, Filed**

**COUNSEL:** [*1] For TIM OSTRANDER, Anthony Capizzi, Milton Diaz, Individually and on Behalf of All Others Similarly Situated, Plaintiffs: Brett Cebulash, Esq., Garwin, Gerstein & Fisher, LLP, New York, NY; Judith Ann Biltekoff, Brown & Kelly, LLP, Buffalo, NY.

For Andrew Secor, Jeffrey Hochmuth, Plaintiffs: Judith Ann Biltekoff, Brown & Kelly, LLP, Buffalo, NY.

For Electronics Boutique of America, Inc., Electronics Boutique Holding Corp., Defendants: Jill E. Jachera, Morgan, Lewis & Bockius LLP, Princeton, NJ; John G. Horn, Robert C. Weissflach, Harter, Secrest and Emery LLP, Buffalo, NY; Samuel S. Shaulson, Morgan, Lewis & Bockius LLP, New York, NY.

**JUDGES:** JOHN T. ELFVIN, S.U.S.D.J.

**OPINION BY:** JOHN T. ELFVIN

**OPINION**

MEMORANDUM and ORDER [1]

1  This decision may be cited in whole or in any part.

Plaintiff Milton Diaz commenced this action on October 13, 2004 against his former employer, defendants Electronics Boutique of America, Inc. and Electronics Boutique Holding Corp. (collectively "EB"). On November 24, 2004 plaintiff Tim [*2] Ostrander filed a consent to become a party plaintiff and proposed to be a named representative for a subclass of EB Store Managers ("SMs") and Diaz filed a consent to become a party

plaintiff and proposed to be a named representative for a subclass of EB Assistant Store Managers ("AMSs"). [2] Plaintiffs allege that EB routinely and intentionally failed to pay its store employees minimum wages and overtime pay in violation of (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* ("Federal Claims") and (2) Article 19 of New York Labor Law ("NYLL") and its implementing regulation, Section 142-2.2 of the New York Compilation of Codes, Rules and Regulations ("NYCCRR"), Title 12 ("State Claims"). On December 22, 2004 plaintiffs moved for conditional certification and facilitation of notice of their Federal Claims "on behalf of all current and former [EB] employees who did not receive overtime pay at the rate of time and one half for any hours worked in excess of 40 per week and/or who were otherwise not compensated for work performed." (Pls.' Mem. Supp. Mot. Conditional Certification at 1-2.) On March 17, 2005 plaintiffs, pursuant to Rule 23(a) [*3] and (b)(3) of the Federal Rules of Civil Procedure ("FRCvP"), moved for class certification of their State Claims on behalf of "all current and former [EB] [SMs] and [ASMs] who worked in any of [EB's] New York State stores from October 13, 1998 to the present." (Pls.' Mem. Supp. Mot. Class Certification at 1.) On March 11, 2005 EB moved to dismiss plaintiffs' State Claims. All three motions are pending before the Court and, for the reasons set forth below, all three motions will be denied. [3]

2  On April 18, 2005 Anthony Capizzi filed a consent to become a party plaintiff and proposed to represent others similarly situated and Jeffrey Hochmuth and Andrew Secor did so September 30, 2005. This Order does not address these parties because they were not included in plaintiffs'

papers and, even if they were included, such would not alter the reasoning or the holding.

3   Plaintiffs in their motions also request an order from the Court (1) authorizing notification to all potential class members, (2) directing EB to provide plaintiffs with the names and residences of all potential class members, (3) requiring EB to publicize the action and (4) prohibiting EB from threatening, harassing or retaliating against those seeking to join the action. Because the Court will deny certification of plaintiffs' Federal and State Claims, notice to and information about potential class members will not be necessary. The Court, furthermore, need not prohibit EB from threatening, harassing or retaliating because the law already prohibits such conduct.

[*4]  The facts, for the purpose of the pending motions, are found as follows and are undisputed except where otherwise noted. EB is a retail chain that specializes in the sale of video game hardware and software and personal computer entertainment software and accessories. EB has more than 1,460 stores nationwide, 98 of which are located in New York State. EB stores are located in rural, urban and suburban areas, range from 422 to 5,000 square feet and earn between $ 514,999 and $ 3.5 million in annual sales. EB stores are divided into 112 districts, each consisting of 15 to 18 stores and each with a District Manager who supervises the SMs in the district. Each EB store has an SM -- like Ostrander -- who receives a flat annual salary, is exempt from overtime pay, is responsible for the daily operations of the store and ensures that each employee reviews his or her timesheet and is paid for all hours worked. Each SM supervises anywhere from three to twelve employees and may manage his or her own store while also supervising SMs in other stores. EB also employs over 1,375 ASMs -- like Diaz -- and nearly 4,700 Sales Associates ("SAs") -- 90 percent of whom work part-time. ASMs and SAs are [*5]  paid at an hourly rate and thus are nonexempt from receiving overtime pay.

Both plaintiffs are former employees of the Blasdell, N.Y. EB store where Ostrander was Diaz's manager. Plaintiffs first claim that Ostrander and other SMs were misclassified as exempt and thus wrongly denied overtime compensation because (1) they have "little, if any, significant discretion" in operating the store, (2) their "primary function" is not managing the store and (3) they spend nearly 80 percent of their time selling merchandise. (Pls.' Mem. Supp. Mot. Class Certification at 9.) Plaintiffs contend that, although Ostrander was paid a salary based on working 40 hours per week, he typically worked between 60 and 70 hours per week without receiving additional compensation. Plaintiffs further allege

that SMs share similar experiences due to the significant control EB exercises over all aspects of the operations of stores.

Additionally, plaintiffs contend that Diaz, although classified as a nonexempt ASM, was not compensated for the overtime hours he had worked, which averaged ten to twelve per week. Plaintiffs allege that it was EB's practice to understaff the Blasdell store by allocating insufficient [*6]  payroll hours, which required Ostrander and Diaz to work uncovered shifts and resulted in their working more than 40 hours a week without receiving adequate overtime compensation. Ostrander allegedly attempted to compensate Diaz by allowing him to take time off in exchange for overtime hours worked, but such was often impossible due to understaffing of the store. Moreover, plaintiffs claim that Diaz's hours were manually adjusted to comply with EB's policy restricting overtime pay. According to plaintiffs, EB was aware of these allegedly illegal wage practices due to its advanced information technology system with centralized control and monitoring of payroll and hours worked. Thus, plaintiffs claim that EB's refusal to pay overtime for hours worked in excess of 40 hours per workweek was willful and EB persuaded its employees -- allegedly through intimidation and empty promises of advancement -- to work without adequate compensation, all in violation of federal and state wage laws.

Plaintiffs first move for class certification of their Federal Claims under FLSA § 216(b), alleging that they were deprived of minimum wages and overtime pay in violation of the FLSA. In particular, plaintiffs [*7]  claim that EB engaged in a common scheme violating the FLSA by (1) misclassifying SMs as exempt from federally mandated wage laws, (2) requiring its employees to work hours in excess of 40 per workweek without compensation, (3) insisting that all employees clock-out prior to cleaning and closing the store -- which often take over an hour to complete --, (4) requiring its employees to enter payroll early on Saturdays to ensure that employees are paid only the pre-determined number of scheduled work hours and (5) forcing SMs to "volunteer" their time to conduct inventories at other EB stores.

The FLSA requires covered employers to, *inter alia,* pay their employees at least the governing minimum wage, 29 U.S.C. § 206, and overtime wages, at the rate of time and one-half, for hours in excess of 40 worked in a single week. 29 U.S.C. § 207. [4]  Exempt, however, from the FLSA's overtime requirements are employees who are "employed in a bona fide executive, administrative, or professional capacity". 29 U.S.C. § 213(a)(1). An "employee employed in a bona fide executive capacity" is one, *inter alia,* "whose primary [*8]  duty is management of the enterprise in which the employee is employed or of a customarily recognized de-

partment or subdivision thereof" and "who customarily and regularly directs the work of two or more other employees". 29 C.F.R. § 541.100. "Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption". 29 C.F.R. § 541.106. [5] "Determining whether an employee is exempt is extremely individual and fact-intensive, requiring 'a detailed analysis of the time spent performing administrative duties' and 'a careful factual analysis of the full range of the employee's job duties and responsibilities.'" *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (citation omitted).

4   The FLSA states, in pertinent part:

> "No employer shall employ any of [its] employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

[*9]

5   29 C.F.R. § 541.106 states, in pertinent part:

> "(a) Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met. Whether an employee meets the requirements of § 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700. Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonex-

empt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.

> (b) For example, an assistant manager in a retail establishment may perform work such as serving customers, cooking food, stocking shelves and cleaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management. An assistant manager can supervise employees and serve customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves."

[*10]   The FLSA provides a mechanism whereby plaintiffs can bring a collective action on behalf of themselves and other employees who are similarly situated. 29 U.S.C. § 216(b). [6] Plaintiffs have the burden of demonstrating that they are "similarly situated" to members of their proposed collective action. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997). To meet this burden, plaintiffs must "make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Ibid.* A similar situation exists if there is a factual nexus between Diaz and Ostrander's situations and the situations of other current and former employees whom plaintiffs seek to join as putative members of the collective action. *Id.* at 261-262.

6   The FLSA states, in pertinent part:

> "An action to recover *** liability *** may be maintained against any employer *** in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to

any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Plaintiffs have filed consents to become parties plaintiff.

[*11] Plaintiffs, therefore, must demonstrate that Ostrander and Diaz are similarly situated to a putative class consisting of nonexempt SAs and ASMs as well as exempt SMs. Plaintiffs assert similar situation based on the allegation that all putative class members were victims of EB's "company-wide plan of not paying their employees overtime or other wages for work performed." (Pls.' Mem. Supp. Mot. Conditional Certification at 10.) EB, in opposing certification of plaintiffs' Federal Claims, argues that (1) Ostrander and Diaz are not similarly situated to one another because Ostrander is exempt and Diaz is nonexempt and (2) plaintiffs are not similarly situated to other EB employees -- SMs, ASMs or SAs -- throughout the country because of the differences among the many stores. In response, plaintiffs claim that Ostrander and Diaz are similarly situated to each other and to proposed class members because (1) they are all victims of EB's common practice of failing to pay overtime and other wages and (2) SMs and ASMs had virtually identical job descriptions until EB's recent alterations.

The gravamen of Ostrander's claim, as distinct from that of Diaz's, is that EB avoided paying him overtime [*12] wages by willfully misclassifying him as exempt although his duties consisted primarily of nonexempt tasks. Ostrander's claim and the claims of other SMs thus will involve an analysis of daily duties and responsibilities and the amount of time spent on each, whereas Diaz's claim and the claims of ASMs and SAs will involve an examination of hours worked, payroll records and EB's knowledge and/or permission of the alleged overtime hours worked. As such, Ostrander and Diaz are not similarly situated to one another for no factual nexus exists between their situations. *See, e.g., Davis v. Lenox Hill Hosp.,* 2004 U.S. Dist. LEXIS 17283, 2004 WL 1926086, at *7 (S.D.N.Y. 2004) (holding that the plaintiff, a nurse in an exempt program claiming denial of overtime wages, was not similarly situated to nonexempt nurses); *Mike,* at 220-221 (denying class certification where the plaintiff claimed that he was misclassified as exempt "because the proof in the case [was] specific to the individual [and] *** any other plaintiff would also have to present specific evidence of his or her daily tasks, and the court would have to apply the regulations on an individual basis *** [and] engage in an ad hoc

[*13] inquiry for each proposed plaintiff to determine whether his or her job responsibilities were similar to [plaintiff's]"); *Morisky v. Pub. Serv. Elec. & Gas Co.,* 111 F. Supp. 2d 493, 498-499 (D.N.J. 2000) (finding that the plaintiffs' claim that the defendant's "common scheme" was denying them overtime and thus making the exempt and nonexempt plaintiffs similarly situated was, in fact, "really challenging *** defendant's determination that they are exempt under the FLSA," which would result in certification of "a class based upon [plaintiffs'] own belief as to which employees do not satisfy any of the exemption criteria--the very issue to be litigated in the action [and one that if] litigated *** as a collective action would be anything but efficient").

Moreover, just as a determination of Ostrander's exempt or nonexempt status requires a detailed factual analysis of his daily activities and responsibilities, so does a determination of every individual SM's exempt or nonexempt status. *Morisky,* at 499 ("The exempt or nonexempt status of potentially hundreds of employees would need to be determined on a job-by-job, or more likely, an employee-by-employee [*14] basis."). The responsibilities of SMs vary in number and types of employees supervised and in types of stores managed -- in terms of physical space, sales volume and geographic location. Although SMs share the same job description, their responsibilities, in fact, may differ and thus a highly fact-specific and detailed analysis of each SM's duties is required, making class treatment inappropriate. See 29 C.F.R. § 541.2 ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."); *Cooke v. Gen. Dynamics Corp., Elec. Boat Div.,* 993 F. Supp. 56, 61 (D.Conn. 1997) ("Whether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities through a job title or job description."). Plaintiffs, therefore, cannot make the necessary modest showing that Ostrander is similarly situated to other SMs.

Diaz's claim, likewise, is particular to his experiences at the Blasdell store. Plaintiffs assert [*15] that Diaz's timesheets were altered so that EB would not be required to provide overtime pay. First, plaintiffs do not contend that such was at the direction of EB management or in conjunction with a clear EB policy. Rather, plaintiffs simply allege that ASMs' overtime work must be approved and, thus, EB had a policy of not paying for overtime work. This is insufficient to suggest that all ASMs and SAs were subject to a policy of requiring but not compensating employees for overtime work. *Compare Hoffmann,* at 261-262 (finding that the plaintiffs

had made "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law" where the defendant had admitted that it had a policy of requiring managers to reduce their compensation and managers were required to sign a form agreement explicitly authorizing wage deductions), *with Holt v. Rite Aid Corp.,* 333 F. Supp. 2d 1265, 1274-1275 (M.D.Ala. 2004) (finding that, where the defendant's allegedly inaccurate exempt classification of store managers and assistant store managers was the formal policy allegedly in violation of the FLSA, [*16] certification of the collective action would require an inquiry "as to the daily tasks of each putative collective action member to determine whether they are similarly situated to the persons identified by the Plaintiffs, and then, on the merits, whether they had suffered an FLSA violation because they were not eligible for overtime compensation"; hence, "the Plaintiffs employed as Store Mangers or Assistant Managers, *** even within the region ***, are not similarly situated").

Second, Diaz's allegations -- *viz.,* that he worked "off-the-clock" without compensation and that his timesheets were altered to delete overtime hours worked -- are too individualized to warrant collective action treatment. *Lawrence v. City of Philadelphia,* 2004 U.S. Dist. LEXIS 8445, 2004 WL 945139, at *2 (E.D.Pa. 2004) ("The 'off-the-clock' claim does not involve regularly scheduled time that is worked by all members of the class. Rather, each of the Plaintiffs may potentially claim that on any given day he or she arrived early or departed outside of their regularly scheduled hours and were not compensated for such. The circumstances of those individual claims potentially vary too widely to conclude that [*17] in regard to their 'off-the-clock' claim, the Plaintiffs are similarly situated."). The court in *Lawrence* held that the questions of fact would most likely differ for each plaintiff, as each worked in different locations with different supervisors, and thus would be unduly burdensome to manage as a collective claim. *Ibid.* Similarly here, Diaz's off-the-clock claims require an examination by the Court of when he was scheduled to work, when he actually worked, whether he was paid for such and whether Ostrander altered his timesheets and, then, the Court would to have conduct the same inquiry as to each other class member. Taking plaintiffs' allegations as true, altering Diaz's timesheets may have been the Blasdell store's method of dealing with overtime issues, but such may not have been the case at other stores. All ASMs, therefore, have not been shown to be similarly situated and plaintiffs' speculative allegations do not rescue their claims from being "insufficiently specific beyond their own [respective] circumstances." *See Levinson v. Primedia Inc.,* 2003 U.S. Dist. LEXIS 20010, 2003 WL 22533428, at *1-*2 (S.D.N.Y. 2003) (holding

that employees who claimed that they were misclassified [*18] as independent contractors had failed to demonstrate that putative plaintiffs at other sites were "similarly situated" because "they failed to support [their] legal conclusion with a factual showing that extends beyond their own circumstances" -- in particular, "while plaintiffs had provided factual assertions in support of the claim that *they* were in an employee-employer relationship with defendants, and that *they* were deprived of a minimum wage and overtime rates, they had failed to make a sufficient showing that the same was true for other potential plaintiffs"); *Stubbs v. McDonald's Corp.,* 227 F.R.D. 661, 666 (D. Kan. 2004) ("While *** plaintiff [need not] come forward with evidence of actual proof of a decision, policy or plan, the initial *ad hoc* FLSA class certification standard does require plaintiff to provide more than his own speculative allegations, standing alone."); *Holt,* at 1272 ("Plaintiffs are not similarly situated if the action relates to circumstances personal to the plaintiff rather than a generally applicable policy.").

As for claiming similar situation to SAs, for the reasons mentioned *supra* [7] and because 90 percent of [*19] SAs worked part-time and thus overtime laws do not apply to them, Diaz and Ostrander are not similarly situated to SAs. Plaintiffs, therefore, fail to show that Ostrander and Diaz are similarly situated to one another, that Ostrander is similarly situated to the proposed class of ASMs, that Diaz is similarly situated to the proposed class of SMs and that either is similarly situated to SAs and their motion for conditional certification of their Federal Claims will be denied. [8]

[7]    Plaintiffs are not similarly situated to each other, to SMs or to ASMs; thus, logically, they are not similarly situated to SAs.

[8]    Plaintiffs mention that, if the Court finds "significant differences" between SMs and ASMs, it can divide the class into subclasses. (Pls.' Mem. Further Supp. Mot. Conditional Certification at 19.) Plaintiffs, however, cannot show sufficient similarity to certify a class of SMs and ASMs, nor can they show sufficient similarity to certify a class of just SMs or just ASMs. Plaintiffs urge that, at this preliminary stage, the Court should certify the class for notice and discovery purposes and leave further determinations to a later date. *See, e.g., Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1218-1219 (11th Cir. 2001). Courts that have certified classes at the initial stage with the possibility of decertification or subclassification have done so when discovery may have revealed latent differences in the putative class. *See, e.g., Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003).

In the instant case, however, significant differences are apparent at the outset and discovery cannot resolve the defects in plaintiffs' claims.

[*20] Turning to plaintiffs' motion for class certification of their State Claims, plaintiffs assert violations of NYLL §§ 160 *et seq.*, 190 *et seq.* and 650 *et seq.* and seek class certification of their State Claims pursuant to FRCvP 23. NYLL § 652 delineates a minimum wage schedule and NYLL § 655 provides for overtime rates and requirements, which, pursuant to the implementing regulation, apply the FLSA standards in determining exemptions from New York State overtime laws. 12 NYCCRR § 142-2.2. [9] Thus, plaintiffs have the same obstacle with respect to Ostrander's claim -- *viz.*, that a determination of nonexempt status requires an inquiry into the specifics of Ostrander's job and a similarly individualized inquiry into the specifics of each SM whom plaintiffs are seeking to join.

9    12 NYCCRR § 142-2.2 states, in pertinent part:

"An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of *** the [FLSA] ***. In addition, an employer shall pay employees subject to the exemptions of section 13 of the [FLSA] *** overtime at a wage rate of one and one-half times the basic minimum hourly rate."

12 NYCCRR § 142-2.4 provides that an employee shall receive one hour's pay at the basic minimum wage rate for any day in which the spread of hours exceeds ten hours or there is a split shift or both situations occur.

[*21] FRCvP 23 sets forth the requirements for bringing and maintaining a class action in federal court and plaintiffs bear the burden of proof on a motion for class certification under FRCvP 23. *Monaco v. Stone,* 187 F.R.D. 50, 59 (E.D.N.Y. 1999). "In determining the propriety of a class action, the question is not whether *** plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of [FRCvP] 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974). Although the Court will accept all of plaintiffs' allegations as true and avoid conducting an inquiry into the

merits, "the decision whether to certify a class may involve considerations related to the factual and legal issues that comprise [plaintiffs'] cause of action [and] the presence of an affirmative defense should be considered in determining whether class certification is appropriate." *Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 337 (S.D.N.Y. 2004) (quotations and citation omitted).

Plaintiffs must demonstrate that under FRCvP 23(a) the putative class has (1) sufficient numerosity to make individual joinder impracticable, [*22] (2) commonality of questions of law or fact, (3) typicality of claims and (4) representatives who fairly and adequately protect the interests of the class. Second, because plaintiffs move for class certification under FRCvP 23(b)(3), they must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class is superior to other available methods for fair and efficient adjudication of the controversy." FRCvP 23. [10] The numerosity element "requires a finding that the numerosity makes joinder of all class members 'impracticable.'" *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993). A class comprised of more than forty members generally satisfies numerosity. *Consol. Rail Corp.,* v. *Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995). The Court will assume *arguendo* that plaintiffs have met the numerosity requirement of FRCvP 23(a)(1).

10    FRCvP 23(a) and (b) states, in pertinent part:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

* * * *

(3) the court finds that the questions of law or fact common to the members of the class pre-

dominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

[*23] Next, plaintiffs must demonstrate commonality -- viz., that there are "questions of law or fact common to the class." FRCvP 23(a)(2). Plaintiffs' claims and the class claims must be "so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 158 n.13, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). For the same reasons that plaintiffs cannot meet the similarly situated requirement of class certification under the FLSA -- to wit, plaintiffs' factual allegations are specific to only Ostrander and Diaz and an individual factual determination is necessary to distinguish between exempt and nonexempt employees, to determine if an SM should be exempt or nonexempt and to determine if an ASM worked off-the-clock--, plaintiffs fail to meet the commonality requirement of FRCvP 23(a). *See Davis,* at *5 (finding that "categories of employees whose jobs were governed by different pay and benefits policies" -- to wit, those who are allegedly incorrectly classified as exempt and those who are classified as nonexempt -- do not share common issues of law or fact and thus cannot meet the commonality requirement [*24] of FRCvP 23(a)); *Morisky,* at 500 (holding that "the question of whether defendant improperly classified employees as exempt is unique to each employee and his or her particular job responsibilities" and claims so "individual in nature" do not meet the commonality requirement of FRCvP 23(a)). As stated *supra,* both Ostrander's and Diaz's claims are individual in nature, present factual questions specific to each and separate from the other's and from those of proposed class members. Plaintiffs admit that the commonality inquiry is one that asks "whether the common questions are at the 'core'

of the cause of action alleged" and that such is the case when the "legal or factual questions linking class members are substantially related to the resolution of the litigation." (Pls.' Mem. Supp. Mot. Class Certification at 15 (citations omitted).) Plaintiffs claim that the factual and legal issue is whether EB properly compensated its employees. This is clearly, as found *supra,* an oversimplification and misstatement of the issues. The factual issues with respect to Ostrander and SMs are based on their daily activities and responsibilities and with respect to Diaz and ASMs arise from [*25] their hours scheduled to work and actually worked. The legal issues with respect to Ostrander and SMs are based on the FLSA's definition of exempt employees and with respect to Diaz and ASMs focus on timesheets and authority to work overtime. Therefore, the commonality requirement of FRCvP 23(a) is not met.

FRCvP 23(a) also conditions class certification on plaintiffs establishing that the legal positions of the representative parties -- Ostrander and Diaz -- are "typical" of the absent class members. To be typical, "claims of the class representatives [must] be typical of those of the class, and [occurs] when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir. 2001) (quotations and citation omitted); *see also Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912, 923 (3d Cir. 1992) (finding that the typicality requirement is met if the plaintiffs' claims "arise[] from the same event of practice or course of conduct that gives rise to the claims of the class members, [*26] and *** [are] based on the same legal theory"). Class certification may not be granted "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir. 2000) (citation omitted). Again, plaintiffs' claims are not typical of each other or of those of the proposed class. As the courts in *Davis* and *Morisky* held, the individualized nature of claims alleging incorrect exemption status preclude meeting the typicality requirement. *See Davis,* at *6; *Morisky,* at 500. Ostrander's misclassification claim is factually and legally different from Diaz's off-the-clock claim and warrant different defenses from EB. *Noble,* at 343 ("Where [unique] defenses *** threaten[] to become the focus of the litigation, the plaintiff cannot be considered 'typical' of the class.") (citation and quotations omitted). Furthermore, as explained *supra,* Ostrander's alleged reasons for claiming to be misclassified arises from a different course of events -- viz., those particular to the Blasdell EB store -- than those that may cause another [*27] SM to be misclassified. The same holds true for Diaz's claim as applied to other ASMs -- viz., the reasons

why he was allegedly not compensated for off-the-clock overtime work is likely different from why another ASM performed and was not compensated for off-the-clock work. FRCvP 23(a)'s typicality requirement, therefore, has not been met.

The final FRCvP 23(a) requirement -- adequacy -- tends to merge with the commonality and typicality requirements. *Amchem Prod. Inc. v. Windsor*, 521 U.S. 591, 626, n. 20, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). "Class representative[s] must *** 'possess the same interest and suffer the same injury' as the class members." *Id.* at 625-626 (citation omitted). Again, Ostrander and Diaz did not suffer the same injury inasmuch as Ostrander was allegedly misclassified and Diaz was allegedly required to work off-the-clock. *See Davis,* 2004 U.S. Dist. LEXIS 17283, *20, [WL] at *6 (finding that the plaintiff "does not possess the same interests and has not suffered the same injuries as other members of the purported class" because of the difference in their exemption status). As the claims of each individual SM and ASM also vary, Ostrander and Diaz are not adequate representatives of [*28] a class, or classes, with such highly individualized claims. *See Mike v. Safeco Ins. Co. of Am.,* 223 F.R.D. 50, 53 (D.Conn. 2004) ("The same reasons that preclude [plaintiff] from proceeding as a collective action under the FLSA preclude him from defining a tenable class under [FRCvP] 23. *** No benefit is derived from proceeding as a class action because class membership is not founded upon any Safeco policy or other generalized proof, but rather on the fact-specific determination of each individual plaintiff's day-to-day tasks."). Plaintiffs, therefore, have failed to meet the requirements of FRCvP 23(a) and their motion for certification of their State Claims will be denied. [11]

> [11] As plaintiffs' have failed to meet the requirements of FRCvP 23(a), there is no need to continue the analysis as to FRCvP 23(b)(3).

Turning to EB's motion to dismiss plaintiffs' State Claims, EB claims that (1) a class action under NYLL would violate the Rules Enabling Act ("REA") on a variety of grounds [*29] and (2) there is no New York State overtime statute and the corresponding regulation, 12 NYCCRR § 142-2.2, is thus illegitimate. This Order will deny certification of plaintiffs' State Claims and thus EB's REA claim will be moot. As to EB's claim that there are no overtime laws in New York State, EB cites three cases -- *Hornstein v. Negev Airbase Constructors,* 110 A.D.2d 884, 488 N.Y.S.2d 435 (2d Dep't 1985), *Gallegos v. Brandeis Sch.,* 189 F.R.D. 256 (E.D.N.Y. 1999) and *Ballard v. Cmty. Home Care Referral Serv., Inc.,* 264 A.D.2d 747, 695 N.Y.S.2d 130 (2d Dep't 1999) -- in support of its claim. The court in *Hornstein* stated that "New York does not have a mandatory overtime

law" without citing to a prior decision. 488 N.Y.S.2d at 437. *Gallegos* states the same and cites *Hornstein* for the proposition. 189 F.R.D. at 259. Neither the *Hornstein* nor the *Gallegos* decision explains or justifies the proposition. The court in *Ballard,* on the other hand, explained that, although "there are no provisions governing overtime compensation in the New York State Labor Law[,] *** the Commissioner of Labor has the power [*30] to *** appoint a wage board *** [who] may recommend such regulations as it deems appropriate with respect to, *inter alia,* overtime rates ***." 695 N.Y.S.2d at 131. The court continued to explain that, "in accordance with these empowering statutes, the Commissioner of Labor determined that some form of overtime compensation was appropriate and issued the Miscellaneous Wage Order found at [NYCCRR] 142-2.2." *Ibid.* Thus, the case that EB claims supports its position, in fact, directly conflicts with it. Furthermore, subsequent to *Hornstein* and *Gallegos,* the Second Circuit Court of Appeals and other New York District Courts have verified that overtime claims may be brought pursuant to NYLL § 650 *et seq.* and that implementing regulation 12 NYCCRR 142-2.2 carries the force of the law. *See, e.g., Zheng v. Liberty Apparel Co. Inc.,* 355 F.3d 61, 78 (2d Cir. 2003) (upholding district court's analysis of the plaintiffs' state overtime claims under 12 NYCCRR 142-2.2 based on the "same analysis" as applied under the FLSA); *Mascol v. E&L Transp., Inc.,* 387 F. Supp. 2d 87, 2004 WL 1541045 (E.D.N.Y. 2005) (granting the plaintiffs' motion [*31] for class certification of a class of drivers allegedly not paid overtime wages in violation of NYLL and its implementing regulations, 12 NYCCRR § 142-2.2).

Accordingly, it is hereby **ORDERED** that plaintiffs' motion for conditional certification of their Federal Claims is granted, that plaintiffs' motion for class certification of their State Claims is denied and that EB's motion to dismiss is denied.

DATED: Buffalo, N.Y.

October 13, 2005

JOHN T. ELFVIN

S.U.S.D.J.

LEXSEE 2006 U.S. DIST. LEXIS 11378

**FLOREN BASCO FLORES, on behalf of herself and all others similarly situated, Plaintiffs, -against- OSAKA HEALTH SPA, INC., ET AL., Defendants.**

**05 Civ. 962 (VM)(KNF)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2006 U.S. Dist. LEXIS 11378**

**March 16, 2006, Decided**
**March 16, 2006, Filed**

**SUBSEQUENT HISTORY:** Magistrate's recommendation at Floren Basco Flores v. Osaka Health Spa, Inc., 2006 U.S. Dist. LEXIS 13153 (S.D.N.Y., Mar. 24, 2006)

**COUNSEL:** [*1] For Floren Basco Flores, on behalf of herself and all others similarly situated, Plaintiff: Karl J. Stoecker, Law Offices of Karl J. Stoecker, New York, NY.

For Osaka Health Spa, Inc. doing business as Osaka 56, Osaka Health Spa Center, Corp. doing business as Osaka 56, Osaka 46 Traditional Health Spa, Inc., doing business as Osaka 46, Osaka Spa Construction, Inc., Green Cross Clinique, LLC also known as Osaka Zen Spa, Green Cross Essential Therapuetics, LLC, Bok Sil Lee, Myung-Hi Sonserai Lee also known as Myung-Hi Lee other Sonserai Lee, Lee Osaka, Joshua Haesong Lee, Defendants: Daniel P. Smulewicz, Law Office of Daniel P. Smulewicz, New York, NY.

**JUDGES:** KEVIN NATHANIEL FOX, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** KEVIN NATHANIEL FOX

**OPINION**

**MEMORANDUM and ORDER**

KEVIN NATHANIEL FOX

UNITED STATES MAGISTRATE JUDGE

In this action brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* and related provisions of New York law, the plaintiff, Floren Basco Flores ("Flores"), has made an application, pursuant to 29 U.S.C. § 216(b), for an order: (1) directing the defendants to provide Flores with the names [*2] and addresses of persons they employed during the last three years, who are "similarly situated" to the plaintiff; and (2) approving, for publication to those employees, a notice prepared by Flores announcing, *inter alia,* the existence of this action and inviting the relevant employees to participate in this action, as plaintiffs, along with Flores. The notice Flores proposes that the Court approve is styled "Notice of Lawsuit with Opportunity to Join."

The defendants, except for Nam-Hi Lee ("Lee"), who is representing herself in the action, responded to Flores' motion by filing a cross-motion. Through that cross-motion, the moving defendants sought to have the action shifted to a state court for adjudication. According to the moving defendants, they are not engaged in commerce, as that term is defined in FLSA and, therefore, the plaintiff cannot prosecute a FLSA-based action against them in this court. However, after Flores responded to the cross-motion, the moving defendants advised the Court, during a conference, that they had determined to withdraw their cross-motion from consideration by the Court. Lee never responded to Flores' motion. Therefore, the motion is unopposed.

[*3] Flores maintains that during the period May 2004 through November 2004, she was employed principally as a masseuse at two spa facilities owned, operated and managed by the defendants. Flores contends that, on rare occasions, she was assigned to perform cleaning and other unspecified services. Flores recalls that, while she was in the defendants' employ, she worked six to seven days a week and typically performed her assignments from 3:00 p.m. to 3:00 a.m. Flores also recalls that other masseuses employed by the defendants worked the identical shift, and that they, like she, were not given overtime compensation for hours they worked in excess of 40 hours, during a work-week. Furthermore, according to

Flores, she typically received tips from the spas' patrons, but the defendants confiscated those tips.

As noted above, in reliance upon FLSA § 216(b), Flores is seeking an order from the Court directing the defendants to disclose to her the names of their current and former employees who are or were similarly situated to Flores, so that notice of this action and an opportunity to join it as a plaintiff may be published to them. Flores defines the universe of current and former employees [*4] similarly situated to her as follows:

> All non-exempt current and former employees of Osaka Health Spa of New York who were not paid overtime at any time during the past three years.

"Osaka Health Spa of New York" is not an entity that is a defendant in this action.

Courts typically employ a two-step certification process in collective actions such as the one proposed by Flores. *See Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 91, 95-96 (S.D.N.Y. 2003); , *Masson v. Ecolab, Inc.,* 2005 U.S. Dist. LEXIS 18022, No. 04 Civ. 4488 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005). First, a court reviews the pleadings and affidavits to determine whether the named plaintiff and the proposed plaintiffs are similarly situated. The named plaintiff has the burden of showing that the proposed plaintiffs for the collective action are similarly situated to him or her with respect to their claims that FLSA has been violated. The named plaintiff can satisfy that burden by demonstrating a "'factual nexus' between his or her situation and the situation of other current or former employees." *Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005) [*5] (citation omitted). The named plaintiff needs to make only "a modest factual showing sufficient to demonstrate that [the named plaintiff] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hoffman v. Sbarro, Inc,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997). "The leniency of this requirement is consistent with the broad remedial purpose of FLSA." *Morales v. Plantworks,* 2006 U.S. Dist. LEXIS 4267, No. 05 Civ. 2349, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006). If the court determines that the named plaintiff and the proposed plaintiffs are similarly situated, it certifies the class conditionally and allows notice of the action to be sent to proposed plaintiffs. *See Masson,* 2005 WL 2000133, at *13.

During the second step in the process, a defendant can make an application to the court that the class be decertified if, during the pretrial discovery phase of the litigation it becomes apparent that the plaintiffs are not similarly situated. *See id.,* at *14.

In the instant case, it is not clear to whom Flores contends she is similarly situated such that a class of proposed plaintiffs might be identified. In her complaint, [*6] Flores alleges that she was employed by the defendants as a masseuse, and that she and "fellow masseuses [] worked more than forty hours each work-week, but were not paid overtime compensation." In the memorandum of law that Flores submitted in connection with the instant motion, she alleges that she and "her fellow employees worked more than forty hours each work-week but were not paid overtime compensation." The plaintiff's complaint states that the action is brought on behalf of "all other current and former employees of defendants who were not paid in accordance with [FLSA's] overtime provisions and whose tips were misappropriated by the defendants." The plaintiff's memorandum of law, as noted above, defines the universe of persons similarly situated to Flores as "all non-exempt current and former employees" of an entity that is not a defendant in the action, "who were not paid over-time at any time during the past three years."

The plaintiff's description of the universe of proposed plaintiffs, that is, the class of persons she maintains is similarly situated to her, is not consistent. On one occasion, the class is alleged to be composed of masseuses who work and did work [*7] at the defendants' spa facilities in excess of 40 hours in a work-week and were not compensated for the hours beyond 40 hours that they worked. On another occasion, the class is not limited to masseuses, but is claimed to be composed of "all [] current and former employees of the defendants who were not paid in accordance with [FLSA's] overtime provisions and whose tips were misappropriated by the defendants." On yet another occasion, the class is described as "all non-exempt current and former employees" of an entity, "Osaka Health Spa of New York," that is not a defendant in the action. In addition, Flores has confused matters further by describing the proposed plaintiffs as "home health aide employees" in the notice concerning the pendency of this action that she has asked the Court to approve for publication. In a situation such as this, where the named plaintiff is unable to state clearly and specifically to whom it is that she contends she is similarly situated, it is not possible for the Court to conclude that a collective action certification is warranted.

Furthermore, the Court finds that the plaintiff has failed to make a "modest" showing to establish that she and the [*8] proposed plaintiffs together were the victims of a common policy or plan that violated the law. Flores contends, in her memorandum of law, that typically, she "served at least 7-8 customers per [12-hour] shift and [that] it is [her] understanding that the other massage therapists working my shift did the same." The

submissions made by the plaintiff to the Court do not provide any factual information concerning the basis for Flores' "understanding" of the quantum of work performed by "other massage therapists" assigned to work during the shift on which Flores worked. Flores also alleges, in her memorandum of law, that the defendants' spa customers typically paid cash tips in amounts ranging from $ 20 to $ 50, and that the defendants "confiscated our tips." These allegations, like the allegations Flores made in an affidavit she submitted in reply to the defendants' opposition to her motion, are broad conclusory allegations. As such, they offer nothing of evidentiary value to support a finding that a factual nexus exists between the way the defendants allegedly compensated Flores and the way they may have compensated other employees during the relevant time period. The plaintiff's [*9] determination to rely upon broad conclusory allegations and nothing more, also militates against certifying this as a FLSA collective action. *See Morales,* 2006 WL 278154, at *3.

Since Flores has not met her burden of showing that she is similarly situated to former and current employees of the defendants, her motion, that this action proceed as a collective action, is denied.

Although the Court has determined that certifying this action as a collective action, pursuant to 29 U.S.C. § 216(b), is not warranted at this juncture in the litigation, the Court remains mindful of the remedial purpose of FLSA and the broad discretionary power that the Court has. Therefore, the Court will direct the defendants to disclose to Flores the names of persons they employed at their spa facilities, in the job title masseuse, during the 3 years immediately preceding the date on which this action was commenced. *See id.,* at *3.

Dated: New York, New York

March 16, 2006

SO ORDERED:

KEVIN NATHANIEL FOX

UNITED STATES MAGISTRATE JUDGE

LEXSEE 2002 U.S. DIST. LEXIS 4163

**LAURA D. HALL, On Behalf of Herself and Others Similarly Situated, Plaintiff, v. LINDA L. BURK, M.D., Defendant.**

**Civil No. 3:01-CV-2487-H**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**2002 U.S. Dist. LEXIS 4163; 147 Lab. Cas. (CCH) P34,632**

**March 11, 2002, Decided**
**March 11, 2002, Filed; March 12, 2002, Entered**

**DISPOSITION:** [*1] Plaintiff's Motion for Notice and for Limited Discovery DENIED. Plaintiff's Motion to Void Releases, for Corrective notice and for Limited Discovery DENIED. Plaintiff's Motion for a Protective Order DENIED.

**COUNSEL:** For LAURA D HALL, plaintiff: Brady Edwards, Attorney at Law, Edwards & George, Houston, TX USA.

For LINDA L BURK, MD, defendant: Keith Clouse, Attorney at Law, Clouse & Associates, Lisa Greenwood Duffee, Attorney at Law, McClure Duffee & Eitzen, Dallas, TX USA.

**JUDGES:** BAREFOOT SANDERS, SENIOR JUDGE, UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF TEXAS.

**OPINION BY:** BAREFOOT SANDERS

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Expedited Motion for Notice to Potential Plaintiffs and Limited Expedited Discovery, filed February 7, 2002; and Defendant's Response thereto, filed February 19, 2002. Also before this Court is Plaintiff's Expedited Motion to Void Releases, for Corrective Notice, for Protective Order, and for Limited Expedited Discovery, filed February 12, 2002; and Defendant's Response thereto, filed February 22, 2002. Upon review of the pleadings, briefs, and relevant authorities, the Court is of the opinion for the reasons stated below that [*2] Plaintiff's Motion for Notice and for Limited Discovery should be **DENIED**, that Plaintiff's Motion to Void Releases, for Corrective notice and for Limited Discovery should also be **DENIED**, and that Plaintiff's Motion for a Protective Order should be **DENIED**.

**I. BACKGROUND**

Plaintiff alleges a violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, et seq., on behalf of herself and other similarly situated former and current employees of the Defendant. (Compl. at 1). Defendant is an ophthalmologist who maintains two offices in Dallas, Texas. (Resp. Mot for Notice at 2). Plaintiff states that she began working for the Defendant in April 2000 and that the Defendant failed to pay her and other similarly situated employees the required time and a half for hours worked in excess of forty hours per week. (Compl. at 2). Plaintiff states that she and others were employed on a fluctuating workweek basis. *See* 29 C.F.R. § 778.114(a) (2001). The requirements for a "fixed salary for fluctuating hours" plan are: (1) the employee's hours of work fluctuate from week to week; (2) there is a mutual understanding [*3] between the employee and employer that the salary will constitute straight time pay for the hours worked; and (3) the amount of salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he or she works is greatest. *Id.* The regulations provide that overtime pursuant to a fluctuating workweek plan is calculated at one-half the rate in addition to salary. *See* 29 C.F.R. § 778.114(a) (2001). Plaintiff alleges that pursuant to the agreement she had with the Defendant, her salary should have been $ 13 per hour or $ 520 per week. [1] Plaintiff states, however, that Defendant failed to pay this base salary and therefore, she should have received overtime payments calculated at one and one-half times her

"hourly" rate because Defendant failed to comply with the requirements for a fluctuating workweek plan.

> 1  Plaintiff's statement that she was paid $ 13 per hour is puzzling. The regulations provide that under the fluctuating workweek plan, the hourly rate would change from week to week depending on the number of hours an employee worked. For example, an employee whose salary is $ 250 per week and "during the course of 4 weeks [] works 40, 44, 50, and 48 hours, [would have a] regular hourly rate of pay in each of these weeks [of] approximately $ 6.25, $ 5.68, $ 5, and $ 5.21." 29 C.F.R. § 778.114(b) (2001). Therefore, if Plaintiff was truly a fluctuating workweek employee, she would not have an hourly rate. Nevertheless, Defendant does not contest Plaintiff's assertions and admits that Plaintiff is owed overtime. (Resp. at 3).

[*4]  Plaintiff asserts that other employees did not receive overtime payments in accordance with the FLSA. In furtherance of this claim, Plaintiff requests (1) the Court order that notice be provided to similarly situated employees under 29 U.S.C. § 216(b); (2) Court approval of the dissemination notice; and (3) limited discovery of the name, address, telephone number, date of birth, and social security number of all similarly situated employees. Defendant argues that Plaintiff has not made the requisite showing that this suit is proper for class treatment under the FLSA.

In addition, after learning of Plaintiff's claims, Defendant alleges that she paid and obtained releases from other employees to whom she owed overtime pay. (Resp. Mot. to Void Releases at 3.) Plaintiff contends that (1) the releases are void; (2) that the Court must approve corrective notice; (3) that a Protective Order issue to prevent Defendant from contacting putative members; and (4) that the Court permit limited discovery. Defendant contends that Plaintiff lacks standing to pursue voiding the releases and that corrective notice is unnecessary in this case.

## II. ANALYSIS

### A. Motion [*5] for Notice and Limited Discovery

The FLSA provides that a suit may be instituted "by one or more employees for or in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This type of class action, also called a collective or representative action, is different from a FED. R. CIV. P. 23 class action in that the members of the class are permitted to "opt-in" rather than "opt-out" of the class. *See Mooney, et al. v. ARAMCO Servs. Co., et al.*, 54 F.3d 1207, 1212 (5th Cir. 1995). Rule 23 and §

216(b) class actions are "mutually exclusive and irreconcilable" and those who choose not to opt-in to an class action under § 216(b) are not bound by and may not benefit from the judgment. *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288-89 (5th Cir. 1975).

The Supreme Court has provided that District Courts have discretion to authorize notice to similarly situated employees that they may opt-in to a class, but that notice is by no means mandatory. *See Hoffman - La Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989); *see also Camper, et al. v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000) [*6] ("The relevant inquiry then is not whether the Court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise discretion."). Although *Sperling* addressed the issue of whether District Courts have this discretion in Age Discrimination in Employment Act ("ADEA") cases, the ADEA incorporates § 216(b) of the FLSA. *See* 493 U.S. at 167. In addition, other courts have held that the analysis in *Sperling* and other ADEA cases involving questions of the opt-in process should be applied to cases solely based on the FLSA. *See  H & R Block, Ltd. v. Housden & Beard*, 186 F.R.D. 399, 400 (E.D. Tex. 1999); *see also  Garner v. G.D. Searle Parmaceuticals & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991).

The determination of whether this Court should exercise its discretion involves the analysis of two tests, neither of which carries more weight than the other. *See  Mooney*, 54 F.3d 1207, 1216 (5th Cir. 1995). The first test derives from *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987) and involves a two prong analysis. First, the Court must make an initial inquiry into whether the Plaintiff [*7]  has provided sufficient evidence that similarly situated potential Plaintiffs exist. *See  Mooney*, 54 F.3d at 1213-14. At this stage, the Court uses a lenient standard to determine whether similarly situated persons exist, and if the Court determines that certification is appropriate, then it usually "conditionally certifies" the class. *See* id at 1214. Second, the Court reexamines the class after notice, time for opting-in, and discovery have taken place. *See id.* If the Court finds that the class is no longer made up of similarly situated persons, then it may decertify the class. *See id.* This inquiry is usually conducted upon a motion filed by the Defendant. *See id.*

In pursuit of the first inquiry, this Court finds that Plaintiff failed to present sufficient evidence that similarly situated Plaintiffs exist. Unsupported assertions of widespread violations are not sufficient to meet Plaintiffs burden. *See  Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983). Some Courts have found class certification appropriate where potential Plaintiffs were identified. *See  Garner & Karn v. G.D. Searle Pharmaceuticals*, 802 F. Supp. 418, 422 (M.D. Ala. 1991). [*8]

Other Courts have looked to affidavits of potential plaintiffs. *See  Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 252 (M.D. Tenn. 1996). Here, however, Plaintiff has not submitted affidavits or even names of potential Plaintiffs. Plaintiff's only proof of a widespread violation of the FLSA is the conclusory allegation that all the employees "were subjected to improper deductions from what should be their fixed salaries." (Resp. Mot. for Notice at 2). Defendant provides that she underpaid her employees, but also explains that she has reimbursed almost all of them after realizing her errors. [2] Therefore, it is unclear whether there exist potential Plaintiffs that satisfy the "similarly situated" requirement. Plaintiff fails to address this issue and the Court cannot approve even conditional certification without more of a showing.

2    Defendant asserts that:

> Upon learning of Hall's claim that she was improperly paid, Dr. Burk's office administrator conducted an audit of the practice's payroll records and calculated the amount each current and former employee should have been paid with overtime paid at time and a half. All current employees have received payment for the full difference between what they were paid and what they should have been paid. With respect to former employees, notices were sent to all of them and as of the date of this Response, checks have been mailed to seven (7) of the eleven (11) former employees. Two more have signed for the letter but not yet requested checks. Two others have either not claimed their letters or they have been returned for forwarding. The total amount paid to all current and former employees is approximately $ 11,500.

(Resp. Mot. for Notice at 3).

[*9]  The second test used by the Court in *Shushan v. University of Colorado*, 132 F.R.D. 263, 265 (D. Colo. 1990) is composed of the requirements of FED. R. CIV. P. 23(c), i.e. "numerosity," "commonality," "typicality," and "adequacy of representation." Plaintiff has completely failed to make a showing under this test, except for the conclusory allegations provided in the Complaint

and therefore fails this test. *See  H & R Block, Ltd.*, 186 F.R.D. at 401.

This Court has a "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D. Minn. 1991). At this time, Plaintiff has failed to provide factual evidence in support of either test and therefore Plaintiff's Motion for Notice should be **DENIED without prejudice**. Given the Court's reasons as stated above, it is unnecessary to reach the merits of Plaintiff's request for limited discovery and it is also **DENIED**.

**B. Motion to Void Releases, for Corrective Notice, and for Limited Expedited Discovery**

Subsequent to filing the Motion for Notice and Limited Discovery, Plaintiff filed an [*10]  Expedited Motion to Void Releases, for Corrective Notice, for Protective Order, and for Limited Expedited Discovery. This Motion addresses the validity of "releases" signed by current and former employees of the Defendant in exchange for receipt of back pay. Without addressing the merits of Plaintiff's argument that the releases are void, this Court finds that Plaintiff lacks standing to assert a claim of the putative Plaintiffs' (i.e. the other employees) settlements. To establish standing,

> First, the Plaintiff must have suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized (citations omitted); and (b) 'actual or imminent, not 'conjectural' or 'hypothetical' (citations omitted). Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly . . . traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the Court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1991). [*11]  In this case, Plaintiff has not established an injury caused by the putative Plaintiffs' settlements. Courts have voided releases where signatories of the releases were Plaintiffs in the class action, but the only Plaintiff here has not signed a release. *See  O'Brien v. Encotech Constr. Servs., Inc.*, 203 F.R.D. 346, 349 (N.D. Ill. 2001) ("Plaintiffs assert that two named Plaintiffs . . . have signed releases, and

both wish to be part of the current action. Therefore, standing and ripeness are not impediments to the filing of a motion to declare their releases void."). The Court finds that Plaintiff does not have standing to contest the releases and therefore, Plaintiff's Motion to Void Releases is **DENIED.** Given this ruling, the Motion for Corrective Notice and for Limited Discovery is also **DENIED.**

### C. Motion for Protective Order

Plaintiff's two-sentence, conclusory request for a protective order should be denied. This Court has authority to intervene in the notice process, see *O'Brien*, 203 F.R.D. at 348, but the reasons cited by the Plaintiff are insufficient to warrant issuing a Protective Order at this time. Plaintiff's Motion for Protective [*12] Order is hereby **DENIED without Prejudice.**

### III. CONCLUSION

Given the Court's reasons stated above, Plaintiff's Motion for Notice and for Limited Discovery is **DENIED**, Plaintiff's Motion to Void Releases, for Corrective notice and for Limited Discovery is also **DENIED**, and Plaintiff's Motion for a Protective Order is **DENIED.**

SO ORDERED.

DATED: March 11, 2002.

BAREFOOT SANDERS, SENIOR JUDGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

LEXSEE 2003 US DIST LEXIS 20010

**DEBORAH LEVINSON et al., Plaintiffs, - against - PRIMEDIA INC., ABOUT.COM, INC., SCOTT KURNIT, and "John Does", name fictitious, actual name and number of such persons unknown, Defendants.**

**No. 02 Civ. 2222 (CBM)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2003 U.S. Dist. LEXIS 20010**

**November 6, 2003, Decided**
**November 6, 2003, Filed**

**DISPOSITION:**    [*1] Plaintiffs' motion to circulate notice of pendancy denied without prejudice.

**COUNSEL:** For Deborah Levinson, Theresa Jansen, Jana M Jones, Boise Matthews, Eponine Sallee, Marshall Bowden, Jim Zwick, Michelle Peterson, Harold Hagquist, Patricia Michaels, Julie Altebrando, Stephen Granade, Richard W Gray, Jr, Lita Epstein, Cheryl Imboden, Paivi Helena Suomi, Durant Imboden, Angela Thor, Traci Lee Morris, Jeannine Lahey, Suzanne J Barrett, Linda Nelson, Susi Nuss, Simi K Valley, David Orozco, Judith A Kautz, Steven Graham Venter, Murray Wayne Lundberg, John Gordon Ross, Janet W Burns, Julia Armstrong Murphy, Lori Holuta, Michael Griffis, John Irons, Kelly Rivera, Michael Mills, Mark E Hessey, Margaret Lorraine Smith, Kristyn Schmall, Glen Schmall, Charles E Haynes, Rachel Sanfordlyn Shreckengast, John Michael Drehobl, Shane William Dell, Peter D Lathan, Wendy Hogan, Philip G Deloach, Anthony Parente, Anne E Cerva, Robert A Olson, Gayle Olson, Ann Zeise, John Anderson, Walter Blair Logie, Kimberly Pauley, Kathy Stolley, Marlene Dziegeleski, Robert Rak, Mark A Filetti, Barbara Sehr, Krista Marie Beck, Diane Dobbs, David J Sweet, Dale E Lehman, Bonnie Bruno, Andrew George Vadas, Scott Rettberg, Paul H Ting, Lisa Lorden, Michael [*2] J Helba, Walter Metcalf, PLAINTIFFS: Leon Marc Greenberg, Leon Greenburg, PC, New York, NY USA.

For Kimberly Pauley, PLAINTIFF: Leon Marc Greenberg, New York, NY USA.

For Primedia, Inc, About.com, Inc, Scott Kurnit, DEFENDANTS: Robert S Whitman, Orrick, Herrington & Sutcliffe, LLP, New York, NY USA.

**JUDGES:** CONSTANCE BAKER MOTLEY, United States District Judge.

**OPINION BY:** CONSTANCE BAKER MOTLEY

**OPINION**

**MEMORANDUM OPINION AND ORDER**

   Motley, J.

   This is an action brought pursuant to the Fair Labor Standards Act ("FLSA") and New York state law, by former and present employees of defendant corporations. Plaintiffs allege, *inter alia,* that they and other persons who worked for defendants as "guides" on About.com web pages were uniformly paid less than the minimum wage and denied overtime pay for work which they performed in excess of 40 hours per week, in violation of 29 U.S.C. § 206 and 29 U.S.C. § 207. By the instant motion, they seek permission to circulate to other former and present employees of defendant corporations a Notice of Pendency and Consent to Join similarly situated persons pursuant to Section 216(b) of the FLSA. [*3] Defendants oppose the motion. The motion is denied.

**DISCUSSION**

   Section 216(b) of the FLSA provides in pertinent part:

      An action to recover ... liability ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any ac-

tion unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. 29 U.S.C. § 216(b).

The Second Circuit has held that a district court has the power to order that notice be given to other potential members of a plaintiff class under this "opt in" provision. See Braunstein v. Eastern Photographic Labs, Inc., 600 F.2d 335 (2d Cir. 1978). The strict requirements of Rule 23 of the Federal Rules of Civil Procedure do not apply to FLSA "collective actions," and thus no showing of numerosity, typicality, commonality and representativeness need be made. Rather, plaintiffs must meet only one threshold requirement: they must demonstrate that potential class members are [*4] "similarly situated." See Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997). Neither the FLSA nor its implementing regulations define the term "similarly situated." Id. However, plaintiffs can meet the burden of demonstrating that they are similarly situated by "making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Id.

Plaintiffs have failed to meet their burden. While the factual showing that they must make at this stage is "modest," Id., it must be "sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Id. Central to plaintiffs' claim are the allegations that defendants were "employers" under the terms of the FLSA (rather than "independent contractors," as stated on the face of the contracts submitted to the court), and that in violation of the FLSA they denied plaintiffs a minimum wage and overtime pay. While plaintiffs have provided factual assertions in support of the claim that *they* were in an employee-employer relationship with defendants, [*5] and that *they* were deprived of a minimum wage and overtime rates, they have failed to make a sufficient showing that the same was true for other potential plaintiffs.

With regard to the assertion that defendants acted as employers to plaintiffs and potential plaintiffs, plaintiffs allege that defendants have the "company-wide" policy of "misclassifying guides as independent contractors exempt from the overtime requirements of the FLSA," but they fail to support this legal conclusion with a factual showing that extends beyond their own circumstances. With regard to the alleged failure to provide a minimum wage or overtime pay, plaintiffs' documentation is similarly limited to their own compensation. While the contracts submitted to the court, and their attached compensation schedules, do appear to be substantially similar, a demonstration of the similarity of cir-

cumstances of the existing plaintiffs is, of course, insufficient. Even if the assertion, found in each of plaintiffs' affidavits submitted to the court, that "All guides worked under the same contracts," were true, this would not constitute a showing that defendants' compensation structure violated the law. The compensation [*6] schedules may lack a provision for overtime rates or a guaranteed minimum wage, but it is only when this evidence is combined with evidence such as that provided in connection with the *existing* plaintiffs, of hourly rates below minimum wage, or overtime hours without overtime pay, that the necessary showing becomes possible. Plaintiffs' attempts to broaden their allegations beyond the existing plaintiffs are insufficiently specific to make such a showing. See, e.g., Lahey Aff. § 20 ("For many guides, and perhaps most guides, myself included, the monthly compensation that was received was often less than the minimum wage of $ 5.15 an hour."); Pls.' Mem. Supp. Mot. at 10 (alleging that guides were required "to complete certain work quotas and to undertake numerous tasks, that often required working in excess of 40 hours per week, without accounting for this time as overtime pay.").

## CONCLUSION

Based on the record presently before the court, plaintiffs have failed to demonstrate that the putative members of the collective action are similarly situated. Accordingly, plaintiffs' motion is denied without prejudice. Should further discovery disclose additional facts to support [*7] plaintiffs' application, they may renew it upon a proper showing.

SO ORDERED.

Dated: November 6, 2003

CONSTANCE BAKER MOTLEY

United States District Judge

**C**

Masson v. Ecolab, Inc.
S.D.N.Y.,2005.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Troy MASSON, individually and on behalf of others
similarly situated, Plaintiff,
v.
ECOLAB, INC., Defendant.
No. 04 Civ. 4488(MBM).

Aug. 17, 2005.

Michael J.D. Sweeney, Tara Bernstein, Law Office of
Dan Getman, New Paltz, NY, for Plaintiff Troy Masson.
Marc S. Wenger, Jeffrey W. Brecher, Jackson Lewis
LLP, Melville, NY, for Defendant Ecolab, Inc.

OPINION AND ORDER

MUKASEY, J.
**\*1** Plaintiff Troy Masson, individually and on behalf of
others similarly situated, sues Ecolab, Inc. for overtime
pay under the Fair Labor Standards Act ("FLSA"), 29
U.S.C. § 201 et seq. Ecolab moves for summary judg-
ment, arguing that Masson is subject to the authority of
the United States Secretary of Transportation with re-
spect to his qualifications and maximum hours of service
and thus exempt from the overtime requirement of the
FLSA. Masson opposes the motion and seeks approval
for distribution of collective action notices and opt-in
consent forms to potential plaintiffs. So far, two others,
Claude Gerald Hester, Jr. and Justin Duffie, have submit-
ted opt-in forms. Although the record does not contain
enough evidence for this court to determine as a matter
of law which plaintiffs, if any, are entitled to overtime
compensation under the FLSA, the parties have provided
enough evidence for this court to determine which job
activities potential plaintiffs would have had to have
performed at Ecolab so as to exempt from the FLSA's
overtime requirement. Hence, for the reasons set forth
below, Ecolab's motion is denied and Masson's is
granted.

**I.**

Ecolab develops and markets cleaning, sanitizing, pest
control, and other maintenance products and services.
(Ecolab Rule 56.1 Statement ¶ 1; Affidavit of Gilbert
Lewis ("Lewis Aff.") ¶ 4) It employs more than 21,000
people worldwide. (Ecolab Rule 56.1 Statement ¶ 2) Its
customers, located in over 160 countries, include hotels,
restaurants, health and educational facilities, convenience
and grocery stores, commercial and institutional laun-

dries, food and beverage processors, and car washes.
(Id.)

Ecolab's leases of commercial equipment include regular
preventive maintenance and repair services. (Id. ¶ 9)
Ecolab's Route Managers provide these services. (Id. ¶
10) According to Ecolab, Route Managers are assigned
to specific geographic territories, of which some cover
parts of two states. (Id. ¶ 14) Ecolab claims that as of
February 2005, it employs approximately 642 Route
Managers throughout the country and that approximately
17 percent of these Route Managers are assigned to terri-
tories covering more than one state. (Id.)

Masson worked as a Route Manager from April 7, 2003
to May 21, 2004 (Ecolab Rule 56.1 Statement ¶ ¶ 15-
16), Duffie from April 8, 2002 to January 15, 2004 (Id.
¶ 23-24),[FN1] and Hester from June 2, 2003 to July 9,
2004. (Id. ¶ ¶ 31-32) All three worked in the Southeast
Area of Ecolab's Institutional Division, which serves the
foodservice and hospitality industries. (Lewis Aff. ¶ 11)
The Southeast Area appears to cover South Carolina,
North Carolina, most of Georgia, and part of Tennessee.
(Ex. B to Lewis Aff.) However, plaintiffs provided main-
tenance and repair services for dishwashing machines
leased by Ecolab to customers only in the Atlanta metro-
politan area; none left Georgia as part of their employ-
ment with Ecolab. (Pls.' Rule 56.1 Response ¶ 19, 27,
35) Ecolab provided them with company vehicles to
drive to customer locations. (Ecolab Rule 56.1 Statement
¶ ¶ 20, 28, 36) None reported regularly to an Ecolab
office. Instead, they drove from customer to customer
during the work day and at day's end returned to their
respective homes. (Id. ¶ ¶ 21, 29, 37)

> FN1. Duffie began his employment as a
> "Sales/Service Representative" but was re-
> named a Route Manager in January 2003. Ac-
> cording to Ecolab, his duties were the same un-
> der either title. (Ecolab Rule 56.1 Statement ¶
> 23)

**\*2** Plaintiffs did not fill out timesheets. (Ecolab Rule
56.1 Statement ¶ 11) However, they were required to fill
out "Edge Reports" that identified customers served each
day. (Id.)

Masson states that he had about 115 to 130 customers on
his route, and on average made between eight and 10
service calls per day. (Ex. 3 to Affidavit of Tara Bern-
stein ("Bernstein Aff.")) Hester served 156 customers,
and on average made 45 service calls per week. (Ex. 4 to
Bernstein Aff.) He made an additional 10 to 12 service
calls every third weekend. (Id.) Duffie states that "the

number of customers on [his] route fluctuated between about 110 and 180, depending on the time period" and that during an average week, would make 45 service calls. (Ex. 5 to Bernstein Aff.) Like Hester, he made about 15 additional service calls every third weekend. (*Id.*)

According to Ecolab, when customers needed equipment or other products from Ecolab, plaintiffs ordered the products from Ecolab's manufacturing facilities located outside Georgia, most often from Beloit, Illinois. (Ecolab Rule 56.1 Statement ¶ 41) The products were shipped either to each customer's location or to the Route Manager's home address. (Lewis Aff. ¶ 48)

Ecolab has submitted lists of products ordered by plaintiffs during their employment with Ecolab that show most orders were shipped to plaintiffs' homes. (Ex. C to Lewis Aff.) For example, the first entry, Order Number 299402, indicates that Masson ordered four items on May 3, 2004 from the Beloit, Illinois facility. (*Id.*) These items were shipped to Masson's home in McDonough, Georgia. (*Id.*) In contrast, the second entry lists "A & A Steakhouse" as the customer and the location where the item was shipped. (*Id.*) The lists show a total of 605 orders by Masson, 473 by Duffie, and 114 by Hester.[FN2]

> **FN2.** Duffie's list encompasses his orders from December 2002 through December 2003; Ecolab claims that it does not have any ordering records for the first eight months of Duffie's employment with Ecolab, but that those available "can be used as an accurate estimate of the type and frequency of orders during the first eight months of his employment." (Lewis Aff. ¶ 45)

According to Gilbert Lewis, a former Area Route Manager for the Southeast Area of Ecolab's Institutional Division,[FN3] "some of the equipment and products that were ordered by Plaintiffs and shipped directly to their homes were for use as truck stock, while other equipment and products were for specific customers." (Ecolab Rule 56.1 Statement ¶ 49; Lewis Aff. ¶ 52) Separate lists submitted by Ecolab show which orders, according to Lewis, were shipped to plaintiffs' homes pursuant to specific customer orders as opposed to orders to fill plaintiffs' inventory. (Ex. 3 to Lewis Aff .) Of such orders 64 are attributed to Masson, 242 to Duffie, and 13 to Hester. (*Id.* ¶¶ 53-55) Lewis stated also that "[b]ecause any of Plaintiffs' customers could, at any time, require replacement parts or products, Plaintiffs could be called upon to transport a shipment of goods in interstate commerce at any time." (*Id.* ¶ 61)

> **FN3.** Within each Ecolab region, the hierarchy and reporting structure is as follows: Route Managers report to a Route Supervisor; the Route Supervisor to an Area Route Manager; the Area Route Manager to the Area Manager; and the Area Manager to the Vice President of Sales, who is located at Ecolab's corporate headquarters in St. Paul, Minnesota. (Lewis Aff. ¶ 9)

Lewis "was able to identify which products and equipment were customer specific orders based on [his] approximate ten years of experience working in the Institutional Division [the Division in which Plaintiffs were employed], in various supervisory positions." (Lewis Supplemental Aff. ¶ 4) He cites three examples. The first "customer-specific item listed for [ ] Masson ... is one of Ecolab's dispensing systems" for certain detergents and sanitizers. (*Id.* ¶ 5) Lewis claims that the dispenser "would not be a dispenser [ ] Masson would have kept as truck stock" and that "[i]t was probably ordered because" one such dispenser "that a customer was using malfunctioned." (*Id.*) Moreover, according to Lewis, "Route Managers do not keep dispensers as truck stock, nor do they have large enough trucks that would enable them to do so." (*Id.*)

**\*3** The second example is "a solid rinse additive" that Lewis surmises "was likely ordered for a specific customer as a means to improve customer relations because a dispenser malfunctioned." (*Id.* ¶ 6) The third item, a dishwasher motor, is "too heavy to keep as truck stock." (*Id.* ¶ 7) Lewis noted also that chemical products are not kept as truck stock. (*Id.* ¶ 6)

Plaintiffs contend that they have not had adequate opportunity to discover how these lists were compiled. In any event, plaintiffs state that they kept an inventory of products and equipment needed to maintain and repair customers' dishwashing machines. (Ex. 3 to Bernstein Aff. ¶ 4; Ex. 4 to Bernstein Aff. ¶ 4; Ex. 5 to Bernstein Aff. ¶ 4) Masson and Duffie kept inventory in their trucks and homes (Ex. 3 to Bernstein Aff. ¶ 4; Ex. 5 to Bernstein Aff. ¶ 4); Hester states that he kept inventory in his truck. (Ex. 4 to Bernstein Aff. ¶ 4) Plaintiffs claim that they ordered new inventory to be sent directly to their homes so that they could restock whenever they used a part on a service call or when inventory ran low. (Exs. 3-5 to Bernstein Aff. ¶ 4) Hester states that he never ordered products for specific customers to be sent to his home and that such products were sent directly to the customer. (Ex. 4 to Bernstein Aff. ¶ 4) Masson claims that "[o]nly under extraordinary circumstances would [he] order a part for a specific customer delivered di-

rectly to [him]" instead of to the customer. (Ex. 3 to Bernstein Aff. ¶ 4) Upon his "information and belief," such deliveries "occurred only 10 times in the entire time [he] worked for Ecolab," constituting "approximately 0.4 % of [his] service calls." (*Id.*) Duffie remembers "two instances that a product or equipment for a specific customer was delivered directly to [his home address]," constituting "approximately 0.04 % of the calls that [he] made." (Ex. 5 to Bernstein Aff. ¶ 4)

From some customers, the three plaintiffs picked up checks payable to Ecolab for services, parts, or equipment, either because the customer preferred to pay the Route Manager or because the customer's payment was late or the account not fully paid. (Ecolab Rule 56.1 Statement ¶ ¶ 22, 30, 39) Ecolab claims that on each such occasion, the Route Managers delivered the customer check to a local post office or the local Ecolab office for mailing to North Carolina where Ecolab collects and processes the checks. (*Id.* ¶ ¶ 22, 30, 39) Ecolab states also that none of the checks were processed at the local office in Georgia and that customer invoices "specifically state that payment must be sent to Charlotte, North Carolina." (Supplemental Affidavit of Gilbert Lewis ("Lewis Supplemental Aff.") ¶ 8)

Masson claims that he picked up checks from customers only about three times per week and "typically deliver[ed] [them] to Ecolab's local office in Georgia." (Pls.' Rule 56.1 Response ¶ 22) He gave the checks to his supervisor or another repairman to bring back to the local office. (*Id.*) Only about two or three times per month did he mail a customer's check himself. (*Id.*) Duffie claims that he picked up checks from customers approximately once in every 45 service calls as payment on overdue accounts. (*Id.* ¶ 30) He "almost always delivered the check to his supervisor" and "remembers only two occasions when he mailed a customer's check" himself. (*Id.*)

**\*4** Hester participated in an Ecolab pilot program referred to as the "Atlanta Delivery Model," from December 2003 to July 2004. (Ecolab Rule 56.1 Statement ¶ 38) Under this program, Ecolab itself shipped products to a warehouse in Georgia, instead of using a third party carrier such as the United Parcel Service. (*Id.*) According to Ecolab, Hester then would pick up a product from the warehouse and deliver it to the customer. He collected a check from the customer and delivered it to a local post office, where it was mailed to an Ecolab office in North Carolina. (*Id.*) Hester claims that under the program, he picked up products from the warehouse to store on his truck and distribute to customers as they needed them—*i.e.,* as inventory, and that "[a]ny checks he picked up from customers were not for the specific products, but

for payment on the customer's account." (Pls.' Rule 56.1 Response § 38) In addition, as part of the pilot program, he claims that he "ordinarily went to the local Ecolab office each work day and delivered any checks he received from customers at that time." (*Id.*)

Before Hester participated in the pilot program, "a substantial part of his customers did not ask him to accept checks" and of the times he did pick up checks from customers, he remembers only two occasions when he mailed them. (*Id.* ¶ 39) He delivered all of the other checks to the local Ecolab office in Georgia. (*Id.*)

Plaintiffs claim that they regularly worked more than 40 hours per week for Ecolab and that Ecolab failed to pay them overtime compensation at the rate of time and one-half for all hours worked over 40. (Compl. ¶ ¶ 16-17; Declaration of Troy Masson dated 2/15/05 ("Masson Decl.") ¶ ¶ 7, 9; Declaration of Justin Duffie dated 2/15/05 ("Duffie Decl.") ¶ ¶ 8, 10); Declaration of Claude Gerald Hester, Jr. dated 2/16/05 ("Hester Decl.") ¶ ¶ 7, 9) Ecolab admits that it did not pay Masson overtime at the one and one-half rate. (Ex. D to Pls.' Brief (Ecolab Answer) ¶ 17) Moreover, Ecolab admits that "it does not pay time-and-one-half overtime premium to salaried employees." (*Id.* ¶ 8)

Masson filed the instant complaint on June 15, 2004, suing for a declaration that Ecolab violated the FLSA willfully, and for damages in the amount of unpaid overtime wages as well as liquidated damages. On October 25, 2004, Hester filed a consent form "opting in" to the lawsuit. (Ex. 1 to Affirmation of Marc Wenger ("Wenger Aff.") Duffie did the same on November 5, 2004. (*Id.*)

II.

Congress' goal in enacting the FLSA was "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)). Section 207 of the FLSA provides that covered employees who work more than 40 hours in a workweek shall be paid at least one and one-half times their regular pay rate for those hours worked above 40 hours. *See* 29 U.S.C. § 207(a)(1).

**\*5** Three years before passing the FLSA, Congress enacted the Motor Carrier Act of 1935 ("MCA"). The purpose of the MCA was to promote efficiency, economy, and safety in the motor transportation industry and, to

help achieve that purpose, the MCA gave the Interstate Commerce Commission ("ICC") the authority to regulate the maximum hours of work for employees of "common carriers" and "contract carriers" by motor vehicle. The MCA also gave the ICC similar regulatory authority over employees of "private carriers" by motor vehicle if the ICC concluded that such regulation was necessary to promote safety on the nation's roadways. *See Friedrich v. U.S. Computer Servs., 974 F.2d 409, 412 (3d Cir.1992).* These regulatory powers have been transferred since from the ICC to the Department of Transportation ("DOT"). *See id.*

So that the overtime provisions of the FLSA and MCA do not overlap or interfere with each other, those employees whose working hours are regulated by the DOT are exempt from the FLSA's requirements. *See* 29 U.S.C. § 213(b)(1) (FLSA overtime requirements "shall not apply with respect to ... any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 ....") (hereafter referred to as "motor carrier exemption"). The exemption applies to employees over whom the Secretary of Transportation has jurisdiction regardless of whether he has actually exercised his power as to those employees. *See* 29 C.F.R. § 782.1(a) (2004); *Bilyou v. Dutchess Beer Distrib., Inc., 300 F.3d 217, 222 (2d Cir.2002).*

Pursuant to his authority under the MCA, the "Secretary of Transportation may prescribe requirements for ... qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation." 49 U.S.C. § 31502(b)(2). For the motor carrier exemption to apply, the employee's activities first must "affect the safety of operation of motor vehicles engaged in such transportation." *Morris v. McComb, 332 U.S. 422, 439 (1947).* Second, in this case, the employer must be a "private motor carrier," which is defined as

a person, other than a motor carrier, transporting property by motor vehicle when-
(A) the transportation is as provided in section 13501 of this title;
(B) the person is the owner, lessee, or bailee of the property being transported; and
(C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

49 U.S.C. § 13102(13).[FN4] Section 13501 gives the Secretary of Transportation jurisdiction over transportation by private motor carrier if passengers or property are transported by such carrier

[FN4.] A "private motor carrier" is different from a "motor carrier" or "common carrier," which is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(12).

(1) between a place in-
(A) a State and a place in another State;
(B) a State and another place in the same State through another State....

**\*6** 49 U.S.C. § 13501.

Section 13501 has been interpreted to cover intrastate transportation of property that is part of a " 'practical continuity of movement' in the flow of interstate commerce." *Bilyou v. Dutchess Beer Distrib. Inc., 300 F.3d 217, 223 (2d Cir.2002)* (quoting *Walling v. Jacksonville Paper Co., 317 U.S. 564, 568 (1943)).* Put another way, if the shipper's "fixed and persisting transportation intent at the time of [interstate] shipment" was to deliver an item to a specified customer who had ordered the item, regardless of whether it was stored temporarily intrastate, the motor carrier exemption applies. *Id. at 223-24; see also McGuiggan v. CPC Int'l, Inc., 84 F.Supp.2d 470, 483 (S.D.N.Y.2000)* (motor carrier exemption applied to drivers who delivered English muffins, baked out-of-state, to intrastate customers pursuant to specific orders). On the other hand, the exemption does not apply where items are delivered from out of state to an intrastate location, such as a warehouse, for future delivery to customers yet to be identified. In other words, the exemption is inapplicable where the final destination of any shipment is not decided "until after the goods had come to rest in the warehouse." *Southern Pac. Transp. Co. v. Interstate Commerce Comm'n, 565 F.2d 615, 618 (9th Cir.1977).*

III.

Ecolab argues that plaintiffs' job activities at Ecolab satisfied the motor carrier exemption in two ways: through (i) plaintiffs' transport of equipment and parts pursuant to specific customer orders; and (ii) plaintiffs' handling of customer checks. The issues related to equipment and parts are addressed immediately below; those related to checks are addressed in Section IV.

The motor carrier exemption, like all exemptions to the FLSA, is "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960).*

Ecolab bears the burden of proving that the exemption applies. *See Bilyou, 300 F.3d at 222*. Because "the exemption depends ... upon the activities of the individual employees," Ecolab must present evidence as to "the character of the activities involved in the performance" of each plaintiff's job in order to determine whether Ecolab owes individual employees overtime compensation. *Goldberg v. Faber Indus., Inc.,* 291 F.2d 232, 235 (7th Cir.1961). Hence, the activities of one or a few plaintiffs cannot justify a blanket exemption as to all plaintiff-employees.

Similarly, the activities of a plaintiff in one workweek do not always determine that plaintiff's exempt status for his entire period of employment. On the one hand, if the employee is or "is likely" to be "called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities," he falls under the exemption "in all workweeks when he is employed at such job ... regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek." 29 C.F.R. § 782.2(b)(3). In such cases, "the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting 'safety of operation.' " *Id.*

**\*7** On the other hand, the exemption does not apply to an employee's entire term of employment if the "continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, or insignificant as to be de minimis." *Id.* For such employees, "[i]f in particular workweeks other duties are assigned to him which result, in those workweeks, in his performance of activities directly affecting the safety of operation of motor vehicles in interstate commerce on the public highways, the exemption will be applicable to him those workweeks, but not in the workweeks when he continues to perform the duties of the non-safety-affecting job." *Id.* The Department of Labor recognizes that an employee's exempt status may vary from week to week if the employer shifts the employee "from one job to another periodically or on occasion." *Id. § 782.2(b)(4)*. Hence, the only way to determine the overtime compensation owed to an employee is to examine the job duties of the employee for each week of employment.

As to Ecolab parts and equipment, plaintiffs do not dispute that Ecolab is a "person ... transporting property by motor vehicle" and thus a "private motor carrier." Nor is it contested that Ecolab is "the owner ... of the property being transported" and that "the property is being transported for sale ... or to further a commercial enterprise."

49 U.S.C. § 13102(13).

It is undisputed also that any intrastate transport by plaintiffs of equipment or parts ordered for specific customers constitutes "interstate commerce" for purposes of the motor carrier exemption. However, the parties disagree as to how much of plaintiffs' intrastate activities were of this character, and whether this quantum of activities was sufficient to bring plaintiffs under the DOT's jurisdiction.

Plaintiffs insist that, even if deliveries of items ordered by specific customers involve interstate commerce, the motor carrier exemption should not apply here because Ecolab has failed to prove that these deliveries constituted more than a de minimis portion of plaintiffs' job responsibilities. *See Pyramid Motor v. Ispass,* 330 U.S. 695, 708 (1947) (remanded with instructions that if the mere handling of freight before loading formed a "trivial, casual or occasional a part of an employee's activities," and hence did not affect the safety of operation, then the activity would not serve to bring the employees under the motor carrier exemption).

In determining whether an employee's activities have a "substantial direct effect" on the safety of motor vehicle operation in interstate commerce and if so, whether such activities are de minimis, it is important to focus on "the character of the activities rather than the proportion of either the employee's time or of his activities." *Levinson v. Spector Motor Serv.,* 330 U.S. 649, 674-75 (1947). The underlying concern is "the actual need for the [Secretary of Transportation]'s power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment." *Id.* In *Crooker v.. Sexton Motors, Inc.,* 469 F.2d 206, 210 (1st Cir.1972), the First Circuit observed:

**\*8** The de minimis rule has been applied ... where the employee's connection with anything affecting interstate motor carrier operations was so indirect and casual as to be trivial.... The activities of one who drives in interstate commerce, however frequently or infrequently, are not trivial. Such activities directly affect the safety of motor vehicle operations.

(citation omitted). Based on *Crooker* and other cases, Ecolab argues that the de minimis rule does not apply to drivers, regardless of how insignificant or infrequent their safety-affecting interstate activities are. *See also Badgett v. Rent-Way, Inc.,* 350 F.Supp.2d 642, 654 (W.D.Pa.2004); *Walton v. Louisiana Compressor Maint.,* No. 96-2156, 1997 WL 129393, at *3 (E .D. La. Mar. 19, 1997); *Brennan v. Cardinal Indus., Inc.,* No. 74-563, 1976 WL 1720, at *3-4 (S.D.Ohio Mar. 8, 1976).

Although the de minimis rule has limited applicability to

drivers for the reasons stated by the First Circuit in *Crooker,* no court has adopted Ecolab's blanket proposition. Even in *Crooker,* the First Circuit, while remanding the case to the district court for a week-by-week determination of whether overtime was due to the driver-plaintiffs, recognized that the motor carrier exemption did not relieve an employer of all FLSA overtime obligations if driving in interstate commerce was not a regular and expected part of an employee's duties. *See* 469 F.2d at 210-11. To extend the motor carrier exemption to any driving activity, no matter how infrequent or trivial, would be to encourage employers to send their employees on a minimal number of interstate trips simply to avoid the overtime compensation provisions of FLSA.

Instead, where "the employer's interstate activities affecting the safety of interstate motor operations are de minimis," the employer's exemption from FLSA requirements under the MCA "consequently fades." *Peraro v. Chemlawn Servs. Corp.,* 692 F.Supp. 109, 114 (D.Conn.1988). Moreover, the cases relied on by Ecolab involved drivers' transport of property across state lines, as well as the "reasonable expectation" that drivers could be called on to drive across state lines. *Crooker,* 469 F.2d at 210 (driver made trips from New Hampshire to Massachusetts); *Badgett,* 350 F.Supp.2d at 654 (drivers "could have been called upon in the regular course of their employment to make trips affecting interstate commerce," including ones from Pennsylvania to Ohio); *Walton,* 1997 WL 129393, at *2-3 (plaintiff driver drove out of state regularly); *Brennan,* 1978 WL 1720, at *4-6 (interstate routes assigned indiscriminately among pool of drivers). It was this activity that courts deemed "not trivial," because it "directly" affected employers' interstate motor vehicle operations, *Crooker,* 469 F.2d at 209, and fell "plainly and unmistakably within [the] terms and spirit" of the motor carrier exemption. *Arnold,* 361 U.S. at 392; *see also* 49 U.S.C. § 13501 (DOT has jurisdiction over transport "between a place in a State and ... a place in another State"). The same has not and cannot be said about wholly intrastate trips. Driving in interstate commerce alone does not trigger the motor carrier exemption. Such driving, however frequent, must have been an expected and regular part of an employee's job duties.

**\*9** Hence, determining the "character" of interstate driving involves a fact-specific analysis, including an examination of the method by which the employer assigns the interstate activity to the pertinent class of employees, the nature of the employer's business, and perhaps to a lesser degree, the proportion of interstate-to-intrastate employee activity. In *Morris v. McComb,* the Supreme Court held that although only 3.65 percent of the total trips made by the drivers of a general carriage business were out of state, the carrier was exempt from the overtime provision of the FLSA as to all drivers and certain mechanics. *See* 332 U.S. at 433. The Court based its decision on a few key characteristics of the carrier's regular operations. First, the carrier did not distinguish the interstate and intrastate routes and assigned the routes indiscriminately to all its drivers; hence, individual drivers at any time could be called on to drive across state lines. A closer look at the statistics revealed that each driver's interstate travel was more significant than was suggested by the 3.65 percent figure. Approximately one-quarter of all of the drivers made at least one interstate trip in each week of the relevant time period. There was a six-week period in which more than half the drivers made an out-of-state trip. Throughout the year, all but two of the drivers made at least one interstate trip. Finally, the Court found the general nature of the carrier's business significant: the carrier offered "to serve the normal transportation demands of the shipping public in an industrial metropolitan center [Detroit, Michigan].... If the common carrier is required, by virtue of that status, to take this interstate business he must perform the required service in accordance with the requirements established by the [Interstate Commerce] Commission." *Id.* at 434. In sum, the interstate trips were "a natural, integral and apparently inseparable part of the common carrier service of the petitioner and his drivers." *Id.* at 433.

In light of *Morris,* courts faced with determining the applicability of the motor carrier exemption to drivers focus on the route-assignment procedure. For example, in *Brennan,* a carrier was held exempt from paying any of its drivers overtime compensation because the carrier assigned its drivers indiscriminately to interstate routes, although less than one percent of the drivers' total travel time involved the interstate routes. *See* 1978 WL 1720, at *4-6. Similarly, in *Griffin v. Consol. Foods Corp.,* the Fourth Circuit found the motor carrier exemption applicable to all of the employer's sales representatives because the representatives were indiscriminately reassigned to the sales circuits semi-annually. *See* 771 F.2d 826, 828-29 (4th Cir.1985).

In contrast, the Seventh Circuit in *Goldberg v. Faber Indus., Inc.,* held that the defendant was required to pay overtime compensation to 15 of its drivers who, unlike five other drivers, never traveled interstate on the defendant's behalf. *See* 291 F.2d at 235. The Court refused to grant a blanket exemption to the entire class of drivers because, except during absences, each driver was specifically assigned to a route. *Id.* The defendant failed to prove that any driver regularly assigned to an intrastate route ever drove an interstate route. *Id.*

**\*10** Over all, the de minimis rule has been held to apply

to drivers who, as a class, spent less than one percent of their time traveling across state lines and were not in the regular course of their employment expected to drive across state lines. *Compare Kimball v. Goodyear Tire and Rubber Co., 504 F.Supp. 544, 549 (E.D.Tex.1980)* (no blanket exemption for defendant company where 0 .17 percent of total trips made by drivers were interstate, many drivers had never made interstate trips, and routes were assigned based on seniority); *Coleman v. Jiffy June Farms, Inc., 324 F.Supp. 664, 670 (S.D.Ala.1970)* (drivers were not subject to the motor carrier exemption where employer was involved in carriage "only as an incident of [its] poultry processing business," only 0 .23 percent of the activity was interstate, loads carried were light, and interstate deliveries were to a location on the state border); *with Turk v. Buffets, Inc., 940 F.Supp. 1255, 1261 (N.D.Ill.1996)* (holding that motor carrier exemption applied where more than one percent of plaintiff drivers' driving was out of state and drivers could expect to drive across state lines). [FN5]

---

**FN5.** Plaintiffs cite also a similar lawsuit brought against Ecolab in the Middle District of Florida, where the Court "decline[d] to agree with [Ecolab] that the 1% of Plaintiff's orders, which are specifically requested for a customer, is sufficiently similar to cases in which the vast majority of orders were specific to a customer need." *Neely v. Ecolab, Inc.,* No. 03-597-J-20, slip op. at 5 (M.D. Fla. June 22, 2004). The plaintiffs in that case were "Sales/Service Route Specialists" and as described by the Court, performed duties similar to those performed by Masson, Duffie, and Hester. *Id.* at 1-2. That case has since settled. *See Neely v. Ecolab, Inc.,* No. 03-597-J-20 (M.D.Fla. Sept. 21, 2004) (order dismissing case upon settlement).

Ecolab has submitted a Department of Labor "Compliance Action Report" that it claims applies to the plaintiffs in *Neely.* That Report found the motor carrier exemption applicable to Sales/Service Route Specialists employed in Ecolab's Puritan Services Division because (i) 71.5 percent of those employees were assigned to multi-state "territories"; (ii) they regularly delivered items ordered for specific customers but shipped initially to the employees' homes; and (iii) all such employees were likely to cross state lines as part of weekend "on call" duties. ("WHISARD Compliance Action Report," Case ID 1393313 (attached to letter from Jeffrey Brecher to court dated 8/2/2005)) Whether the above Report does or should apply to plaintiffs in this case, who were Route Managers in Eco-

lab's Institutional Division, cannot be determined on the current record.

In this case, the parties' affidavits leave factual issues as to what portion of plaintiffs' service calls were at least in part deliveries of customer-specific product orders. According to Lewis, approximately 10 percent of Masson's orders, more than half of Hester's, and approximately 11 percent of Duffie's were such service calls.

Masson avers that only 10 such orders were shipped to his home, and that delivery of such orders constituted 0.4 percent of his service calls. Duffie recalls only two such orders as part of his employment. Hester asserts that the only products shipped to his home address were for his inventory and that he did not order any items for specific customers to be sent directly to his home.

However, the frequency of such orders is not dispositive. Also important is whether, or to what extent, certain orders were made with particular customers in mind and sent to plaintiffs' homes in anticipation of having to meet a particular customer's future needs. In *Walling v. Jacksonville Paper Co.,* the Supreme Court considered such circumstances when it formulated the following framework for determining whether intrastate movements are "interstate" for purposes of the motor carrier exemption: The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey. A temporary pause in their transit does not mean that they are no longer 'in commerce' within the meaning of the Act.... [I]f the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points. Then there is a practical continuity of movement of the goods until they reach the customers of whom they are intended. That is sufficient. Any other test would allow formalities to conceal the continuous nature of the interstate transit which constitutes commerce.

**\*11** 317 U.S. at 568. The Court envisioned three circumstances when goods were brought from out of state but sold and distributed to customers within the state:

i) Goods purchased by the wholesaler or distributor upon order of a customer with the definite intention that they be carried at once to the customer;

ii) Goods obtained by the wholesaler or distributor to meet the needs of specified customers pursuant to an "understanding," contractual or otherwise, although not for immediate delivery; and

iii) Goods based on anticipation of customer need, rather

than upon prior orders or contracts.

The Court held that the goods in the first two categories remain in interstate commerce until the time they are delivered to the retail customers. Goods in the third category could be held to remain in interstate commerce only when there is a "particularity" of evidence relating to a product and a customer, as opposed to "goods acquired and held by a local merchant for local disposition" to the general public. *Id.* at 570; *see also Foxworthy v. Hiland Dairy Co., 997 F.2d 670, 673 (10th Cir.1993); Middle West Motor Freight Bureau v. Interstate Commerce Comm'n, 867 F.2d 458, 460 (8th Cir.1989).* Whether any of the orders shipped to plaintiffs' addresses falls under any of the above categories cannot be determined at this stage.

There remain factual issues also as to whether plaintiffs could have been called on to cross state lines during their employment. Although Ecolab claims that 17 percent of its Route Managers are assigned to multi-state routes, it has not established or even suggested that out-of-state service calls were assigned indiscriminately among drivers such that plaintiffs could be "reasonably expected" to travel interstate as part of their jobs. *See Goldberg, 291 F.2d at 234* (motor carrier exemption inapplicable to certain employees because the parties had stipulated that the subject employees who were assigned to intrastate routes could not reasonably be expected to handle interstate runs in the normal course of their duties).

Likewise, it is disputed at this stage whether it was only under "extraordinary" circumstances (Ex. 3 to Bernstein Aff.) that plaintiffs ordered items for specific customers and then delivered them, or "likely" that they could be "called upon in the ordinary course of [their] work" to do so. *29 C.F.R. § 782.2(b)(3); see also Badgett, 350 F.Supp.2d at 657-58.* At least as to plaintiffs' service calls, Ecolab fails to establish that plaintiffs were engaged in the kind and extent of activities that fall under the motor carrier exemption. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir.1998)* (on summary judgment motion, ambiguities and all reasonable factual inferences must be drawn in favor of non-movant).

IV.

Ecolab argues also that the motor carrier exemption applies to plaintiffs' handling of customer checks. Because the checks were bound ultimately for Charlotte, North Carolina to be processed, Ecolab contends that plaintiffs' carrying of the checks constitutes the requisite participation in interstate commerce for purposes of the motor

carrier exemption.

**\*12** The DOL's Wage and Hour Division Field Operations Handbook provides that as to private motor carriers, "where the transportation of property is incidental to a trip and not the primary purpose," such transportation does not fall under the jurisdiction of the Secretary of Transportation. (Ex. 6 to Bernstein Decl.) The Handbook illustrates that an employee "would not be considered as engaged in transporting property for purposes of the Motor Carrier Act because of an arrangement to drive by the post office on his way to or from work to pick up or deliver his employer's interstate mail...." (*Id.*)

Although the DOT is not bound by the DOL's interpretation of the DOT's authority under the motor carrier exemption, the DOL's distinction is persuasive, particularly in the absence of contrary authority. It recognizes that a private motor carrier's primary business typically will involve something other than carriage. Such is the distinction between this case and *Baez v. Wells Fargo Armored Serv. Corp., 938 F.2d 180 (11th Cir.1991)*, on which Ecolab relies in arguing that the transportation of checks places plaintiffs within the motor carrier exemption. In *Baez,* the Eleventh Circuit held that armored truck guards employed by a contract carrier who picked up checks and other monetary instruments from Miami area financial institutions, but traveled only intrastate, fell under the motor carrier exemption because the instruments were bound for banks outside the state of Florida. *Id.* at 181-82. However, the employer's business in *Baez* was carriage; transportation of the checks was the primary purpose of the employees' trips.

The Third Circuit's reasoning in *Friedrich* is instructive as well. The plaintiffs in that case were field engineers employed by a company that provided computer hardware and software installation, maintenance, and repair services. They routinely crossed state lines in the course of their duties, carrying with them a tool kit, replacement parts, and other equipment. The Court acknowledged that the MCA does not define property and that "it is arguable that the tools, parts, and equipment the plaintiffs transported were so trivial or insubstantial that they did not constitute property within the meaning of the MCA." *974 F.2d at 417.* However, the Court concluded that because transportation of those items "was an independent and essential reason for their service trips"-in that the employees could not have performed their primary duties without them-the tools, parts, and equipment "constituted property within the meaning of the MCA." *Id.*

Even adopting the Third Circuit's "broad construction" of the term "property" as used in the MCA, *Gonzales v. New England Tractor Trailer Training School, 932*

F.Supp. 697, 700-701 (D.Md.1996) (describing *Friedrich* ), it has not been demonstrated that plaintiffs' handling of customer checks, on its own, relieves Ecolab of its FLSA overtime obligations. Plaintiffs claim that their primary duties were preventive maintenance and repair of commercial dishwashing machines leased to customers by Ecolab. Although transport of Ecolab equipment and parts may have been necessary to execute those duties, as in *Friedrich,* the same cannot be said of plaintiffs' pick-up and delivery of customer checks. Ecolab has not demonstrated that the handling of customer checks is anything more than a minor, non-essential part of plaintiffs' duties as Route Managers, especially where it appears that with a few exceptions, customers themselves mailed their payments to Ecolab's processing office in North Carolina.

**\*13** Construing the motor carrier exemption narrowly and strictly against Ecolab, plaintiffs' handling of customer checks does not fall "plainly and unmistakably within the [exemption's] terms and spirit." *Arnold,* 367 U.S. 392.

Accordingly, Ecolab's motion for summary judgment is denied.

### V.

Section 216(b) of FLSA authorizes an employee to sue his employer for unpaid overtime compensation and liquidated damages on behalf of himself and other employees "similarly situated." 29 U.S.C. § 216(b). In order for an employee to "opt in" to the lawsuit and become a party plaintiff, he must file a written consent. *Id.* A court has the discretion to authorize notification to "similarly situated" potential plaintiffs and to direct an employer defendant to disclose the names and addresses of those parties. *See* Patton v. The Thomson Corp., 364 F.Supp.2d 263, 266 (E.D.N.Y.2005) (citing *Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989)). Sending a collective action notice to similarly situated individuals "comports with the broad remedial purpose of the [FLSA], ... as well as with the interest of the courts in avoiding multiplicity of suits." Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335, 336 (2d Cir.1979); *see also* Hoffman v. Sbarro, Inc., 982 F.Supp. 249, 262 (S.D.N.Y.1997) ("[C]ourts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management.")

The class action requirements of Fed.R.Civ.P. 23 do not apply to the approval of a collective action under the FLSA, and thus "no showing of numerosity, typicality,

commonality and representativeness need be made." Foster v. Food Emporium, No. 99-3860, 2000 WL 1737858, at \*1 (S.D.N.Y. Apr. 26, 2000). Instead, approval of a collective action under the FLSA involves a two-step inquiry. *See, e.g.,* Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.Supp.2d 91, 96 (S.D.N.Y.2003); Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir.1995). In the first step, the court examines the pleadings and affidavits of the proposed collective action and determines whether the proposed class members are "similarly situated." *See* Mooney, 54 F.3d at 1213-14. If they appear to be, the court "conditionally certifies" the class. *Id.* Putative class members are given notice and the opportunity to "opt in" and the action proceeds as a representative action through discovery. *Id.*

In this early phase, courts employ a relatively lenient evidentiary standard in determining whether a collective action is appropriate. "The inquiry at the inception of the lawsuit is less stringent than the ultimate determination that the class is properly constituted." Jackson v. New York Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y.1995). Plaintiffs meet this burden by "making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Hoffman, 982 F.Supp. at 261. The court must determine whether there is a "factual nexus between the [named plaintiff's] situation and the situation of other current and former [employees]." Id. at 262; *see also* Patton, 364 F.Supp.2d at 268 (authorization of notice "does not prejudice the defendants precisely because it is preliminary ... [and] may be revisited if it later appears, after appropriate discovery, that the additional plaintiffs ... are not similarly situated to [the named plaintiff]"). Hence, the merits of plaintiffs' claims need not be evaluated nor discovery be completed in order for such a notice to be approved and disseminated. *See* Hoffman, 982 F.Supp. at 262.

**\*14** "The second phase of an FLSA collective action inquiry occurs after discovery is largely complete and 'is typically precipitated by a motion for "decertification" by the defendant." ' Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 264 (D.Conn.2002) (quoting Mooney, 54 F.3d at 1214). At that stage, the "similarly situated" issue must be revisited, based on the record produced through discovery. If it is found that the claimants are similarly situated, the collective action may proceed to trial. If the claimants are not similarly situated, the court decertifies the collective action, and the claims of the opt-in plaintiffs are dismissed.

In this case, the three named plaintiffs worked as Route Managers for Ecolab. Their primary duties were repair

and preventive maintenance of commercial dishwashing machines. They routinely worked more than 40 hours per week for Ecolab, were paid weekly salaries, but were not compensated for any time over 40 hours per week. (Ex. A to Pls.' Brief in Support of Motion for Collective Action Notice (Declarations of Troy Masson, Justin Duffie, and Claude Gerald Hester, Jr.)) All three declare "upon information and belief" that other Ecolab Route Managers were denied the same compensation. (*Id.*) Ecolab admits that Masson was not paid time-and-a-half overtime. (Ecolab Answer ¶ 17) Moreover, Ecolab admits that "it does not pay time-and-one-half overtime premium pay to salaried employees." (*Id.* ¶ 8)

"Substantial allegations by plaintiffs that defendants' actions violated the FLSA, as well as an admission by defendants that such actions reflect a company-wide policy, sufficiently demonstrate a factual nexus between plaintiffs' situation and other potential class members, and therefore, will support a finding that plaintiffs and class members are similarly situated for purposes of sending an FLSA notice." *Ayers v. SGS Control Servs., Inc.,* No. 03-9078, 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004) (citing *Hoffman,* 982 F.Supp. at 261-62). Whatever the merits of plaintiffs' claims, the above allegations and admissions are sufficient to satisfy plaintiffs' burden at this stage of the litigation. *See Legrand v. Educ. Mgmt. Corp,* No. 03-9798, 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004) (three named plaintiffs not paid overtime and were told by management of defendant company that defendant's employees across the country also had to work over 40 hours per week without overtime pay); *Foster,* 2000 WL 1737858, at *2 (four named plaintiffs were hourly employees at defendant's food stores, worked through lunch breaks without being paid, worked past time that they punched time cards, and worked on Sundays without being paid double time).

Ecolab argues that issues individual to putative class members predominate and render a collective action notice inappropriate. With regard to the motor carrier exemption, Ecolab foresees extensive discovery as to (i) which Route Managers crossed state lines as part of their routes; (ii) how often they crossed state lines; (iii) for those with solely intrastate routes, what portion of their service calls included customer-specific deliveries; and (iv) whether a Route Manager assigned to an intrastate route could have expected at times to make an interstate trip.[FN6]

       FN6. In its brief opposing plaintiffs' motion to approve collective action notice, Ecolab argues that certain potential plaintiffs may be subject to what has been termed the "outside sales exemp-

tion" to the FLSA's overtime requirement. 29 U.S.C. § 213(a)(1). Section 213(a)(1) provides that the FLSA's overtime provisions "shall not apply with respect to ... [a]ny employee employed ... in the capacity of outside salesman...." According to a Department of Labor regulation, an employee "is employed in the capacity of outside salesman" if he

(a) ... is employed for the purpose of and [ ] is customarily and regularly engaged away from his employer's place or places of business in:

(1) Making sales within the meaning of [29 U.S.C. § 203(k) ], or

(2) Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(3) Whose hours of work of a nature other than described in paragraph (a)(1) or (2) of this section do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer ... provided, that work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.

29 C.F.R. § 541.5 (amended Aug. 23, 2004). Section 203(k) defines "sale" to include any "sale, exchange, contract to sell, consignment sale, shipment for sale, or other disposition."

On August 23, 2004, the regulation was amended to provide:

(a) The term "employee employed in the capacity of outside salesman" ... shall mean any employee

(1) Whose primary duty is

(i) making sales within the meaning of [29 U.S.C. § 203(k) ], or

(ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.5 (as amended). Ecolab contends that because the individuals plaintiffs seek to include in the collective action were employed before and after the date of the regulation's amendment-August 23, 2004-both versions of the "outside salesman" exemption must be applied and that such individualized inquiry militates against approval of a collective action. Like factual questions raised by the motor carrier exemption, application of the "outside salesman" exemption bears on the merits of each plaintiff's claim. Where the parties have

barely addressed the exemption and little, if any discovery has been conducted on the issue, factual issues raised by the "outside salesman" exemption do not render a collective action inappropriate at this stage.

**\*15** There are issues also as to how many Route Managers, like Hester, participated in the Atlanta Delivery Model pilot program. Hester claims that under the program, he retrieved products from a Georgia warehouse-as opposed to having them shipped to his or a customer's home-to store on his truck and distribute to customers when needed. However, these issues bear on the applicability of the motor carrier exemption to certain periods of plaintiffs' employment under Ecolab, and not whether they "were victims of a common policy or plan" that deprived them of overtime pay. *Hoffman,* 982 F.Supp. at 261; *see also Brzychnalski v. Unesco, Inc.,* 35 F.Supp.2d 351, 353 (S.D.N.Y.2000). To reiterate, the merits of each plaintiff's claim need not be decided in order for a notice of collective action to be approved and disseminated. *See Krueger v. New York Tel. Co.,* No. 93-178/179, 1993 WL 276058, at \*2 (S.D.N . Y. July 21, 1993) ("[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case.").

At this stage, these factual issues do not bear on whether this case can proceed as a collective action. Indeed, approval of this collective action is for purposes of discovery as well as notice. *See Frank v. Capital Cities Communications, Inc.,* 88 F.R.D. 674, 676 (S.D.N.Y.1981) ("[E]xperiences of other employees may well be probative of the existence vel non of a discriminatory policy...."). The court need not and does not hold definitively that members of the proposed class to whom notices will be sent are in fact situated similarly to plaintiffs. Too little discovery has been taken to make such a determination now. Furthermore, should discovery reveal that plaintiffs in fact are not similarly situated, or that only a subset of the proposed class is similarly situated, the class may be decertified or reconstituted later in the litigation. *See Gjurovich,* 282 F.Supp.2d at 96.

Ecolab argues that even if this case is to continue as a collective action, plaintiffs' proposed notice must be modified. First, Ecolab contends that the notice should be sent only to those potential plaintiffs who work or have worked as Route Managers sometime during the last two years. Claims alleging violations of FLSA overtime requirements are subject to a two-year statute of limitations, except when the violation is determined ultimately to have been willful; in such cases, the statute of

limitations is three years. *See* 29 U.S.C. § 255(a). Because discovery is at a preliminary stage, "it would be premature at this juncture to reach a determination as to whether the defendant's violations, if any, have been willful." *Harrington v. Educ. Mgmt. Corp.,* No. 02-787, 2002 WL 1343753, at \*2 (S.D.N.Y. June 19, 2002). If it is held later that any violation is not willful, claims outside of the two-year limitations period simply can be barred.

**\*16** Second, Ecolab appears to argue that dissemination of the notice should be limited to Ecolab's Southeast Division. Without more support and in light of its own unqualified admission that it does not pay overtime to its salaried employees-signaling a company-wide policy-I see no reason to grant that limitation.

Third, Ecolab claims that the job titles "sales route specialist" and "service professional" referred to in the proposed notice did not exist at Ecolab during "the applicable time period" and that "sales/service representative" was the only other position at Ecolab that carried duties similar to those of Route Managers. (Mem. of Law in Opp'n to Pls.' Motion to Approve Collective Action Notice at 18; *see also* Lewis Aff. ¶ 26 ("Ecolab never utilized the titles 'sales route specialists' or 'service professional.' ")) Ecolab contends that including these non-existent titles will cause "confusion" among those receiving the notice. According to a Department of Labor "Compliance Action Report," *see* supra note 5, there also exist at Ecolab, at least in its Puritan Services Division, employees with the title "Sales/Service Route Specialist." Regardless, if "sales route specialists" and "service professionals" indeed did not exist at Ecolab during the last three years, logic tells us that no such individuals will join the lawsuit.

Plaintiffs also seek discovery of the names and addresses of those current and former employees of Ecolab who are potential plaintiffs in this action, so that notice and consent forms may be sent to them. Such discovery is relevant to the subject matter of this action. Therefore, to insure that employees receive accurate and timely notice concerning the pendency of the collective action, the names of the potential plaintiffs, as defined in the notice, should be disclosed to plaintiffs by Ecolab.

For the reasons set forth above, Ecolab's motion for summary judgment is denied. Ecolab will furnish to plaintiffs within 20 business days hereof the names and last known addresses of all potential plaintiffs as defined in the attached Notice of Lawsuit. Notice, as modified in the attached Notice Of Lawsuit and Consent to Sue, may

be sent to those potential plaintiffs. The parties are to appear at a conference on September 13, 2005, at 9:15 a.m.

SO ORDERED:


[To be printed on Plaintiff's lawyer's letterhead]

NOTICE OF LAWSUIT

1. Introduction to the Case


This notice is to inform you of a lawsuit pending against Ecolab, Inc. in United States District Court. This lawsuit claims that the defendant violated the Fair Labor Standards Act by failing to pay all eligible employees overtime at one-and-a-half times their regular pay rate for those hours worked in excess of 40 hours per week. The lawsuit claims that the defendant must award back pay and double liquidated damages as well as costs and attorneys' fees to such employees.

If you worked for Ecolab in the last three years as a Route Manager, Sales Route Specialist, Service Professional, or other position whose job duties primarily included repairing and providing preventive maintenance on leased commercial dish washing machines, and were not paid time and one-half for any work performed in excess of 40 hours per week, you may be eligible to join the lawsuit.


2. To Join the Case and Be Represented by Plaintiff's Counsel

**\*17** If you fit the definition above, you may join this case (that is, you may "opt in") by completing and mailing the attached "Consent to Sue" form to the plaintiff's lawyer no later than 60 days after the date of this notice at the following address:

Law Office of Dan Getman

9 Paradies Lane

New Paltz, N.Y. 12561

The lawyer's phone number is (845) 255-9370. You may call that number if you wish to have further information about the case or if you need more help in joining the lawsuit. If you fail to return the "Consent to Sue" form to the plaintiff's lawyer in time for it to be filed with the

federal court on or before the above deadline, you may not be able to participate in this lawsuit.

If you choose to join in this case, you will be bound by the judgment, whether it is favorable or unfavorable.

The attorney for the class plaintiffs is being paid on a contingency fee basis, which means that if there is no recovery, there will be no attorneys' fee. If there is a recovery, the attorney for the class will receive either a fee from the defendant or a part of any settlement obtained or money judgment entered in favor of all members of the class, as specified in the attached Consent to Sue form. If you sign and return the "Consent to Sue" form attached to this Notice, you are agreeing to designate the class representatives to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the class representatives will be binding on you if you join this lawsuit. However, the Court has retained jurisdiction to determine the reasonableness of any fee agreement entered into by plaintiffs with counsel, and to determine the adequacy of the plaintiffs' counsel.


3. To Join the Suit, But Not Be Represented by the Plaintiffs

You can join this lawsuit by representing yourself or by counsel of your own choosing. To do so, you or your attorney must file the appropriate documents with the Court. The address of the Court is: United States District Court, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, N.Y. 10007.


4. To Stay Out of the Lawsuit

If you do not wish to be part of the lawsuit, you need not do anything. If you do not join the lawsuit, you will not be part of the case in any way and will not be bound by or affected by the result, whether favorable or unfavorable. Your decision not to join this lawsuit will not affect your right to bring a similar case on your own in the future. However, claims under the Fair Labor Standards Act must be brought within two years, unless the employer's violation of the law was "willful," in which case the claims must be brought within three years of the alleged violation.


5. No Retaliation Permitted

**\*18** The defendant is prohibited by law from taking any retaliatory action against any person, including a current employee, who joins this lawsuit. The defendant has denied the allegations of the lawsuit and has raised various defenses. No final decision on the merits of this lawsuit has been made by the Court.

Dated:

THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK, THE HONORABLE MICHAEL B. MUKASEY, UNITED STATES DISTRICT JUDGE.

### CONSENT TO SUE

I hereby consent to be a plaintiff in the lawsuit named *Troy Masson, et al. v. Ecolab, Inc.* I hereby consent to the prosecution of any claims that I may have under the Fair Labor Standards Act for unpaid overtime, liquidated damages, attorney's fees, costs, and other relief, against the defendant.

I authorize the Law Office of Dan Getman, its successors and assigns, to represent me in this case.

By signing and returning this consent to sue, I understand that I will be represented by the Law Office of Dan Getman without prepayment of attorney's fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that the Law Office of Dan Getman may petition the court for an award of fees and costs to be paid by defendant on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendant or one-third of my total settlement or judgment amount (including fees), whichever is greater.

Dated:        Signature:
              Name:
              Address:
              Phone:

Mail this form within 60 days of the date of the Notice of Lawsuit to: Law Office of Dan Getman, 9 Paradies Lane, New Paltz 12561.

S.D.N.Y.,2005.
Masson v. Ecolab, Inc.
Not Reported in F.Supp.2d, 2005 WL 2000133 (S.D.N.Y.)

END OF DOCUMENT

LEXSEE 2005 U.S. DIST. LEXIS 30321

**ANDRZEJ MAZUR, TOMASZ MRYC, MIROSLAW SLUPINSKI, and ZYG-MUNT SOKOLOWSKI, on behalf of themselves and on behalf of all others similarly situated, Plaintiffs, -against- OLEK LEJBZON & COMPANY, A&O OLEK LEJBZON & COMPANY, LEJBZON OLEK CUSTOM REFINISHING, TREISTMAN & SONS, INC., and PETER TREISTMAN, Defendants.**

**05 Civ. 2194 (RMB) (DF)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2005 U.S. Dist. LEXIS 30321**

**November 29, 2005, Decided**
**November 30, 2005, Filed**

**COUNSEL:** [*1] For Andrzej Mazur, individually, Tomasz Mryc, individually, Miroslaw Slupinski, individually, Zygmunt Sokolowski, individually, Andrzej Mazur, on behalf of all others similarly situated, Tomasz Mryc, on behalf of all others similarly situated, Miroslaw Slupinski, on behalf of all others similarly situated, Zygmunt Sokolowski, on behalf of all others similarly situated, Plaintiffs: Robert Wisniewski, Robert Wisniewski & Associates P.C., New York, NY.

For Olek Lejbzon & Company, A&O Olek Lejbzon & Company, Lejbzon Olek Custom Refinishing, Triestman & Sons, Inc., Peter Triestman, Defendants: Joseph Martin Labuda, Mildenberg & Stalbaum P.C., Philadelphia, PA.

**JUDGES:** DEBRA FREEMAN, United States Magistrate Judge.

**OPINION BY:** DEBRA FREEMAN

**OPINION**

**MEMORANDUM & ORDER**

**INTRODUCTION**

Plaintiffs Andrzej Mazur ("Mazur"), Tomasz Mryc ("Mryc"), Miroslaw Slupinski ("Slupinski") and Zygmunt Sokolowski ("Sokolowski") (collectively, "Plaintiffs") bring this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* against Defendants Olek Lejbzon & Company, A&O Olek Lejbzon & Company, Lejbzon Olek Custom Refinishing, Treistman & Sons, Inc., [*2] and Peter Treistman (collectively, "Defendants"), to recover, *inter alia,* unpaid overtime compensation on behalf of Plaintiffs and other similarly situated employees of Defendants.

Plaintiffs now move for an order approving a collective action, directing Defendants to provide the names and addresses of potential members of the collective action, and authorizing court-approved notice to be mailed to such individuals to obtain their written consent to join as plaintiffs in this action. For the reasons set forth below, Plaintiffs' motion is granted.

**BACKGROUND**

**A. Factual Background**

According to his declaration, which was submitted by Plaintiffs in support of this motion, Mazur was employed by Defendants as a carpenter helper from October 11, 2001 through September 14, 2004. (*See* Declaration of Andrzej Mazur, filed July 11, 2005 ("Mazur Decl.") (Dkt. 20), P1.) Mazur, whose base salary was $ 8.00-$ 9.00 per week over the course of his employment with Defendants, worked 60-80 hours per week. (*Id.* PP2, 4.) According to Mazur, however, Defendants never paid him overtime compensation for working over 40 hours per week. (*Id.* P4.)

Similarly, Mryc states [*3] that he was employed by Defendants as a carpenter at a regular rate of $ 9.00 per hour from January to October 2002, and as a finisher-varnisher at a regular rate of $ 13.00 per hour from December 2002 through August 2003. (*See* Declaration of Tomasz Mryc, filed July 11, 2005 ("Mryc Decl.") (Dkt. 22), PP1-2.) During the course of his employment, Mryc

typically worked 70 hours per week, but asserts that he was not paid overtime compensation for his work in excess of 40 hours per week. (*See id.* P4.)

Finally, according to a declaration signed by Slupinski, he began his employment for Defendants "in a variety of capacities, including welder, carpenter, and laborer." (Declaration of Miroslaw Slupinski, filed July 1, 2005 ("Slupinski Decl.") (Dkt. 21), P1.) From November 2002 to January 2004, Slupinski was employed as a project foreman at a rate of $ 20.00-$ 23.00 per hour. (*Id.* at PP1-2.) Slupinski states that, at times, he worked more than 40 hours per week as a foreman, for which Defendants did not pay him overtime compensation. (*See id.* P5.)

Mazur, Mryc and Slupinski each state in their declarations that they are aware of at least 20 other carpenters, finisher-varnishers, [*4] woodworking machine operators, installers, laborers, helpers, and foremen who performed the same or similar work as they did for Defendants; who, like Plaintiffs, worked more than 40 hours per week; and who, like Plaintiffs, were not paid overtime compensation. (*See* Mazur Decl. PP3-4; Mryc Decl. PP3-4; Slupinski Decl. PP3-5.) Moreover, according to the declarations submitted by Plaintiffs, Defendants employed at least 20 and as many as 50 individuals -- consisting of carpenters, finisher-varnishers, woodworking machine operators, installers, laborers, helpers, and foremen -- each year, because of a high employee turnover rate. (*See* Slupinski Decl. P4; *see also* Mazur Decl. P4; Mryc Decl. P3.)

Mazur and Mryc state that they have personal knowledge of the work hours of other employees because they worked alongside one another, and note that they knew that Defendants had not paid other employees overtime compensation because Mazur and Mryc frequently discussed the issue with other employees. (*See* Mazur Decl. P4; Mryc Decl. P4.) Similarly, Slupinski explains that the employees he supervised as foreman constantly complained to him that Defendants did not pay them for all [*5] hours worked, and did not pay them overtime. (*See* Supplemental Declaration of Miroslaw Slupinski, filed September 19, 2005 ("Slupinski Supp. Decl.") (Dkt. 26), PP4-7.) Slupinski also names three individuals with whom he discussed wages, the lack of overtime pay, and the failure of Defendants to fully compensate him and these employees for all hours worked. (*See id.* P9.) Slupinski indicates that he had similar conversations with other employees whose names he cannot remember. (*See id.*)

Like Slupinski, Mazur names seven individuals that he personally knows to have regularly worked more than 40 hours per week for Defendants, and who were not fully paid for all of they hours they worked, nor paid

overtime. (*See* Supplemental Declaration of Andrzej Mazur, filed September 19, 2005 ("Mazur Supp. Decl.") (Dkt. 26), P2.) According to Mazur, these seven employees worked with him as carpenters or carpenter helpers in Defendants' shop, in addition to others whom Mazur could not identify by name. (*See id.* P2(A), (C).) Mazur further states that the compensation owed to these employees by Defendants was often discussed by the employees at work. (*Id.* PP2(D), 3.)

**B. Plaintiffs'** [*6] **Motion to Approve a Collective Action Notice** ¹

> 1   In its opposition, Defendants argue that this Court does not have authority to decide Plaintiffs' motion to approve a collective action notice. (*See* Def. Opp. at 3-5.) Although Defendants correctly note that a magistrate judge does not have authority "to permit maintenance of a class action" absent consent by the parties or a referral by the district judge (*see id.* at 3 (citing 28 U.S.C. § 636(b)(1)(A)), Plaintiffs' motion does not seek to maintain a class action under Fed. R. Civ. P. 23. Rather, Plaintiffs only seek preliminary approval for service of a collective action notice pursuant to the FLSA, under which the standard for granting approval is far more lenient, and indeed, materially different, than the standard for granting class certification under Fed. R. Civ. P. 23. *See Abrams v. GE,* No. 95-CV-1734 (FJS), 1996 U.S. Dist. LEXIS 16869, at *5 and n.3 (N.D.N.Y. Nov. 4, 1996). Defendants' reliance on 28 U.S.C Section 636(b)(1)(A), which speaks to class actions, is therefore misplaced, as it does not prohibit a magistrate judge from entertaining a motion to approve a collective action notice under the FLSA. *See, e.g., Young v. Cooper Cameron Corp.,* 229 F.R.D. 50 (S.D.N.Y. 2005) (motion to authorize collective action granted by Magistrate Judge Gorenstein); *Patton v. Thomson Corp.,* 364 F. Supp. 2d 263, 265-66 (E.D.N.Y. 2005) (holding that magistrate judges have authority to decide a motion to "circulate a notice of pendency in a case brought under the FLSA").

[*7]  Plaintiffs seek an order (1) allowing this case to proceed as a collective action; (2) directing Defendants to disclose the names and last-known addresses of those current and former employees that Plaintiffs contends are "potential plaintiffs and putative members of the class"; and (3) authorizing service by mail upon potential plaintiffs of the proposed collective action notice. (*See* Notice of Motion, filed July 1, 2005) (Dkt. 16). Plaintiffs have annexed to their motion papers a proposed collective action notice and consent form to be served on potential plaintiffs. (*See* Declaration of Robert

Wisniewski, Esq., filed July 1, 2005 ("7/1/05 Wisniewski Decl."), at Exs. 1 and 2) (Dkt. 16). Plaintiffs have also submitted a memorandum of law in support of their motion (Dkt. 16), as well as the declarations of Mazur (Dkt. 20), Slupinski (Dkt. 21), and Mryc (Dkt. 22). On July 19, 2005, Defendants filed its opposition to Plaintiffs' motion. (*See* Defendants' Memorandum of Law In Opposition to Plaintiffs' Motion, filed July 19, 2005) ("Def. Opp.") (Dkt. 23). Plaintiffs later submitted the supplemental declarations of Mazur and Slupinski. (Dkt. 26.)

Following a telephone conference [*8] to discuss various issues raised by the proposed notice submitted in Plaintiffs' initial papers on this motion, Plaintiffs submitted a revised proposed Notice of Lawsuit With Opportunity to Join ("Revised Proposed Notice") and consent form to the Court. (*See* Letter to the Court from Robert Wisniewski, Esq., dated October 17, 2005 ("10/17/05 Letter") (Dkt. 28), at Ex. 3.) Defendants notified the Court that, although they maintained their opposition to Plaintiffs' motion, they had few remaining disputes with Plaintiffs regarding the content and scope of the Revised Proposed Notice itself, should the Court decide to grant the motion. Pursuant to the Court's request, Defendants then submitted a letter, dated October 28, 2005, outlining the remaining disputes between the parties regarding the contents of the notice.

On this motion, Plaintiffs request that this Court approve a collective action notice for the following class of potential plaintiffs:

> Current and former employees of [Defendants] who are or were employed within three (3) years preceding [the date of the Court's Order approving this notice], as foremen, carpenters, finishers, varnishers, woodworking machine [*9] operators, laborers, helpers and other employees who performed the same or similar work, and who did not receive overtime compensation at the rate of one and one-half times the regular rate at which they were employed for work they performed in excess of 40 hours each week.

(*See* Revised Proposed Notice, at 1.) Plaintiffs argue that, through the declarations of three of the named Plaintiffs, they have met the standard for approval of this collective action notice. First, Plaintiffs contend that the declarations demonstrate that Defendants violated Section 207 of the FLSA by, *inter alia,* requiring their employees to work in excess of 40 hours per week without paying them overtime compensation. (*See* Memorandum of Law in Support of Plaintiffs' Motion for Approval of Collec-

tive Action Notice, filed July 1, 2005 ("Pl. Mem."), at 4-5.) Second, Plaintiffs argue that the declarations "demonstrate that the number of similarly situated current and former employees is quite large." (*Id.* at 5-6.) Finally, Plaintiffs argue that the district courts have the power to send notice to potential plaintiffs and to require Defendants to disclose the names and addresses of potential [*10] plaintiffs, and that Defendants should be ordered to do so "in both paper and digital format, to expedite the distribution of the notices." (*Id.* at 6-7.)

Defendants' primary argument in opposing Plaintiffs' motion is that Plaintiffs have failed to make a showing that they are "similarly situated" to other employees, and that, as a result, the Court should not allow this case to proceed as a collective action. (*See* Def. Opp. at 5-13.)

## DISCUSSION

## I. APPLICABLE LEGAL PRINCIPLES UNDER THE FLSA

The FLSA was designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). "The purpose of the FLSA . . . was to 'guarantee[] compensation for all work or employment engaged in by employees covered by the Act.'" *Reich v. New York City Transit Auth.,* 45 F.3d 646, 648-49 (2d Cir. 1995) (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Local,* 321 U.S. 590, 602, 88 L. Ed. 949, 64 S. Ct. 698 (1944)) (alteration in original).

Under the FLSA, employers must pay overtime for "employment [*11] in excess of [40 hours per week] at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). Certain employees, however, are exempt from the FLSA's overtime requirements, including "any employee employed in a bona fide executive, administrative, or professional capacity...." *Id.* § 213(a)(1). The Second Circuit has held that "because the FLSA is a remedial act, its exemptions are to be narrowly construed" and that, in addition, the "employer bears the burden of proving that its employees fall within an exemption in the FLSA." *Coke v. Long Island Care At Home, Ltd.,* 376 F.3d 118, 123 (2d Cir. 2004) (citations omitted).

Section 216(b) of the FLSA provides in part that:

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he

gives his consent in writing to become
such a party and such consent is filed in
the court in which such action is brought.

29 U.S.C. § 216 (b) [*12] . Pursuant to this section, potential plaintiffs who wish to be bound by and benefit from the judgment must "opt in" to a "collective action." *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 260 (S.D.N.Y. 1997). Further, a district court may permit an opt-in notice to be sent to potential plaintiffs. *See Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 169-70, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).

Significantly, the requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action, and thus, "no showing of numerosity, typicality, commonality and representativeness need be made" as a prerequisite to approval. *Foster v. Food Emporium,* No. 99 Civ. 3860 (CM), 2000 U.S. Dist. LEXIS 6053, at *3 (S.D.N.Y. Apr. 26, 2000). Rather, in deciding whether to authorize a collective action notice under the FLSA, the only issue for the Court is "whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Young v. Cooper,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citing *Hoffmann,* 982 F. Supp. at 261 (citation omitted)). A plaintiff may meet this burden "by making [*13] a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hoffmann,* 982 F.Supp. at 261 (citing cases). A plaintiff need not show an actual violation of law; rather, the inquiry centers on whether the proposed plaintiffs are "similarly situated" with respect to their allegations that the law has been violated. *Young,* 229 F.R.D. at 54. The named plaintiff may satisfy the "similarly situated" standard merely by demonstrating a "factual nexus" between his or her situation and the situation of other current and former employees. *See id.; see also Hoffmann,* 982 F. Supp. at 261 ("The burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are similarly situated.").

## II. APPROVAL OF COLLECTIVE ACTION NOTICE

As a threshold matter, the potential plaintiffs in this action do not appear to fall within an exemption to the FLSA, and Defendants, who would have the burden on this issue, *see Coke,* 376 F.3d at 123, have not argued nor established otherwise. [*14] Rather, Defendants argue that this Court should not authorize this case to proceed as a collective action because Plaintiffs have failed to demonstrate that other employees of Defendants "were subjected to any unlawful conduct." (Def. Opp. at 8-9.) In Defendants' view, Plaintiffs "rely on nothing more

than boilerplate conclusory allegations" that other employees were not paid overtime. (*Id.* at 9.) Glossing over the fact that Plaintiffs have already submitted the declarations of three individuals, which identify others by name and/or job description, Defendants argue that Plaintiffs "have not submitted a single affidavit from a potential class member that anyone else was paid in violation of the FLSA." (*Id.*) Further, Defendants argue that Plaintiffs have not demonstrated that potential class members are "similarly situated" because, according to Defendants, Plaintiffs (1) set forth nine job classifications to be notified, [2] although Plaintiffs themselves only worked in six; (2) worked for four different corporate Defendants at different times and different places; and (3) "have not articulated a common practice or policy to which they and similarly situated potential opt-ins [*15] were subject to." (*Id.*)

> 2   Although Defendants argue that there are nine job classifications, both the Proposed Notice of Lawsuit With Opportunity to Join (*see* 7/1/05 Wisniewski Decl., at Ex. 1) and the Revised Proposed Notice actually specify only seven categories -- foremen, carpenters, finishers, varnishers, woodworking machine operators, laborers, and helpers -- in addition to the general category of "other employees who performed the same or similar work."

Plaintiffs, however, face "only a very limited burden . . . for purposes of proceeding as a collective action." *Young,* 229 F.R.D. at 55 (citing cases). Notably, it is not the Court's function at this time to determine whether the potential class members identified by Plaintiffs are, in fact, similarly situated to Plaintiffs. *See Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 91, 96 (S.D.N.Y. 2003). Rather, Plaintiffs' "burden for proving that [they are] similarly situated to these potential plaintiffs is minimal for this preliminary determination [*16] -- a determination that can be modified or reversed after discovery is complete." *Id.* Given this minimal burden, Plaintiffs have established that approval of this case as a collective action is appropriate. First, Plaintiffs have sufficiently alleged a common policy or plan of Defendants' failure to pay overtime wages. Through the declarations they submitted, Plaintiffs have also provided evidence that Defendants did not pay Mazur, Mryc, and Slupinski overtime compensation to which they were entitled under the FLSA, and have preliminarily established that, like Plaintiffs, other employees also did not receive overtime compensation from Defendants. Further, in their declarations, Mazur, Mryc and Slupinski state that, based on their conversations with other employees, they have personal knowledge that Defendants did not pay these other employees overtime compensation.

Second, Plaintiffs have established a sufficient "factual nexus" between their situation and the situation of other employees who were also subjected to the Defendants' alleged failure to pay overtime wages. Contrary to Defendants' implication, Plaintiffs need not show that they are "identically situated to potential [*17] class members" for approval of a collective action; rather, Plaintiffs need only provide evidence that a "demonstrated similarity" exists among individual situations. *See Abrams,* 1996 U.S. Dist. LEXIS 16869, at *6. Plaintiffs have done this. Each of the declarations submitted by Plaintiffs establishes a likelihood that at least some of Defendants' other employees, who are alleged to have performed the same or similar work as Plaintiffs, for the same or similar amount of hours per week, were also not paid overtime as required under the FLSA. In addition, Mazur and Slupinski identify by name a number of employees, aside from the named Plaintiffs, who are alleged to have held the same or similar positions as Plaintiffs; who, like Plaintiffs, are alleged to have worked over 40 hours per week; and who, like Plaintiffs, appear to be owed overtime compensation, as Mazur and Slupinski learned through discussions with these other employees. Further, Mazur and Slupinski each indicate that there may be additional employees who meet the same criteria, but whose names they either do not know or cannot remember.

In light of the minimal nature of Plaintiffs' burden on this motion, [*18] Plaintiffs have sufficiently demonstrated that an identifiable "factual nexus" binds them as victims of Defendants' alleged violation under the FLSA with the potential class members described by Plaintiffs. *See, e.g., Realite v. Ark Restaurants Corp.,* 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998); *Abrams,* 1996 U.S. Dist. LEXIS 16869, at *6. Accordingly, the Court finds that allowing this case to proceed as a collective action would be appropriate.

### III. SCOPE AND FORM OF NOTICE

"No courts have specifically outlined what form court-authorized notice should take, or what provisions notice issued pursuant to § 216(b) should contain." *Gjurovich,* 282 F. Supp. 2d at 97. Here, Plaintiffs have submitted a Revised Proposed Notice, and Defendants do not disagree with its contents, except in three minor respects, which are discussed below.

#### A. Contingency Fee

With regard to the statement in the Revised Proposed Notice that "the attorneys representing the plaintiffs are being paid on a contingency-fee basis" (*see* Revised Proposed Notice, at 3), Defendants request that the percentage of the contingency fee be added so that [*19] individuals who opt-in will know precisely how much

the attorney will be compensated if Plaintiffs should prevail. It has not, however, been customary in this Court for the specific percentage of the contingency fee sought by plaintiffs' attorneys to be included in collective action notices. *See, e.g., Masson v. Ecolab, Inc.,* No. 04 Civ. 4488 (MBM), 2005 U.S. Dist. LEXIS 18022, at *47-50 (S.D.N.Y. Aug. 18, 2005) (approving collective action notices that alerted potential plaintiffs to contingency fee without including specific percentage); *Gjurovich,* 282 F. Supp. 2d at 98-99 (same); *Hoffmann,* 982 F. Supp. at 264 (same). Nor does the Court believe it necessary or reasonable to include the specifics of counsel's fee arrangements in the notice. Accordingly, the Court declines to modify the Revised Proposed Notice in this respect.

#### B. Language Providing No Assurance of the Validity of Potential Plaintiffs' Claims or Entitlement To Monetary Recovery

Defendants also request that the following language be added to the Revised Proposed Notice: "This notice does not mean that you are entitled to any monetary recovery. Any such determination [*20] must still be made by the Court." Plaintiffs do not object to the content of this phrase, but the parties disagree on the placement of this language. Although Plaintiffs' position on the placement of this language is not clear, Defendants argue that the phrase should be placed as a separate paragraph at the end of the "Description of the Lawsuit" section (*see* Revised Proposed Notice, at 2).

Defendants' third and final request is related, in that Defendants seek to add the following language to the middle of the first paragraph of the "Effect of Not Joining This Case" section (*see id.* at 4): "This notice is not intended to imply in any way that you have a valid claim or that you are entitled to any monetary recovery." Again, such language is not customarily included in collective action notices, and the particular language proposed by Defendants in its last request may confuse potential plaintiffs and lead them to believe that they do not have a valid claim when, in fact, they may. Nonetheless, the substance of the request is reasonable, and thus, the Court will modify the Revised Proposed Notice by adding the following language as a separate and final paragraph of the section [*21] entitled "Your Right To Participate in This Suit" (*see* Revised Proposed Notice, at 3): "This notice does not mean that you have a valid claim or that you are entitled to any monetary recovery. Any such determination must still be made by the Court."

In all other respects, the Court finds the Revised Proposed Notice to be appropriate and authorizes its service upon the potential plaintiffs identified therein.

**CONCLUSION**

For the foregoing reasons, Plaintiffs's motion is granted. Defendants are ordered to provide Plaintiffs with the names and addresses of current and former employees of Defendants who are or were employed by Defendants in the three years preceding the date of this Order as foremen, carpenters, finishers, varnishers, woodworking machine operators, laborers, helpers, or who performed the same or similar work. Defendants shall provide this information within two weeks of the date of this Order in a paper and digital format agreeable to Plaintiffs. In addition, Plaintiffs' counsel is authorized to mail to the employees, as identified by Defendants, the Revised Proposed Notice and consent form attached hereto, with the modifications set forth above. Plaintiffs [*22] shall mail the notice and consent form within two weeks of the receipt of such names and addresses.

Dated: New York, New York

November 29, 2005

SO ORDERED

DEBRA FREEMAN

United States Magistrate Judge

LEXSEE 2006 U.S. DIST. LEXIS 4267

**JOSE MORALES, EFREN MORALES, and FELIX PACHECO, and on behalf of themselves and all others similarly situated, Plaintiffs, - against - PLANTWORKS, INC., NEIL MENDELOFF, and VERNA MENDELOFF, Defendants.**

**05 Civ. 2349 (DC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2006 U.S. Dist. LEXIS 4267**

**February 1, 2006, Decided
February 2, 2006, Filed**

COUNSEL:  [*1]  MICHAEL FAILLACE & ASSOCIATES, P.C., Attorneys for Plaintiffs, By: Michael Faillace, Esq., New York, New York.

GOLDBERG and WEINBERGER LLP, Attorneys for Defendants, By: Stuart Weinberger, Esq., New York, New York.

**JUDGES:** DENNY CHIN, United States District Judge.

**OPINION BY:** DENNY CHIN

**OPINION**

*MEMORANDUM DECISION*

**CHIN, D.J.**

Plaintiffs Jose Morales, Efren Morales, and Felix Pacheco were employed as landscapers by defendant Plantworks, Inc., which is owned and operated by defendants Neil Mendeloff and Verna Mendeloff. Plaintiffs bring this action pursuant to the Fair Labor Standards Act (the "FLSA"), the New York Labor Law, and the "spread of hours" wage order of the New York Commission of Labor. Plaintiffs contend that defendants maintained a policy and practice of requiring plaintiffs to work more than forty hours per week without paying them minimum wage and overtime compensation in violation of state and federal labor laws. Plaintiffs also seek to recover damages against defendants for discrimination and retaliation under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, the New York State Executive Law § 290 *et seq.,* the FLSA,  [*2]  29 U.S.C. § 201 *et seq.,* and New York Labor Law § 215.

Plaintiffs move for an order (1) permitting plaintiffs to proceed as a collective action with respect to their FLSA claims; (2) compelling defendants to furnish the names and last known addresses of all employees of Plantwork since September 2002; (3) authorizing plaintiffs to send a notice and "opt-in" form to all prospective members of the collective action; and (4) compelling Plantworks to post the Court-approved "opt-in" notice in conspicuous locations in its offices. The motion is denied in part and granted in part, as set forth below.

*DISCUSSION*

The FLSA permits employees to maintain an action "for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). The named plaintiffs must be "similarly situated" to the proposed members of the class, and proposed class members must "opt in" and consent in writing to being a party to the action. *Id.*

In collective actions, courts in this circuit frequently follow a two-stage certification process. *Masson v. Ecolab, Inc.,* 2005 U.S. Dist. LEXIS 18022, No. 04 Cv. 4488 (MBM), 2005 WL 2000133,  [*3]  at *13 (S.D.N.Y. Aug. 17, 2005); *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 91, 96 (S.D.N.Y. 2003); *Rodolico v. Unisys Corp.,* 199 F.R.D. 468, 480 (E.D.N.Y. 2001) (class certification in ADEA case); *see also* Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7B *Federal Practice and Procedure: Civil 3d* § 1807, at 487-53 (2005) (discussing two stages of certification process) ("Wright, Miller & Kane"). At the first stage, the court examines the pleadings and affidavits to determine whether the named plaintiffs and putative class members are similarly situated. *Masson,* 2005 U.S. Dist. LEXIS 18022, 2005 WL 2000133, at *13. If the court finds that

they are, it conditionally certifies the class and permits notice to be sent to putative class members. *Id.*; Wright, Miller, & Kane, 7B *Federal Practice and Procedure* § 1807, at 492-93. At the second stage, the employer can move to decertify the class if discovery reveals that the claimants are not similarly situated. *Masson,* 2005 U.S. Dist. LEXIS 18022, 2005 WL 2000133, at *14.

In collective actions, district courts have "broad discretion to grant certification, to allow discovery, and to regulate [*4] notice." Wright, Miller, & Kane, 7B *Federal Practice and Procedure* § 1807, at 486. *See Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997) ("It is well settled that district courts have the discretionary power to authorize the sending of ['opt-in'] notice[s] to potential class members."). Thus, at this early stage in the litigation, the threshold question for the Court is whether circumstances exist to warrant the exercise of this discretion or, in other words, whether plaintiffs have demonstrated that the potential class members are "similarly situated" to them. *Id.*

The FLSA does not define "similarly situated" nor does it set out standards for determining whether the requirement has been met. *See id.* In this Circuit, "courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hoffmann,* 982 F. Supp. at 261 (citing cases). *See also Jackson v. New York Tel. Co.,* 163 F.R.D. 429, 431 (S.D.N.Y. 1995) ("Plaintiffs need merely provide 'some factual [*5] basis from which the court can determine if similarly situated potential plaintiffs exist.'") (quoting *Schwed v. General Electric Co.,* 159 F.R.D. 373, 376 (N.D.N.Y. 1995)). The leniency of this requirement is consistent with the broad remedial purpose of the FLSA. *See Hoffmann,* 982 F. Supp. at 262 (citing cases discussing broad remedial purpose of FLSA).

In this case, plaintiffs have not met their burden. In support of their motion, plaintiffs submitted an affidavit of their attorney, to which were attached the following exhibits: (1) plaintiffs' First Amended Complaint; (2) a proposed "opt in" form; (3) a copy of the settlement form and general release issued to plaintiff Pacheco by defendants; (4) copies of four payroll check stubs for plaintiff Jose Morales; (5) copies of two payroll stubs for plaintiff Efren Morales; and (6) copies of two payroll stubs for plaintiff Felix Pacheco. (Faillace Aff. Ex. A-F). The payroll stubs support plaintiffs' claim that they were paid the regular rate for overtime. (Faillace Aff. Ex. D-F). The affidavit and exhibits, however, contain no reference to any Plantworks employee other than plaintiffs, and they make no [*6] allegations of a common policy or plan to deny plaintiffs overtime. The only additional support for plaintiffs' claim that they are similarly situated to other Plantworks' employees comes from their conclusory allegation in the amended complaint that "there are over 20 current and former employees that are similarly situated to Plaintiffs and have been denied minimum wage and overtime compensation while working for Defendants. Plaintiffs are representative of these other workers and are acting on behalf of their interests as well as their own interests in bringing this action." (Am. Compl. P33).

Though the first stage of class certification only requires a "modest factual showing," it must be sufficient to demonstrate that plaintiffs and potential class members were victims of a common scheme or plan that violated the law. *See Hoffmann,* 982 F. Supp. at 261; *Levinson v. Primedia Inc.,* 2003 U.S. Dist. LEXIS 20010, 02 Cv. 2222 (CBM), 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) (finding that plaintiff failed to meet "modest burden"). In making this showing, "conclusory allegations are not enough." Wright, Miller, & Kane, 7B *Federal Practice and Procedure* § 1807, at 490-91. Here, [*7] plaintiffs have offered only a conclusory allegation in their complaint; they have offered nothing of evidentiary value. Because plaintiffs have failed to meet this minimal requirement, their motion for class certification is denied. In light of the remedial purpose of the FLSA and the Court's broad discretionary power, plaintiffs' motion for the names and addresses of Plantworks employees is granted, but only to the extent that defendants must produce the names and last known addresses of all individuals employed by Plantworks since 2002 in non-management positions with whom they have not entered settlement agreements. *See Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 168-70, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989) (upholding district judge's order that employer produce names and addresses of discharged employees); Wright, Miller, & Kane, 7B *Federal Practice and Procedure* § 1807, at 495-96 ("If conditional certification is denied, the court may allow discovery to provide plaintiffs a second opportunity to obtain sufficient evidence of a collective to warrant conditional certification and the notice to opt in.")

*CONCLUSION*

Based on the record before the Court, plaintiffs' motion [*8] for certification and for authorization to send a notice and "opt-in" form is denied. Plaintiffs may renew the motion should discovery reveal additional facts to support the application. Plaintiffs' motion for the names and addresses is granted to the limited extent set forth above.

SO ORDERED.

Dated: New York, New York

February 1, 2006

DENNY CHIN                                        United States District Judge

LEXSEE 2006 U.S. DIST. LEXIS 42627

**ELIJO PRIZMIC, on behalf of himself and all others similarly situated, Plaintiffs, - against - ARMOUR, INC., et al., Defendants.**

**05-CV-2503 (DLI) (MDG)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

**2006 U.S. Dist. LEXIS 42627**

**June 12, 2006, Decided**
**June 12, 2006, Filed**

**COUNSEL:** [*1] For Elijo Prizmic, Plaintiff: Karl J. Stoecker, Law Offices of Karl J. Stoecker, New York, NY.

For Armour Inc., Ramiz Mrkulic, Al Parviz, Defendants: Howard S. Krebs, Howard S. Krebs, P.C., Great Neck, NY.

**JUDGES:** MARILYN D. GO, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** MARILYN D. GO

**OPINION**

*ORDER*

GO, United States Magistrate Judge:

Plaintiff Elijo Prizmic ("plaintiff") brings this action against defendants Armour, Inc., Ramiz Mrkulic, and Al Parviz ("defendants") pursuant to section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a putative collective action by employees of defendants alleging that he and others similarly situated have been denied overtime compensation, as required by the FLSA. Plaintiff moves to compel defendants to provide the names and addresses of their current and former employees who were not paid overtime and for permission to notify them of the pendency of this action. [1]

---

1   I note that the instant motion is within my pretrial authority to decide under 28 U.S.C. § 636(b)(1)(A). *See Patton v. Thomson Corp.,* 364 F. Supp. 2d 263, 265-66 (E.D.N.Y. 2005) (magistrate judge had authority to compel production of information about putative class members and to permit notice of collective action); *Mazur v. Olek*

*Lejbzon & Co.,* 2005 U.S. Dist. LEXIS 30321, No. 05 Civ. 2194, 2005 WL 3240472, at *2 n.1 (S.D.N.Y. Nov. 30, 2005).

[*2] For the reasons set forth below, plaintiff's motion to compel and for permission to send notice to potential class members is denied without prejudice.

*BACKGROUND*

In his unverified complaint, plaintiff alleges that he was employed as an asbestos installer by defendants, from October 2004 through March 2005. Complaint ("Comp.") at P4. Plaintiff further alleges that during his employment, plaintiff and his fellow insulation installers routinely worked more than forty hours per week but were not paid time and a half of their regular rate of pay for any hours worked in excess of forty hours per week. *Id.* at P8. Plaintiff has not submitted any affidavit or documentation in support of the instant motion.

At an initial conference held on July 28, 2005, the Court ordered that automatic disclosures be served by September 8, 2005 and that the parties informally exchange information before the next conference. *See* minute entry dated July 28, 2005. At a discovery conference held on October 19, 2005, the Court ordered that fact discovery be completed by April 12, 2006. *See* minute entry dated October 19, 2005. By letter dated December 23, 2005, plaintiff's counsel informed the [*3] Court that defendants had not responded to plaintiff's discovery requests. Ct. doc. 7. On January 4, 2006, the Court ordered defendants to provide the outstanding discovery responses by January 31, 2006. *See* minute entry dated January 4, 2006. At a conference held on June 8, 2006, the parties confirmed that defendant had provided the information sought. On February 24, 2006, plaintiff filed the instant motion. *See* ct. doc. 8.

DISCUSSION

Plaintiff moves to compel disclosure of the names and addresses of "[a]ll current and former employees of Armour, Inc., who were employed by the Company at any time during the past three years and were not paid overtime for each hour worked in excess of forty hours per week" and for court authorized notice informing those potential plaintiffs of the opportunity to "optin" to the present lawsuit. See ct. doc. 8-2 at 1, 6.

Section 216(b) of the FLSA provides:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any action unless he gives [*4] his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). It is well settled that district courts have the discretion to authorize the sending of notice to potential class members and direct an employer defendant to disclose the names and addresses of similarly situated potential plaintiffs in a collective action brought pursuant to section 216(b) of the FLSA. *Morales v. Plantworks, Inc.,* 2006 U.S. Dist. LEXIS 4267, No. 05 Civ. 2349, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006); *Patton,* 364 F. Supp. 2d at 266; *Hoffmann v. Sbarro,* 982 F. Supp. 249, 262-63 (S.D.N.Y. 1997); *see also Hoffmann-La Roche v. Sperling,* 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).

The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are "similarly situated." *Morales,* 2006 U.S. Dist. LEXIS, 2006 WL 278154, at *1; *Levinson v. Primedia, Inc.,* 2003 U.S. Dist. LEXIS 20010, No. 02 Civ. 2222, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003); 29 U.S.C. § 216(b). Although neither [*5] the FLSA nor its implementing regulations define the term "similarly situated," in this Circuit, "courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Morales,* 2006 U.S. Dist. LEXIS 4267, 2006 WL 278154, at *2 (quoting *Hoffman,* 982 F. Supp. at 261); *see Barfield v. New York City Health and Hospitals Corp.,* 2005 U.S. Dist. LEXIS 28884, No. 05 Civ. 6319, 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005); *Levinson,* 2003 U.S. Dist. LEXIS 20010, 2003

WL 22533428, at *1. At the initial stage, "the court examines the pleadings and affidavits to determine whether the named plaintiffs and putative class members are similarly situated." *Morales,* 2006 U.S. Dist. LEXIS 4267, 2006 WL 278154, at *1; *Flores v. Osaka Health Spa, Inc.,* 2006 U.S. Dist. LEXIS 11378, No. 05 Civ. 962, 2006 WL 695675, at *2 (S.D.N.Y. March 16, 2006); *see Masson v. Ecolab,* Inc., 2005 U.S. Dist. LEXIS 18022, No. 04 CV 4488, 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005); *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 2006 U.S. Dist. LEXIS 32511, No. 00 CIV. 984, 2006 WL 1408837, at *2 (S.D.N.Y. May 22, 2006) (court's initial determination [*6] based on "pleadings and affidavits"). If the court finds that they are similarly situated, it may conditionally certify the class and authorize notice to be sent to putative class members. *See Morales,* 2006 U.S. Dist. LEXIS 4267, 2006 WL 278154, at *1; *Lee,* 2006 U.S. Dist. LEXIS 32511, 2006 WL 1408837, at *2. Only after discovery has been completed should the Court engage in a second more heightened stage of scrutiny to determine whether the class should be decertified or the case should proceed to trial as a collective action. *See Lee,* 2006 U.S. Dist. Lexis 32511, 2006 WL 1408837, at *2; *Masson,* 2005 U.S. Dist. LEXIS 18022, 2005 WL 2000123, at *14.

Although the plaintiff's burden at this initial stage is not onerous, "[m]ere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made." *Camper v. Home Quality Mgmt. Inc.,* 200 F.R.D. 516, 519 (D. Md. 2000); *see Lee,* 2006 U.S. Dist. LEXIS 32511, 2006 WL 1408837, at *2 (court's determination "based on pleadings and affidavits"); *Masson,* 2005 U.S. Dist. LEXIS 18022, 2005 WL 2000133, at *13 (same); 7B Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* § 1807 (3d ed. 2005) ("Conclusory allegations are not [*7] sufficient. . . . courts requir[e] that there be some factual support and affidavits showing that the class members are 'similarly situated'"). A plaintiff must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated rather than mere conclusory allegations. *See Flores,* 2006 U.S. Dist. LEXIS 11378, 2006 WL 695675, at *3; *Morales,* 2006 U.S. Dist. LEXIS 4267, 2006 WL 278154, at *3. Absent such a showing, an employer may be "unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense." *D'Anna v. M/A-Com, Inc.,* 903 F. Supp. 889, 893-94 (D. Md. 1995); *see Smith v. Sovereign Bancorp, Inc.,* 2003 U.S. Dist. LEXIS 21010, No. civ. A. 03-2420, 2003 WL 22701017, at *2 (E.D. Pa. Nov. 13, 2003) (conditional certification based solely on allegations in complaint is "an inefficient and overbroad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant to provide names and addresses of

thousands of employees who would clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery").

Here, plaintiff has not submitted *any* [*8] evidence by affidavit or otherwise to demonstrate that he and other potential plaintiffs were victims of a common policy or plan that violated the law. On the contrary, plaintiff makes only general allegations in his complaint that he and other installation installers were denied overtime compensation. Denying in their answer that plaintiff was an employee of defendants within the meaning of the FLSA, defendants allege that plaintiff never performed insulation installation services for defendants and that plaintiff and other insulation installers never worked overtime without the proper compensation. Answer at PP4, 6, 8, 9, 38. Defendants further allege that plaintiff was an independent contractor whose duties were limited to cleaning up debris and making deliveries. *Id.* at PP4, 19, 38. Despite defendants' denials, plaintiff has not submitted any specific facts concerning his employment nor connecting his situation to others that he claims are similarly situated. For example, plaintiff fails to describe or submit any documentation showing how he or anyone else employed by defendants were paid, what their job duties were or the hours they worked. Nor has plaintiff identified a single [*9] potential plaintiff even though defendant apparently has provided the names of current and former employees. Not only has plaintiff failed to provide the minimal requisite factual showing that he was in an employee-employer relationship with defendants and was denied overtime pay, he has not substantiated his allegation that the same was true of other potential plaintiffs. Other than the allegation that plaintiff is an asbestos installer, there is no information that could distinguish this purported employment relationship from that of any other employer.

Moreover, plaintiff does not consistently define the universe of similarly situated individuals. In his complaint, plaintiff alleges that only his fellow installation installers were denied overtime compensation. Yet, in the instant motion, plaintiff seeks to notify "all current and former employees of Armour, Inc." over the past three years who were not paid overtime. Ct. doc. 8-2 at 1. "Where the named plaintiff is unable to state clearly and specifically to whom it is that she contends she is similarly situated, it is not possible for the Court to conclude that a collective action certification is warranted." *Flores,* 2006 U.S. Dist. LEXIS 11378, 2006 WL 695675, [*10] at *3.

Where "conditional certification is denied, the court may allow discovery to provide plaintiffs a second opportunity to obtain sufficient evidence of a collective to warrant conditional certification and the notice to opt in." *Federal Practice & Procedure,* § 1807. However, plain-

tiff has not provided any facts for his claim that a class of similarly situated plaintiffs exist to warrant disclosure of the names and addresses of potential plaintiffs. *See Diaz v. Elec. Boutique of America,* 2005 U.S. Dist. LEXIS 30382, No. 04-CV-0840E, 2005 WL 2654270, at *3-*5 (W.D.N.Y. Oct. 17, 2005) (denying conditional certification, notice to and discovery about potential class members where plaintiff did not make requisite factual showing); *Barfield,* 2005 U.S. Dist. LEXIS 28884, 2005 WL 3098730, at *1 (denying conditional certification, discovery of names and addresses of potential opt-in plaintiffs and mailing of notice because plaintiff provided no evidence of policy to deprive nurses of overtime compensation); *Hall,* 2002 U.S. Dist. LEXIS 4163, 2002 WL 413901, at *3 (denying conditional certification, notice to potential plaintiffs and limited discovery of identifying information of similarly situated employees where [*11] plaintiff did not submit affidavits or even names of potential plaintiffs); *see also Levinson,* 2003 U.S. Dist. LEXIS 20010, 2003 WL 22533428, at *2 (denying motion to circulate notice to potential plaintiffs where plaintiff failed to make factual showing that others were similarly situated). Unlike two cases from the Southern District of New York where conditional certification was denied but the court nonetheless ordered defendants to produce identifying information of potential plaintiffs, here, plaintiff submitted no evidence whatsoever to substantiate his claims that a collective action is appropriate. *Cf. Flores,* 2006 U.S. Dist. LEXIS 11378, 2006 WL 695675, at *3 (plaintiff submitted affidavit in support of unopposed motion for discovery and approval of notice to putative plaintiffs); *Morales,* 2006 U.S. Dist. LEXIS 4267, 2006 WL 278154, at *2 (plaintiffs submitted copies of payroll stubs supporting their claim that they were paid the regular rate for overtime). While plaintiff may be correct that he was not given addresses of employees, he has made no effort to utilize the payroll information received to assist in determining whether conditional certification is appropriate. As this Court warned in an endorsed [*12] order filed on January 4, 2006, the parties "must proceed diligently." Although plaintiff apparently has not, plaintiff's application is nonetheless denied without prejudice to a future "modest factual showing" that plaintiff and those similarly situated were victims of a common policy or plan that violated the FLSA.

*CONCLUSION*

For the foregoing reasons, plaintiff's motion is denied without prejudice.

**SO ORDERED.**

Dated: Brooklyn, New York

June 12, 2006

/s/                                        UNITED STATES MAGISTRATE JUDGE

MARILYN D. GO