UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BRANDON SALUS and ALAN FELIX
IPANAQUE CORDOVA on behalf of                    INDEX NO: 07cv03142-GBD-
themselves and others similarly situated,        DCF


                    Plaintiffs,



            v.


TSE GROUP LLC d/b/a B.B. KING BLUES
CLUB AND GRILL and TSION BENSUSAN

                    Defendants.
--------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
CERTIFICATION OF A SETTLEMENT CLASS AND FINAL
APPROVAL OF A CLASS ACTION SETTLEMENT**


**I.      INTRODUCTION**

        Plaintiffs seek final approval of their class action settlement with Defendants TSE

Group LLC and Tsion Bensusan ("Defendants" or "B.B. King's").   Under the terms of

the settlement,[1] Defendants will pay plaintiffs and the Class Members $375,000,

inclusive of attorneys' fees and costs.  This proposed Settlement ("Settlement,"

"Settlement Agreement") resolves all claims of the named plaintiffs and the 337 Class

Members against Defendants.  Defendants do not oppose this motion.

        On January 23, 2008, the Court preliminarily certified the Class, ordered that

notice be given to the class, and scheduled a final fairness hearing for April 3, 2008.  The

---

[1] A copy of the Settlement Agreement is attached as Exhibit A to the Declaration of Maimon
Kirschenbaum ("Kirschenbaum Decl.").

Class Members have been notified of the terms of the Settlement, their anticipated share of the settlement, and their right to object to and/or to opt-out of the Settlement.  Not a single Class Member objected to or opted out of the Settlement.  With such unequivocal support, Plaintiffs request that the Court grant final approval of the proposed Settlement, certify the putative class, award attorneys' fees and costs, and dismiss the Complaint.

## II.    FACTUAL BACKGROUND

On or about April 19, 2007, Brandon Salus, a former server at Defendants' restaurant, filed this class/collective action on behalf of himself and others similarly situated against Defendants in the United States District Court for the Southern District of New York, Civil Action No. 07 CV 03142 (GBD) (the "Litigation").  On May 2, 2007, Mr. Salus, together with the other "Plaintiffs," filed an Amended Complaint (the "Complaint") (Exhibit A).

The Plaintiffs bring this action pursuant to federal and state labor laws governing the payment of minimum and/or overtime wages to tipped employees and employers' retention of such employees' tips.  Such laws include the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* ("FLSA"), New York Labor Law §§ 191, 193, 196-d,198-b, 650, *et. seq,* 652, and 663 and relevant sections of N.Y. Comp. Codes R. & Regs. The lawsuit asserts six claims for relief: (1) failure to pay minimum wage and keep appropriate records under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b); (2) failure to pay overtime under the FLSA; (3) failure to pay minimum wage under the New York State Minimum Wage Act ("NYSMWA"); (4) failure to pay overtime under the NYSMWA; (5) illegal deductions from gratuities under the New York Labor Law; and (6) failure to pay New York's "spread of hours" premium, which consists of one hour's pay at New York's minimum wage for each day that an employee works in excess

of ten (10) hours, as required by New York Labor Law and the New York Codes, Rules and Regulations.

The Complaint seeks Class relief, including, but not limited to, payment of the unpaid portion of minimum and overtime wages and the portions of their tips, gratuities and other compensation allegedly retained and/or deducted by Defendants.  In addition, the Complaint seeks liquidated damages under the FLSA and interest and all costs and attorneys' fees incurred in the prosecution of this Litigation.

On June 26, 2007, Plaintiffs moved for conditional certification of this action as a collective action pursuant to the FLSA § 216.  Plaintiffs have conducted interviews and submitted sworn declarations from several former and current employees supporting Plaintiffs' allegations that Plaintiffs and other similarly situated employees were subject to the illegal practices described above. *See Plaintiffs' Moving Papers Supporting Their Motion for Conditional Certification.*  Defendants responded to plaintiffs' motion on July 16, 2007.  Following Defendants' response, the Court granted a stay of this proceeding pending the results of a private mediation which took place on August 29, 2007.

After fact gathering and briefing, and mediation before Margaret Shaw of JAMS ADR, analysis of relevant documents and wage records, and protracted negotiations following mediation, the parties have determined it to be in their mutual best interest to settle the Litigation by resolving this matter on behalf of the Class.

Plaintiffs moved for preliminary approval of the proposed Settlement and notice to the putative class on December 21, 2007.  On January 23, 2008, this Court granted preliminary approval of the proposed Settlement, ordered that notice be given to the putative class, and set a final settlement approval hearing for April 3, 2008.  Written notice of the proposed Settlement, including the right to opt out and /or object to the Settlement, was

mailed to the 337 Class Members.  No member of the class objected to or opted out of the Settlement.

### III.    SUMMARY OF SETTLEMENT TERMS

The proposed settlement provides that Defendants shall pay a total "Settlement Amount" of $375,000, which includes Plaintiffs' counsel's attorneys' fees and costs and expenses, which the parties have agreed shall be $125,000, subject to the Court's approval, and Individual Incentive Awards to six plaintiffs totaling $21,000.   The remaining amount (the "Class Fund") shall be distributed among Class Members that do not opt-out of the litigation ("Qualifying Class Members") on a pro-rata basis determined by how many workweeks each Qualifying Class Member worked for Defendants during the Class Period.  Defendants will withhold relevant taxes from these payments.   "The Individual Settlement Amount shall be calculated in the following three steps: (1) the Parties shall divide the Class Fund by the aggregate number of weeks worked by all of the Class Members during the Recovery Period ("Weekly Recovery Amount"); (2) for each Qualified Class Member, the parties will multiply the number of weeks the Qualified Class Member worked for Defendants during the Recovery Period by the Weekly Recovery Amount; and (3) Defendants will then subtract applicable payroll deductions from such amounts."[2] Agreement § 2.1(A).

### IV.    CLASS ACTION SETTLEMENT APPROVAL PROCEDURE

Federal Rule of Civil Procedure 23 governs class action suits, including the settlement of class actions. Court approval is required for a class-wide settlement: "The

---

[2] Based on a rough estimate, a plaintiff that worked with Defendants for the full period covered by this lawsuit will receive approximately $5,725.

court must approve any settlement, voluntary dismissal, or compromise of the claims,

issues, or defenses of a certified class," Fed. R. Civ. P. 23 (e)(1)(A), and "The court must

direct notice in a reasonable manner to all class members who would be bound by a

proposed settlement, voluntary dismissal, or compromise," Fed. R. Civ. P. 23(e)(1)(B).

Rule 23 requires that the parties seeking approval of a settlement under Rule 23(e)(1) "file

a statement identifying any agreement made in connection with the proposed settlement,

voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(2).

The Manual for Complex Litigation, Fourth (Federal Judicial Center 2007)

("MCL 4th") § 21.6 describes the procedure for judicial review and approval of proposed

class action settlements as a two-step process, which courts in this district have adopted.

*See, e.g.*, *In re Holocaust Victim Assets Litigation*, 105 F. Supp. 2d 139 (E.D.N.Y. 2000);

*In re Nasdaq Market-Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997);

*In re Prudential Securities Inc. Ltd. Partnerships Litigation*, 163 F.R.D. 200 (S.D.N.Y.

1995). The two-step process safeguards class members' procedural due process rights and

enables the Court to fulfill its role as the guardian of class interests.

First, Class Counsel submits the proposed terms of settlement to the court for a

"preliminary fairness evaluation." MCL 4th § 21.632. The court makes a preliminary

determination as to the "fairness, reasonableness, and adequacy of the settlement terms,"

and directs the preparation of class notice, and sets the date for the final fairness hearing.

*Id*. Second, after the class has received notice and the deadline for class members to opt

out or object to the settlement has elapsed, the court conducts a final fairness hearing

where a final determination is made about whether the proposed settlement is "fair,

reasonable, and adequate." MCL 4th §  21.634. During the final fairness hearing, the

parties can present witnesses, experts, and affidavits or declarations, and objectors and

class members can appear and testify about the terms of the settlements. *Id*. If, after the

final hearing, the court concludes that the settlement is "fair, reasonable, and adequate,"

the court shall grant final approval to the settlement and final certification to the class. *Id*.

### V.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE.

Courts review proposed settlements in light of the strong judicial and public

policies favoring voluntary resolution of cases. *In re Ivan F. Boesky Secs. Litig*., 948 F.2d

1358, 1368 (2d Cir.1991); *In re Michael Milken & Assocs. Secs. Litig*., 150 F.R.D. 46, 53

(S.D.N.Y. 1993)). In the class action context, settlement has become a "stock device,"

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618 (1997), offering the advantages of

efficiency and certainty. *See* also 2 Newberg § 11.41 (Courts favor settlement particularly

in class actions where substantial resources can be conserved by avoiding the time, cost,

and rigors of formal litigation.).

Rule 23(e)(1)(C) requires that a proposed class settlement be "fair, adequate, and

reasonable to garner court approval. Fed. R. Civ. P. 23(e)(1)(C); *Wal-Mart Stores, Inc. v.

Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Joel A. v. Giuliani*, 218 F.3d 132, 138-

39 (2d Cir. 2000); *see also* 2 Newberg § 11.43; Manual for Complex Litigation, Fourth, §

21.61-21.62 (2007). Courts assess whether a proposed settlement is "fair, adequate, and

reasonable," by conducting a "thorough analysis of both procedural fairness and

substantive fairness." *Zomber v. Christies, Inc.* (*In re Auction Houses Antitrust Litig*.), 42

Fed. Appx. 511, 520 (2d Cir. 2002).

In evaluating procedural fairness, courts, consider "whether the negotiations were

a result of "arm's length negotiations" and whether plaintiffs' counsel possessed the

experience and ability to represent effectively the class's interests." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir.2001) (citing *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000)).

Courts in this circuit review a proposed settlement agreement for substantive fairness according to the factors identified in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974): (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of the reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See also Wal-Mart.*, 396 F.3d at 117. These factors ought not be applied in a formulistic fashion; rather, "the evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Grinnell Corp.*, 495 F.2d at 468 (citing *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972)). Plaintiffs address each factor in turn below.

### A.      Procedural Fairness

### 1.      The Settlement is the Product of Bargaining in Good Faith.

To assess procedural fairness, courts consider whether the settlement was the product of "arm's length" negotiations rather than the result of collusion. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d. Cir. 1982) (citing *Grinnell Corp.*, 495 F.2d at 463-66). In assessing the good faith of negotiations courts have also noted whether they took place

"over an extensive period" MCL § 21.612, and the degree to which the plaintiffs'

attorneys have engaged in investigation and/or discovery so as to permit them to reach an

informed evaluation of the case. *Weinberger*, 698 F.2d at 74; *Martens v. Smith Barney*,

181 F.R.D. 252, 262 (S.D.N.Y 1998); *see also* MCL § 21.612.

      The proposed Settlement is the result of extensive arm's length

negotiations between attorneys who are fully familiar with the legal and factual issues in

this case. The parties could not reach a resolution at their August 29, 2007 mediation,

after which both parties remained determined to litigate this matter unless they reached a

resolution that was beneficial to their clients.  After further exploring the matter and

weeks of hard-fought negotiations, the parties finally arrived at the proposed resolution.

      Prior to reaching settlement, Class Counsel undertook thorough discovery,

including evaluation of payroll reports, personnel files and other relevant data.

Kirschenbaum Decl. at ¶ 4. They also interviewed over 10 former employees concerning

the extent of Defendants' violations as alleged by Plaintiffs in order to estimate the

magnitude of potential damages. *Id.* at ¶ 5.  Finally, they evaluated Defendants' defenses

to the substantive claims and Defendants' assertions regarding Plaintiffs' ability to

proceed as a Rule 23 Class or an FLSA 216(b) collective class and the risks of continued

litigation. *Id.* at ¶ 7.

      **2.**    **Opinion of Experienced Counsel.**

      Another factor "in determining the fairness of the settlement is the opinion of

counsel involved in the settlement," and where plaintiffs' counsel is experienced in the

type of litigation at issue, the court will afford greater weight to the opinion of counsel.

*Chatelain v. Prudential-Bache Securities, Inc*., 805 F. Supp. 209, 212 (S.D.N.Y. 1992)

(In finding settlement reasonable, court relied in part upon the fact that "Plaintiffs' counsel is experienced in these matters, and has expressed their judgment that the proposed settlement is fair, reasonable, and in the best interests of the class."); *see also Cannon v. Texs Gulf Sulphur Co.*, 55 F.R.D. 308 (S.D.N.Y. 1972) (opinion of counsel should be given "great weight" in evaluating class settlement); *accord Bash v. Firstmark Standard Life Ins. Co.*, 861 F.2d 159, 162 (7th Cir. 1988) (court reviewing settlement "is entitled to rely heavily on the opinion of competent counsel").

Plaintiffs' counsel has substantial experience litigating employment cases in general and class action wage and hour cases in particular. Kirschenbaum Decl. at ¶¶ 8-11. Based on Class Counsel's extensive experience in precisely this type of litigation and their thorough familiarity with the factual and legal issues in this case, they have reached the firm conclusion that the proposed Settlement is clearly in the best interests of the named Plaintiffs and the putative class. *Id.* at ¶ 6.

### B.    Substantive Fairness

### 1.    The Complexity, Expense and Likely Duration of The Litigation

To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation. *Glover v. Crestwood Lake Section 1 Holding Corp.*, No. 89 Civ. 5386, 1991 U.S. DIST. LEXIS 4995, at *13 (S.D.N.Y. April 10, 1991) (weighing the possibility for protracted, complex litigation would require the significant time and expense of the parties, against the interests of the class); *In re Medical X-Ray Film Antitrust Litigation*, No. CV-93-5904, 1998 U.S. DIST. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998). Specifically, courts consider the time needed to complete discovery, the length of a potential trial, the

complexity of the issues in the case, and the costs of continuing litigation. Wal-Mart Stores, Inc., 396 FF.3d at 118; Schneider *v. GE Capital Mortgage Svcs., Inc.,* No. 96 Civ. 4561, 1997 U.S. DIST. LEXIS 7144, at *9-10 (S.D.N.Y. May 21, 1997).

The expense and likely duration of continuing litigation in this case favor approval of the proposed Settlement. The key issues in the case are not at all straightforward.  In their motion in opposition to Plaintiffs' motion for conditional certification, Defendants maintain that this action is not suitable for collective action treatment because of the individualized nature of each Plaintiff's claims. *See Defendants' Papers Opposing Plaintiffs' Motion for Conditional Certification ("Def. Opp.")*

During the mediation, which lasted one full day and continued thereafter through subsequent negotiations under the mediator's supervision, Defendants asserted additional defenses.  Defendants denied that it was B.B. King's standard practice to charge servers for walk-outs and maintained that if the practice did in fact occur, it was highly out of the ordinary and against the Restaurant's policy.  Defendants also provided documentary evidence to this effect.  *See Exhibit to Def. Opp.*  Defendants also assert that what Plaintiffs allege were "gratuities", *i.e.,* the mandatory charges to customers for parties with more than 100 guests, were in fact "service charges" that may be retained by an employer under relevant laws.  *See Samiento v. World Yacht Inc.,* 833 N.Y.S.2d 2 (N.Y. App. Div. 1st Dep't 2007), *overruled by Samiento v. World Yacht Inc.,* 10 N.Y.3d 70, 2008 WL 382346 (N.Y. 2008) (finding that employers were entitled to retain mandatory gratuities/service charges because the charges were not voluntary and therefore did not fall within New York Lab. Law § 196-d's prohibition of tip retention.)  At the time this case was resolved, Defendants' interpretation of § 196-d – that it does not require

employers to distribute to tipped employees gratuities which are mandatory by nature --

was clearly in accordance with the Appellate Division's interpretation. In the Court of

Appeal's recent reversal of *World Yacht*, the court found that even mandatory gratuities

can fall under §196-d's prohibition of tip-retention, but only if the customer that paid the

gratuity intended that the money be a gratuity to the severs.  2008 WL 382346 ("We hold

that the statutory language of Labor Law § 196-d can include mandatory charges when it

is shown that employers represented or allowed its customers to believe that the charges

were in fact gratuities for its employees."). Thus, (a) under the state of the law at the time

of the settlement, the mandatory gratuities were likely unrecoverable, and (b) Defendants

can still prevail on the mandatory gratuities claim, to the extent they claim that their

customers were well aware that the mandatory gratuities were not distributed in their

entirety among tipped employees. The settlement entails (a) a full recovery for Class

Members of all "hard damages" claimed other than the mandatory gratuities and (b) a

percentage of the mandatory gratuity damages.  Based on these various defenses asserted

by Defendants and the inherent risks of continued litigation, this Settlement is highly

beneficial to Plaintiffs and Class Members.

## 2.    The Reaction of the Class To the Settlement

The expressed views of class members with respect to the proposed Settlement

are important to the Court's inquiry. In evaluating the degree of class members' support

for or in opposition to a settlement, courts look to the proportion of the class that formally

object during the proceedings of the fairness and adequacy of the settlement and the

proportion to opt out of those who received notice. Where relatively few class members

opt out or otherwise object to the settlement, the lack of opposition supports approval of

the settlement. *Compare Martens*, 181 F.R.D. at 263 (approvingly citing "[t]he small number of objectors (12) and opt-outs (40) among the over 20,000 class members") *with Pettway v. Am., Cast Iron Pipe Co*., 576 F.2d 1157 (5th Cir. 1978) (rejecting settlement opposed by 70 percent of affected class).

This factor weighs heavily in favor of approving the proposed Settlement. Class notice went to 337 individuals. Not one person has opted out or objected to the proposed Settlement. Kirschenbaum Decl. ¶¶ 12-13. The lack of any opt-outs and/or objections illustrates the Class Members' satisfaction with the terms of the Settlement.

### 3.     The Stage of the Proceedings and the Amount of Discovery Completed

Courts also consider how far the litigation has progressed and the amount of discovery completed to gauge whether the parties are sufficiently informed to enter into a fair and adequate settlement. Parties need not have engaged in extensive discovery to have a proposed settlement approved. *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp.2d at 176. Courts will approve settlements where plaintiffs have conducted sufficient discovery to have a "thorough understanding of their case," Wal-Mart, 396 F.3d at 118, and have diligently investigated the facts supporting their claims, *Teachers' Retirement System of Louisiana v. A.C.L.N., Ltd.,* No. 01-CV-11814, 2004 U.S. DIST. LEXIS 8608 (S.D.N.Y. May 14, 2004) (internal citations omitted).

Class Counsel has conducted a thorough and diligent investigation into the facts supporting Plaintiffs' claims and the risks of litigation. Class Counsel has assessed the magnitude of damages based on Defendants' extensive payroll and timekeeping records, various personnel files, and interviews with former employees. Kirschenbaum Decl. ¶¶ 6-

7. Because Class Counsel entered into the proposed Settlement with a thorough understanding of their case, settlement at this stage of litigation is appropriate.

### 4.    The Risks of Establishing Liability

In assessing the substantive fairness of the settlement, courts consider whether there are any "legal obstacles to establishing liability." *Glover*, 1991 U.S. DIST. LEXIS 4995, at *16; Schneider, 1997 U.S. DIST. LEXIS 7144, at *13. Courts note that, regardless of the perceived strengths of plaintiffs' case, liability is "no sure thing." *Wal-mart,* 296 F.3d at 118.

As discussed above, Defendants asserted substantial defenses to the underlying claims in this lawsuit.   Further, juries are unpredictable, and for Plaintiffs the proposed Settlement is preferable to costly, protracted litigation, which may result in a smaller per-plaintiff recovery.

### 5.    The Risks of Establishing Damages

Courts also consider the risks of establishing damages. Regardless of plaintiffs' ability to establish liability, they still face the "substantial risks in proving its damages at trial." *In re Painewebber Ltd. Pshps. Litig.,* 171 F.R.D. 104, 128 (S.D.N.Y. 1997); *Wal-mart*, 396 F.3d at 119 (2d Cir. 2005)). Courts caution that "damages are a matter for the jury, whose determinations can never be predicted with certainty." *In re Painewebber Ltd. Pshps. Litig.,* 171 F.R.D. at 128.

Plaintiffs could potentially have difficulty establishing the full extent of class-wide damages at trial and therefore prefer the certainty of a settlement. Although Plaintiffs' claims are straightforward, the precise magnitude of the damages is elusive because Plaintiffs' and/or Defendants do not possess sufficient records to establish the

precise amount of money in dispute as a result of the various claims. Furthermore,

Plaintiffs recognize that jury assessments of damages are unpredictable.

6.     **The Risks of Maintaining the Class Action Through The Trial**

Courts also weigh the risks of maintaining the class action through trial in

determining whether the proposed settlement is fair. Specifically, courts consider whether

a class is already certified or whether plaintiffs will move for class certification, and

whether Defendants will oppose such motion. *See Glover*, 1991 U.S. DIST. LEXIS 4995,

at *17. Courts also consider the "pressure of active adversarial proceedings on named

plaintiffs" and the potential affect on their ability to represent the class. *See id.*, ("the

difficulties of maintaining the motivation and resolve on the part of the named plaintiff

throughout a protracted and adversarial litigation are very real indeed").

Plaintiffs would likely be able to maintain the class through trial. If the proposed

Settlement is not approved, Plaintiffs will move for class certification. Although such a

motion will be time-consuming and costly, Plaintiffs believe the Court would grant this

motion. Defendants would likely oppose the motion, as they already have opposed

Plaintiffs' motion for conditional certification, but Plaintiffs do not believe Defendants

could defeat conditional or class certification. Plaintiffs also believe that the named

Plaintiffs are committed to the case and would not have difficulty remaining class

representatives through trial. Throughout the case, Class Counsel has consulted with the

named Plaintiffs extensively, and they have provided Class Counsel with invaluable

information and access to numerous class members. However, keeping track of class

members, especially former employees, will become more difficult over time and

circumstances could prohibit named plaintiffs, relatively low-wage workers, from giving this case their full attention.

### 7. The Ability of the Defendants to Withstand A Greater Judgment

Next, courts consider the defendants' ability to withstand greater judgment and whether the proposed settlement fund could have been higher. *Wal-Mart*, 396 F.3d at 119; *Schneider*, 1997 U.S. DIST. LEXIS 7144.

Plaintiffs are not fully aware of Defendants' financial abilities. Plaintiffs recognize that the restaurant industry is generally a low-margin industry and that a payout of this size is extremely significant to Defendants. Nevertheless, Plaintiffs rely more significantly on the other *Grinnell* factors, as the terms of the settlement are inherently fair, regardless of Defendants' financial abilities.

### 8. The Range of Reasonableness of the Settlement Fund In Light Of the Best Possible Recovery

Courts measure the settlement terms against the "best possible recovery for plaintiffs." *See Glover*, 1991 U.S. DIST. LEXIS 4995, at *19; *Schneider*, 1997 U.S. DIST. LEXIS 7144, at *17. The "best possible recovery" is calculated assuming plaintiffs are completely victorious on both liability and damages at trial. *Teachers' Retirement System of Lousiana v. A.C.L.N., Ltd.,* No. 01-CV-11814, 2004 U.S. DIST. LEXIS 8608, at *14-15 (S.N.D.Y. May 14, 2004). That a proposed settlement represents only a fraction of the "best possible recovery" does not mean necessarily that it is "grossly inadequate or should be disapproved." *Id.* at *15; *Schneider*, 1997 U.S. DIST. LEXIS 7144, at *18.

The Settlement is fair and reasonable despite being less than Plaintiffs' "best possible recovery" at trial. As discussed above, Plaintiffs face substantial risks in proving and collecting their best possible recovery. Moreover, the Settlement provides for immediate payment of substantial amounts to Class Members, rather than "speculative payment of a hypothetically larger amount years down the road," which is a significant benefit. *Teachers' Retirement System of Louisiana*, 2004 U.S. DIST. LEXIS 8608, at *16. As discussed above, the Class Members stand to recover *all* of their "hard damages" for claims other than the mandatory gratuity claims, and a significant percentage of the mandatory gratuity claim damages.

> **9.    The Range Of Reasonableness of the Settlement Fund To A Possible Recovery In Light of All the Attendant Risks of Litigation.**

"In deciding whether to approve a proposed class settlement, the most significant factor for the district court is the strength of the claimants' case balanced against the settlement offer." *Plummer v. Chemical Bank*, 668 F.2d 654, 660 (2d Cir. 1982); *see also Schneider*, 1997 U.S. DIST. LEXIS 7144, at *19-20; *Glover*, 1991 U.S. DIST. LEXIS 4995, at *19. This factor requires evaluating the proposed settlement in light of all the *Grinell* factors and "giving each factor appropriate weight in the circumstances of the particular case." *Schneider*, 1997 U.S. DIST. LEXIS 7144, at *20.

Under the totality of the circumstances, the *Grinell* factors strongly favor the Settlement. Although Plaintiffs might recover more than the settlement amount at trial, there are significant risks including Defendants' stated defenses and arguments against class/collective treatment, uncertain damages, lost time-value of money, risks of collection. The Settlement commits a significant amount of money to compensate class

members for their damages. It also distributes such funds as fairly as possible amongst

the class members by taking into account the relative amount of overtime worked in

different positions and the length of employment during the class period. Class members

who were employed throughout the class period will likely receive an average of more

than $5,000 per class member.  Given the size of the class, and the relatively small

amount for alleged unpaid time worked per day by each employee, the relief obtained is

substantial. When this monetary relief is weighed against the potential obstacles and costs

of further litigation, the benefits to the class of settlement are overwhelming. This

conclusion is borne out by the total absence of opt outs or objectors.

### C. Compensation for Named Representatives and Class Counsel Are Appropriate

A final consideration as to the overall reasonableness of the settlement is whether

the payments made to the named class representatives and to Class Counsel are

appropriate and reasonable. *See Yap v. Sumitomo Corp. of America*, No. 88 Civ. 700,

1991 U.S. DIST. LEXIS 2124, at *23 (S.D.N.Y. Feb. 22, 1991).

### 1. The Payment to the Named Representatives for Their Service to the Class is Reasonable and Routinely Awarded

Payments to named representatives are intended to recognize their time and effort

on behalf of the class. Courts routinely approve incentive awards to compensate named

Plaintiffs for the services provided and the risks incurred in the course of class litigation.

*See, e.g., Plummer* 668 F.2d at 660-61 (2d Cir. 1982); *Roberts v. Texaco,* 979 F. Supp.

185, 200 (S.D.N.Y. 1997) (accepting a Special Master's recommendation to approve

incentive awards based on the time and effort expended by the class representatives in

assisting in the prosecution of the litigation); *Sheppard v. Consolidated Edison Co. of*

17

*New York, Inc.,* No. 94-CV-0403, 2002 WL 2003206, at *6-7 (E.D.N.Y. Aug. 1, 2002)

(approving aggregate incentive payment of $119,167 for six named plaintiffs in a race

discrimination class action); *Martens v. Smith Barney, Inc.,* No. 96 Civ. 3779, 1998 WL

1661385, at *3 (S.D.N.Y. July 24, 1998) (approving aggregate incentive payment of $1.9

million for 22 named plaintiffs in a gender discrimination class action); *Selzer v. Board of*

*Educ. Of New York,* No. 82 Civ. 7783, 1993 WL 42787, at *4 (S.D.N.Y. Feb. 16, 1993)

(approving incentive payments to named plaintiffs in part because of the tremendous

amount of time and effort expended by them in prosecuting gender discrimination class).

    In this case, the named representatives worked with Class Counsel throughout the

case, committing time and providing indispensable information, including attending and

preparing for mediation, contacting numerous witnesses, providing important

documentary evidence regarding liability and damages, and helping counsel test the

validity of Defendants' defenses. Kirschenbaum Decl. ¶¶ 15-16. The incentive payments

totaling $21,000 among six plaintiffs are extremely modest in comparison with those

approved by the courts cited above, and represent approximately 5.6 percent of the

Settlement Funds. Accordingly, the payments to the named representatives are

appropriate and justified as part of the overall Settlement.

    **2.    The Payment of Attorneys' Fees Under the Settlement**
           **Agreement is Reasonable.**

    Under the Settlement Agreement, Class Counsel is entitled to attorneys' fees at

one-third of the common fund, which includes recovery of legal costs.

    In class settlement funds like this one, courts strongly prefer to award fees as a

share of the fund. *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F.Supp.2d

254, 261-62 (S.D.N.Y. 2003) (collecting cases); *In re NASDAQ Market-Makers Anti-trust Litigation,* 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) collecting cases.[3]

Further, the one-third share of the fund sought to be approved here is consistent with the norms of class litigation in this circuit. *See, e.g., Strougo ex rel. Brazilian Equity Fund, Inc.,* 258 F.Supp.2d at 262 (33 1/3% of settlement fund approved for attorneys' fees); *In re Blech Sec. Litig.,* No. 94 Civ. 7696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (33 1/3% of settlement fund approved for attorneys' fees, plus costs); *Adair v. Bristol Technology Sys.*, No. 97 Civ. 5874, 1999 WL 1037878, at *4 (S.D.N.Y. Nov. 16, 1999) (33% of settlement fund approved for attorneys' fees, plus costs); *Cohen v. Apache Corp.,* No. 89 Civ. 0076, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (33 1/3% of settlement fund approved for attorneys' fees); *In re Gulf Oil/Cities Service Tender Offer Litigation*, 142 F.R.D. 588, 596-597 (S.D.N.Y. 1992) (33 1/3% of settlement fund approved for attorneys' fees); *In re Avon Prods. In., Sec. Litig.,* No. 89 Civ. 6216, 1992 WL 349768, at *3 (S.D.N.Y. Nov. 6, 1992) ("The request for 30% is in line with numerous awards in this Court and elsewhere in recent litigation."); *In re Crazy Eddie,* 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8% of settlement fund approved for attorney's fees, plus costs).

Finally, "[t]he Second Circuit encourages the practice of performing a lodestar "cross-check" on the reasonableness of a fee award based on the percentage approach, the lodestar is calculated by multiplying the number of hours expended on the entire

---

[3] A Third Circuit task force convened to study the issue concluded that the percentage of the settlement fund approach was preferable as a matter of judicial policy because it is less taxing on judicial resources and creates desirable incentives, as compared to other approaches, for early settlement. See Court Awarded Attorney Fees: Report of the Third Circuit Task Force, 108 F.R.D. 237, 246-49 (1985). It has also been observed that the percentage of the fund method most effectively aligns the interests of the class with those of its counsel. See, e.g., John Coffee, "Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of the Law Through Class and Derivative Actions," 86 Colum. L. Rev. 669, 724-25 (1986).

litigation by a particular attorney by his or her current hourly rate." *In re EVCI Career Colleges Holding Corp. Securities Litigation,* 2007 WL 2230177, at *17 (S.D.N.Y. July 27, 2007).  Plaintiffs' attorneys' fees, calculated using the lodestar method, were approximately $71,000, through March 31, 2008.  (Kirschenbaum Decl. ¶ 14).  Thus, the percentage award consists of a 1.76 multiplier of Class Counsel's lodestar figure and is well below multipliers that courts in this District routinely award.  *See Id.* (2.48 multiplier); *In re Sumintomo Copper Litig.,* 74 F.Supp.2d 393, 399 (S.D.N.Y.1999) (finding multipliers of 3 to 4.5 to be common); *Roberts,* 979 F.Supp. at 197 (multiplier of 5.5); *See In re NASDAQ,* 187 F.R.D. at 489 (approving a multiplier of 3.97, and noting that lodestar multiples of between 3 and 4.5 are common).

## VI.    CERTIFICATION OF THE SETTLEMENT CLASS PURSUANT TO RULE 23(e) IS PROPER.

Under Rule 23(e), where a suit has been filed as a putative class action, but before a motion for certification has been made, the case is deemed a class action for purposes of the Court's evaluation of a proposed settlement. *Weinberger v. Kendrick,* 698 F.2d 61, 72 (2d Cir. 1982) ("Temporary settlement classes have proved to be quite useful in resolving major class action disputes…most courts have recognized their utility and have authorized parties to seek to compromise their differences, including class action issues, through this means."); MCL § 21.612;2 Newberg § 11.22.

Plaintiffs seek approval of the following class for settlement purposes: "Class" shall mean the class of persons employed by Defendants as servers at any time between April 19, 2001 and the date of Preliminary Approval.  This class easily satisfies the requirements of Rule 23(a). First, the class must be "so numerous that joinder of all members is impracticable." Rule 23(a)(1).  Second, common questions of law or fact

must predominate over individual claims.  Rule 23(a)(2).  Third, the claims of the

representative parties must be typical of those of the class as a whole. Rule 23(a)(3).

Fourth, the representatives must fairly and adequately represent the class. Rule 23(a)(4).

Each of the four requirements is addressed in turn.

### A.        The Settlement Class is Sufficiently Numerous.

The numerosity criteria requires that joinder of all members is impracticable. *See*

Rule 23(a)(1). While there is no "mechanical test" for numerosity, it is presumed at 40

members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F. 3d 473, 483 (2d Cir.

2003) (citing 1 *Newberg On Class Actions 2d*, (1985 Ed.) § 3.05). Courts have certified

even smaller classes. *See, e.g., Frank v. Eastman Kodak*, 228 F.R.D. 174 (W.D.N.Y.

2005) (certifying a class of 28 in a NYLL wage case). The putative class of over 300

vastly exceeds this threshold.

Courts also consider the practical likelihood of cases being brought without the

availability of the class action mechanism. Cases involving relatively small monetary

values, such as small wage claims, are unlikely to be brought separately because of the

costs and hardship of litigation. *See Frank*, 228 F.R.D. at 181 (citing cases with fewer

than 40 class members); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D.  81, 85

(S.D.N.Y. 2001) (considering financial resources of class members in finding joinder

"impracticable"). Because the number of class members in the present case is sufficiently

large and the value of individual claims relatively small, joinder of all class members

would be impracticable and the numerosity requirement is satisfied.

### B.        There Exist Common Questions of Law or Fact

Rule 23(a)(3) requires that there be common questions of law or fact. Fed. R. Civ. P. 23(a)(3). Where a common nucleus of operative facts exists, commonality is usually met. *See Sorenson v. Concannon*, 893 F. Supp. 1469, 1479 (D. Or. 1994) (where system-wide procedures are at issue, commonality exists).

Here, the proposed class members' claims all stem from the same source: Defendants' allegedly illegal wage and hour policies regarding walk-outs, tip pay, minimum wages, and overtime.

### C.    Plaintiffs' Claims are Typical of Those of the Class.

To satisfy the third requirement - typicality – "the representative plaintiff's claims [must be] based on the same legal theory and arise from the same practice or course of conduct as the other class members. "*In re Playmobil Antitrust Litig.,* 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998); *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992); *In re NASDAW Market-Makers Antitrust Litig*., 169 F.R.D. 493, 510 (S.D.N.Y. 1996) ("The proper inquiry is whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named Plaintiffs, and whether other class members have been injured by the same course of conduct."). This criterion does not require that the factual background of each named plaintiff's claim be identical to that of all class members." *Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 293, (2d Cir. 1999); *Presbyterian Church of Sudan v. Talisman Energy, Inc*., 226 F.R.D. 456, 466 (S.D.N.Y. 2005). Rather, the common factual or legal issues must occupy the same level of centrality for the named plaintiffs as they do for the class members. *Caridad*, 191 F.3d at 293.

Named Plaintiffs' claims in this case are typical of the claims of the whole class because they arose out of the same course of conducts and are based on the same legal theories. The claims of the named Plaintiffs and the class members arise out of Defendants' payroll practices described above.

### D.    Plaintiffs Fairly and Adequately Represent the Class.

In assessing whether Plaintiffs will fairly and adequately represent and protect the interests of the class, courts consider whether: (1) "class counsel is qualified, experienced, and generally able to conduct the litigation," *In re Drexel Burnham Lambert Group,* 960 F.2d 285, 291 (2d Cir. 1992); and (2) there is "no conflict of interest between the named Plaintiffs and other members of the plaintiff class." *Marisol A. by Forbes v. Giuliani,* 126 F.3d 372, 378 (2d Cir. 1997).

The class representatives have fairly and adequately protected the interests of the class. The class representatives have a commonality of interests with class members that insures protection of class interests, and, indeed, they have no interests adverse to the interests of the proposed class.  The class representatives worked in the exact position (server) as all Class Members within the Class Period.

Class Counsel has substantial experience successfully prosecuting class action lawsuits involving employment claims in general and class action wage and hour claims in particular. *See* Kirschenbaum Decl., ¶¶ 8-11. Named Plaintiffs and their experienced counsel have prosecuted this action vigorously and have been willing and continue to be willing to spend all necessary resources in furtherance of vigorously prosecuting the action.  As set forth above in Section II, the parties engaged in motion practice and substantial fact-finding, including review of wage and timekeeping data and Defendants'

financial resources to properly assess the value of damages and risk of collection for settlement purposes. In addition, Class Counsel confers regularly with the named Plaintiffs and other members of the class about developments and settlement negotiations. *Id.* ¶ 17. Thus, Class Counsel has met the adequacy requirement of vigorously prosecuting this case.

>    **E.    The Class Action is Superior to Other Methods of Settling the Controversy.**

The final requirement is that the class action be superior to other available methods for the fair and efficient adjudication of the controversy. *See* Rule 23(b)(3). In applying this criterion, courts have stressed that the class action is superior when common issues will be dispositive of most of the case, and when the small size of individual claims is such that individual litigation would likely be too costly to pursue, and thus no other meaningful remedy (or deterrence for defendant) is available. *See Frank*, 228 F.R.D. at 181; *Ansoumana*, 201 F.R.D. at 85.

In this case, the disposition of common issues – whether Defendants had policies (a)requiring or permitting employees to pay for walk-outs, (b)illegally retained employees' tips, and (c)failed to pay Plaintiffs the minimum wage and/or overtime– will resolve virtually the entire case. The only remaining issue at the individual level would be differences in damages based upon the number of hours worked and their hourly wage rate they earned working in class positions during the relevant time period. Courts have stressed that differences in individual level damages that are easily calculable do not undercut the superiority of the class device. *See Cohen v. Uniroyal, Inc*., 77 F.R.D. 685, 690-691 (D. Pa. 1977). Moreover, this action is precisely the type of case in which the relatively modest amount of damages per employee would not justify pursuing individual

litigation as an economic matter for the vast majority of plaintiffs. Absent a class remedy, defendant would be free to act violate the law with impunity. Thus, in this case, a class remedy is not just superior, but, practically speaking, the only one available.

### VII.    CONCLUSION

For the forgoing reasons, Plaintiffs request that the Court (1) confirm final certification on the proposed class, (2) grant final approval of the proposed Settlement, (3) award Class Counsel attorneys' fees and costs, and (4) dismiss the Complaint with prejudice.

Dated:  March 31, 2008
New York, New York

Respectfully submitted,

JOSEPH & HERZFELD LLP

By: /s/ D. Maimon Kirschenbaum
     D. Maimon Kirschenbaum
757 Third Ave, 25th Fl.
New York, NY 10017
Tel: (212) 688-5640
Fax: (212) 688-2548